# APPENDIX B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT,<br><br>   Plaintiff,<br><br>  v.<br><br>DELL TECHNOLOGIES INC., DELL INC., EMC CORPORATION, AND VMWARE, INC.,<br><br>   Defendants. | Case No. 6:20-cv-00480-ADA<br><br>**JURY TRIAL DEMANDED** |

**LETTER OF REQUEST: REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE**
**PURSUANT TO THE HAGUE CONVENTION OF 18 MARCH 1970 ON THE TAKING**
**OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS**

GREETINGS:

| | | |
|---|---|---|
| 1. | Sender | The Honorable Judge Alan D Albright, District Judge United States District Court for the Western District of Texas, Waco Division<br>800 Franklin Avenue Room 301<br>Waco, Texas 76701<br>USA |
| 2. | Central Authority of the Requested State | Rechtbank Den Haag<br>Sector Civiel & Algemene Zaken<br>Postbus 20302<br>2500 EH THE HAGUE<br>The Netherlands<br>evidence.convention.rb.den.haag@rechtspraak.nl |
| 3. | Person to whom the executed request is to be returned | This Court; representatives of the parties as indicated below; the witnesses from whom evidence is requested as indicated below. |
| 4. | Specification of the date by which the requesting authority | June 1, 2021 |

| requires receipt of the response to the Letter of Request | |
|---|---|

In conformity with Article 1 of the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (the "Convention"), the undersigned has the honor to submit the following request. This Court respectfully requests that the District court of The Hague, the Netherlands, which has been designated pursuant to the Convention as the Dutch Central Authority, through your usual and proper process, compel the appearance of the Dutch individual Ronald van Haalen to give evidence for use at the trial of the above-captioned matters. In addition, this Court requests that the Court of The Hague requires Ronald van Haalen to produce copies of specific documents in his possession, or which he has at his disposal, for inspection. Since, according to Dutch case law, the Convention cannot provide more possibilities than national law, the undersigned emphasizes that this Letter of Request seeks the use of the Dutch national procedures relating to document production in conformity with Article 843a of the Dutch Code of Civil Procedure ("DCCP").

Article 843a DCCP requires that the applicant has a legitimate interest in the production of such documents, and also that the requested documents are related to a legal relationship to which the applicant or its legal predecessor is a party. It is not required that the person who has to produce documents is a party to the aforementioned legal relationship.[1] Furthermore, the application should pertain to specific documents, in which context it is noted that the documents need not be designated individually: a general description of documents pertaining to a specific subject matter

---

[1] *See* Supreme Court of the Netherlands 10 July 2015, *RvdW* 2015/1410.

regarding a certain time frame[2] or a file and the involved persons and/or authorities may qualify as sufficiently specific.[3]

Regarding the first requirement, the applicant Defendants have a legitimate interest in the requested documents because these documents are necessary for a full and fair determination of the validity and enforceability of the Patents in Suit. In this context, the undersigned also refers to section 8 (subsection and b) from this Request for additional information on the interest of applicant Defendants in the production of the relevant documents. Applicant Defendants are parties to legal proceedings alleging patent infringement pending in the United States. According to article 1019a DCCP, unlawful acts such as an alleged patent infringement are considered to be a legal relationship within the meaning of Article 843a DCCP. Under Article 843a DCCP documents can also be requested with a view to foreign legal proceedings.[4] Finally, applicant Defendants request access to specific documents, as listed in Exhibit B1.

For reasons of completeness, it should be noted that section 4(a) of article 843a DCCP provides that a party controlling documents that should be produced shall not be obliged to do so if there are overriding interests not to do so or if it can be assumed that justice can be properly administered without the requested documents. However, in the context of intellectual property disputes, Article 1019a section (3) provides that section (4) of Article 843a DCCP is not applicable. At the same time, Article 1019a (3) DCCP provides that the application shall be refused if the confidentiality of any confidential information is not safeguarded. In this context it is noted that the Defendants shall not use the documents for any purpose other than the present litigation, and

---

[2] *See, e.g.*, District Court Rotterdam 1 April 2009, BI1747.
[3] *See* Supreme Court of the Netherlands 26 October 2012, *NJ* 2013/220 (*Theodoor Gillissen Bankiers N.V.*).
[4] Supreme Court of the Netherlands 8 June 2012 (*Abu Dhabi Islamic Bank vs. ABN AMRO*), ECLI:NL:HR:2012:BV8510.

are prepared to give further undertakings if the Dutch Court deems necessary in the interests of the parties involved.

This request is in the interests of justice, as the requested deposition and documents are necessary for a full and fair determination of the matters in issue between the parties in the proceeding pending in this Court.

| 5. | a. Requesting Judicial Authority (Article 3, a) | The Honorable Judge Alan D Albright, District Judge United States District Court for the Western District of Texas, Waco Division 800 Franklin Avenue Room 301 Waco, Texas 76701 USA |
| --- | --- | --- |
| | b. To the competent Authority of (Article 3, a) | The Netherlands |
| | c. Names of the case and any identifying number | *WSOU Investments LLC v. Dell Technologies Inc.* Case No. 6:20-cv-00480-ADA, United States District Court for the Western District of Texas |
| 6. | Names and addresses of the parties and their representative (including representatives in the requested State) (Article 3, b) | |
| | a. Plaintiffs | WSOU Investments LLC |
| | Representatives | WSOU is represented by: **Brett Aaron Mangrum** Etheridge Law Group 2600 East Southlake Blvd., Suite 120-324 Southlake, TX 76092 469-401-2659 Fax: 817-887-5950 Email: brett@etheridgelaw.com **Jeffrey Huang** Etheridge Law Group PLLC 2600 East Southlake Blvd |

| | |
|---|---|
| | Suite 120-324<br>Southlake, TX 76092<br>408-797-9059<br>Fax: 817-887-5950<br>Email: jhuang@etheridgelaw.com<br><br>**Ryan Scott Loveless**<br>Etheridge Law Group PLLC<br>2600 E Southlake Blvd<br>Suite 120-324<br>Southlake, TX 76092<br>972-292-8303<br>Fax: 817-887-5950<br>Email: ryan@etheridgelaw.com<br><br>**James L. Etheridge**<br>Etheridge Law Group, PLLC<br>2600 E. Southlake Blvd., Suite 120-324<br>Southlake, TX 76092<br>817-470-7249<br>Fax: 817-887-5950<br>Email: jim@etheridgelaw.com |
| b. Defendants | Dell Technologies Inc., Dell Inc., EMC Corporation, and VMware Inc. (collectively "Defendants") |
| Representatives | Dell Technologies Inc., Dell Inc., EMC Corporation, and VMware Inc. are represented by:<br><br>Shelton Coburn LLP:<br><br>**Barry K. Shelton**<br>Shelton Coburn LLP<br>311 RR 620 S<br>Suite 205<br>Austin, TX 78734-4775<br>512-263-2165<br>Fax: 512-263-2166<br>Email: bshelton@sheltoncoburn.com<br><br>Gibson, Dunn & Crutcher LLP:<br><br>**Benjamin Hershkowitz**<br>**Brian A. Rosenthal**<br>**Allen Kathir** |

**Kyanna Sabanoglu**
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 20036-5306
Telephone: (212) 351-2410
Email:     BHershkowitz@gibsondunn.com
           BRosenthal@gibsondunn.com
           AKathir@gibsondunn.com
           KSabanoglu@gibsondunn.com

**Y. Ernest Hsin**
**Jaysen S. Chung**
GIBSON, DUNN & CRUTCHER LLP
555 Mission St., Ste. 3000
San Francisco, CA  94105-0921
Telephone: (415) 393-8200
Email:     EHsin@gibsondunn.com
           JSChung@gibsondunn.com

**Ryan K. Iwahashi**
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Rd.
Palo Alto, CA  94304-1211
Telephone: (650) 849-5300
Email:     RIwahashi@gibsondunn.com

The Defendant has appointed legal counsel in the Netherlands to pursue and assist with the commission to take evidence. The details of the Defendant's legal counsel in the Netherlands are:

**Barbara F.H. Rumora-Scheltema**
NautaDutilh N.V.
Beethovenstraat 400
1082 PR Amsterdam
The Netherlands
Tel: +31  20 71 71 449 |Fax: +31  20 71 71 361
Email: barbara.rumora-scheltema@nautadutilh.com

**Anne Marie E. Verschuur**
NautaDutilh N.V.
Beethovenstraat 400
1082 PR Amsterdam
The Netherlands
Tel: +31 20 71 71 821 |Fax: +31 20 71 71 335
Email: annemarie.verschuur@nautadutilh.com

| | | |
|---|---|---|
| | c. Other parties | N/A |
| | Representatives | N/A |
| 7. | a. Nature of the proceedings (divorce, paternity, breach of contract, product liability, etc.) (Article 3, c) | Civil action alleging patent infringement under the patent laws of the United States. |
| | b. Summary of complaint | Plaintiff alleges that it is the sole owner of all rights, title, and interest in, *inter alia*, the following United States patent: U.S. Patent No. 7,539,133 (the "'133 patent"), titled *Method and Apparatus For Preventing Congestion in Load-Balancing Networks,* which issued on May 26, 2009.<br><br>Plaintiff alleges that the Defendants infringe the '133 and seeks money damages.<br><br>Discovery sought in this Letter of Request is relevant in Case No. 6:20-cv-00480-ADA. |
| | c. Summary of defense and counterclaim | In defense against WSOU's claims of patent infringement of the '133 patent, Defendants assert, *inter alia*, that they do not infringe any of claims of the '133 patent, directly or indirectly, and that the claims of the '133 patent are invalid unenforceable.<br><br>Ronald van Haalen has knowledge of the facts relevant to Defendants' defenses. Ronald van Haalen is relevant to the action by virtue of being an inventor of the '133 patent. Ronald van Haalen holds critical facts to this case, including facts relevant to a number of defenses raised by Defendants and any potential damages, including information related to the prosecution of the '133 patent; prior uses and/or sales or products and services incorporating the '133 patent, publications related to the concepts claimed in the '133 patent; commercialization, production and/or commercial embodiments related to the '133 patent; the state of the art at the time of the alleged invention and/or filing of the applications related to the '133 patent; the ownership and financial interests in the '133 |

| | | |
|---|---|---|
| | | patent; conception, diligence and/or reduction to practice of the concepts claimed in the '133 patent; and the disclosure of the claimed invention of the asserted patent. As well as licensing of and/or agreements covering the '133 patent. And, financial knowledge including valuation and royalties associated with the '133 patent or any license and/or agreement covering the '133 patent; and other financial interests (including revenue, costs, expenses and profits) as well as financial interests and information related to the '133 patent. |
| | d. Other necessary information or documents | Ronald van Haalen, a resident of the Netherlands, is one of the inventors on the '133 patent.<br><br>Because the validity of the '133 patent is a critical issue in this proceeding, this Court is endorsing Defendants' request to take the deposition testimony of Ronald van Haalen and require Ronald van Haalen to produce specific documents in his possession, or which he has at his disposal.<br><br>Ronald van Haalen's current address is:<br><br>Lodewijk van Deysselhove 7, 3438 HS, Nieuwegein, The Netherlands |
| 8. | a. Evidence to be obtained or other judicial act to be performed (Article 3d), | In order to present their defenses that the '133 is not infringed, invalid, and unenforceable, Defendants require access to highly relevant evidence in the possession of Ronald van Haalen regarding the conception and reduction to practice of the invention claimed in the '133. In particular, Defendants have a reasonable interest in determining when the claimed inventions were conceived and reduced to practice. Finally, it is important for the position of Defendants that the roles and contributions of Ronald van Haalen, and any others to the conception and/or reduction to practice of the invention claimed in the '133 patent are clarified.<br><br>Defendants request the production of certain relevant documents that are, or most likely are, in the possession Ronald van Haalen, or which he most |

| | |
|---|---|
| | likely has at his disposal. A list of the requested documents is attached as Exhibit B1.<br><br>To further clarify the evidence sought, attached as Exhibit B2 is an outline of the topics and issues about which counsel for Defendants intends to inquire of Ronald van Haalen. |
| b. Purpose of the evidence or judicial act sought | With respect to the '133 patent, Ronald van Haalen has information and knowledge relating to the prosecution of the '133 patent; prior uses and/or sales or products and services incorporating the '133 patent, publications related to the concepts claimed in the '133 patent; commercialization, production and/or commercial embodiments related to the '133 patent; the state of the art at the time of the alleged invention and/or filing of the applications related to the '133 patent; the ownership and financial interests in the '133 patent; conception, diligence and/or reduction to practice of the concepts claimed in the '133 patent; and the disclosure of the claimed invention of the asserted patent. As well as licensing of and/or agreements covering the '133 patent. And, financial knowledge including valuation and royalties associated with the '133 patent or any license and/or agreement covering the '133 patent; and other financial interests (including revenue, costs, expenses and profits) as well as financial interests and information related to the '133 patent.<br><br>This evidence is directly relevant to Defendants' claims that the '133 patent is not infringed, invalid, and unenforceable and to determine any alleged damages under United States patent law. |
| 9. Identity and address of any person to be examined (Article 3, e) | Ronald van Haalen<br>Lodewijk van Deysselhove 7, 3438 HS, Nieuwegein, The Netherlands |
| 10. Questions to be put to the persons to be examined or statement of the subject matter | *See* Exhibit B2 |

| | | |
|---|---|---|
| | about which they are to be examined (Article 3, f) | |
| 11. | Documents or other property to be inspected (Article 3, g) | *See* Exhibit B1 |
| 12. | Any requirement that the evidence be given on oath or affirmation and any special form to be used (Article 3, h) | We respectfully request that the testimony be taken under oath. |
| 13. | Special methods or procedure to be followed (e.g. oral or in writing, verbatim, transcript or summary, cross-examination, etc.) (Article 3, i) and 9) | This Court respectfully requests that Ronald van Haalen be summoned by the executing court to appear in court to be heard.

This Court respectfully requests that the executing authority commission one of the United States Counsel for Defendants as a private examiner to ask questions about the topics laid down in Exhibit B2, under supervision of a Dutch magistrate judge, and to pose such further questions as may be warranted by the answers given by Ronald van Haalen. The Court further requests that the judge presiding over the questioning of Ronald van Haalen permit representatives of the parties listed above in Section 6 to attend and to ask follow-up questions and cross-examine Ronald van Haalen at the culmination of the initial examination, as may be warranted by the answers given during the initial examination.

This Court respectfully requests that the testimony be taken in English, and that if needed, a translator be permitted to attend and translate any questions asked or testimony elicited by the examiner(s) during the deposition.

This Court respectfully requests that the examination be (partially) conducted via video conference to allow U.S. counsel to join the hearing.

This Court further requests that the testimony be recorded on videotape, and that a court reporter be |

| | |
|---|---|
| | permitted to attend the deposition and create a verbatim written transcript of the proceedings. |
| | This Court further requests that Ronald van Haalen be directed to produce the documents identified in the attached Exhibit B1 not later than three weeks before the date of the examination. |
| | This Court further requests that all books, papers, and other documents or articles that Ronald van Haalen identifies at the oral examination be marked as exhibits and attested. We respectfully requests that you return all such materials under cover duly sealed and addressed to the Netherland counsel: |
| | **Barbara F.H. Rumora-Scheltema**<br>NautaDutilh N.V.<br>Beethovenstraat 400<br>1082 PR Amsterdam<br>The Netherlands<br>Tel: +31  20 71 71 449 \|Fax: +31  20 71 71 361<br>Email: barbara.rumora-scheltema@nautadutilh.com |
| | **Anne Marie E. Verschuur**<br>NautaDutilh N.V.<br>Beethovenstraat 400<br>1082 PR Amsterdam<br>The Netherlands<br>Tel: +31 20 71 71 821 \|Fax: +31 20 71 71 335<br>Email: annemarie.verschuur@nautadutilh.com |
| | Given the complexity of the case, the Court respectfully requests not to impose any time limits for the deposition of Ronald van Haalen. |
| | In the event that the evidence cannot be taken in the manner requested, the Court requests that the evidence be taken in accordance with the directions of the presiding judge, taking into account the relevant provisions of the DCCP. |
| 14. Request for notification of the time and place for the execution of the Request and identity and | This Court respectfully requests that you notify this Court; the representatives of the parties as indicated above; the witness from whom evidence is requested as |

| | | |
|---|---|---|
| | address of any person to be notified (Article 7) | indicated above; and such other person(s) that you deem proper. |
| 15. | Request for attendance or participation of judicial personnel of the requesting authority at the execution of the Letter of Request (Article 8) | No judicial personnel of the requesting authority will attend or participate. |
| 16. | Specification of privilege or duty to refuse to give evidence under the law of the State of origin (Article 11, b) | Defendants believe that Ronald van Haalen does not benefit from any privilege, and does not endorse the assertion of any such privilege or duty. |
| 17. | The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Convention will be borne by | Defendants will bear the reimbursable costs associated with this request in accordance with the provisions of the Hague Convention. |

So ORDERED and SIGNED this ____ day of _____, 2020.


_____
The Honorable Alan D Albright
 U.S. District Court Judge

# **EXHIBIT B1**

## DOCUMENTS REQUESTED

Defendants Dell Technologies Inc., Dell Inc., EMC Corporation, and VMware, Inc. (collectively, "Defendants") request the production of the documents described below.

## DEFINITIONS

The following definitions are applicable to terms employed in responding to this request:

1.  "Accused Product" or "Accused Products" shall refer to any device, product, or other thing that Plaintiff is permitted to accuse of infringing the Asserted Patent in this Action. A copy of the Complaint in case number 6:20-cv-00480-ADA is attached as Exhibit B3. In referring to any device, product, or other thing as an "Accused Product," Defendants in no way communicate their agreement that it infringes the Asserted Patent.

2.  "Action" shall refer to the above-captioned proceeding in the United States District Court for the Western District of Texas, with case number 6:20-cv-00480-ADA.

3.  "Asserted Claim" shall refer to each claim of the Asserted Patent that Plaintiff contends Defendants infringe.

4.  "Asserted Patent" shall refer to U.S. Patent No. 7,539,133 and any patent applications related thereto.

5.  "Communication" shall mean, without limitation, any written, oral, or other transmission of information, including but not limited to emails.

6.  "Complaint" shall refer to the Complaint (including exhibits) that Plaintiff filed on June 2, 2020 as docket number 1 in this Action, as may be amended.

7.  "Concerning," "refer(s) to," "related to," "reflecting," and "relating to" shall mean directly or indirectly relating to, referring to, mentioning, reflecting, pertaining to, evidencing, illustrating, involving, describing, discussing, commenting on, embodying, responding to,

supporting, contradicting, or constituting (in whole or in part), as the context makes appropriate.

8.    "Defendants" or "Defendant" shall refer to Dell Technologies Inc., Dell Inc., EMC Corporation, and VMware, Inc., and any and all of their then-current or prior subsidiaries, parents, affiliates, divisions, successors, predecessors, agents, employees, representatives, directors, officers, trustees, and attorneys, or any other person or entity acting in whole or in part in concert with any of the foregoing, directly or indirectly.

9.    "Document" shall include, without limitation, all documents, electronically stored information, and tangible things within the scope of the Federal Rules of Civil Procedure, including Rule 34.   Federal Rules of Civil Procedure 34 permits discovery of:   "(A) documents or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or (B) any designated tangible things."

10.   "Employee" shall refer to any officer, director, partner, employee, representative, or agent.

11.   "Licensee(s)" shall refer to any entity having a license, assignment, covenant not to sue, or other understanding, written, oral or implied, that the entity has any rights to the Asserted Patent, any Related Patents, or any Related Applications, may practice one or more claims of the Asserted Patent and/or that Plaintiff will not file suit or otherwise enforce against that entity one or more claims of the Asserted Patent or any Related Patent or Related Application.

12. "Named Inventor" shall refer to any individual who is listed as an inventor on the Asserted Patent or any Related Patent or Related Application thereof.

13. "Person" shall refer to any natural person, firm, association, partnership, government agency, corporation, proprietorship, or other entity and its officers, directors, partners, employee, representatives, and agents.

14. The terms "Plaintiff," and/or "WSOU" shall refer to the responding Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development, and any and all of its then-current or prior subsidiaries, parents, affiliates, divisions, successors, predecessors, agents, employees, representatives, directors, officers, trustees, and attorneys, or any other person or entity acting in whole or in part in concert with any of the foregoing, directly or indirectly.

15. "Prior Art" encompasses, without limitation, the subject matter described in each and every subdivision of 35 U.S.C. §§ 102 and 103, and includes, but is not limited to, memoranda, notes, manuals, interviews, testing data, disclosures, prototypes, correspondence, drawings, papers, articles, patents, printed publications, public uses, demonstrations, offers for sale or license, and sales.

16. "Related Application(s)" means any and all applications related to the Asserted Patent, including any provisional or non-provisional applications, continuations, continuations- in-part, divisions, interferences, reexaminations, re-issues, parents, foreign counterpart applications, and any other applications disclosing, describing or claiming any invention disclosed, described or claimed in the Asserted Patent, or claiming the benefit of the filing date of any application whose benefit is claimed in the Asserted Patent, whether or not abandoned and whether or not issued.

17.    "Related Patent(s)" means any and all U.S. or foreign patents based upon or related to any Related Application(s) or Asserted Patent, including any patents or applications that may have been opposed, reexamined, re-issued or subjected to any validity or nullity proceeding.

18.    "Third Party" shall refer to any person other than Plaintiff or Defendants.

19.    "You," "Your," "Yours" shall refer to Ronald van Haalen, and any and all of its then-current or prior subsidiaries, parents, affiliates, divisions, successors, predecessors, agents, employees, representatives, directors, officers, trustees, and attorneys, or any other person or entity acting in whole or in part in concert with any of the foregoing, directly or indirectly.

20.    "Product(s)" means a machine, manufacture, apparatus, device, instrument, mechanism, appliance, software, service, process, or an assemblage of components/parts (either individually or collectively) that are designed to function together electronically, mechanically, or otherwise, including any offered for sale or under development.

21.    Any pronouns shall be construed to refer to the masculine, feminine, or neutral gender, in singular or plural, as in each case is most appropriate.

22.    The singular form of any word shall be construed to also include the plural, and vice-versa.

23.    The word "each" shall be construed to mean "each and every."

24.    The words "and" and "or" shall be construed conjunctively or disjunctively, whichever makes the request more inclusive.

25.    The words "any" and "all" shall be construed to mean "any and all."

**INSTRUCTIONS**

1.    In responding to the document requests set forth below, please furnish all responsive and non-privileged information that is available to You.

2.    If production of any responsive Documents are being withheld on the ground of the attorney-client privilege, attorney work product, or any other privilege, immunity, or protection, please provide a privilege log with the following information for each such Document: (a) the name of the Document; (b) the name of the person(s) who prepared the Document; (c) the name of the person(s) to whom the Document was directed or circulated; (d) the date(s) on which the Document was prepared or transmitted; (e) the name of the person(s) now in possession of the Document; (f) a description of the subject matter of the Document; and (g) the specific nature of the privilege or protection claimed with respect to the Document.

3.    The Court's interim protective order in the Order Governing Proceedings entered in this manner shall govern the disclosure of confidential information in this Action. *See* Exhibit B4 at pp. 3–4.

4.    Upon entry of a final protective order in this manner that protective order shall govern the disclosure of confidential information in this Action.

## DOCUMENT REQUESTS

1.    Documents and Communications concerning the preparation, filing, or prosecution of any of the patent applications related to the Asserted Patent.[1] This includes, but is not limited to:

    a.    A complete copy of the prosecution history and prosecution files for the

---

[1] Such materials will be relevant to determining the scope of the patents in claim construction and to defenses, such as prosecution history estoppel, non-infringement, invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement), and inequitable conduct. Such materials will also be relevant to defenses relating to damages, including the availability of non-infringing alternatives.

Asserted Patent;

b.        Drafts of the patent applications, drawings, and documents in the possession, custody, or control of You or any attorney or agent involved in the prosecution of the Asserted Patent, except to the extent these documents are entitled to attorney-client privilege or work product protection;

c.        Patents, patent applications, or other publications reviewed in connection with the prosecution by anyone who participated in the prosecution of the Asserted Patent;

d.        Prior Art cited or considered in connection with the prosecution of the Asserted Patent;

e.        Memoranda and Communications regarding the prosecution of the Asserted Patent; and

f.        Documents referring or relating to or evidencing any decision by You, on Your behalf, or that you are aware of regarding what documents (including without limitation patents or printed publications) to cite during prosecution of the Asserted Patent.

2.        Documents and Communications concerning the preparation, filing, or prosecution of any of the patent applications related to Related Patents and Related Applications.[2]

---

[2] Such materials will be relevant to determining the scope of the patents in claim construction and to defenses, such as prosecution history estoppel, non-infringement, invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement), and inequitable conduct. Such materials will also be relevant to defenses relating to damages, including the availability of non-infringing alternatives.

This includes, but is not limited to:

    a.    A complete copy of the prosecution histories and prosecution files for any Related Patents and Related Applications;

    b.    Drafts of patent applications, drawings, and documents in the possession, custody, or control of You or any attorney or agent involved in the prosecution of any Related Patents or Related Applications, except to the extent these documents are entitled to attorney-client privilege or work product protection;

    c.    Patents, patent applications, or other publications reviewed in connection with the prosecution by anyone who participated in the prosecution of any Related Patents or Related Applications;

    d.    Prior Art cited or considered in connection with the prosecution of any Related Patents or Related Applications;

    e.    Memoranda and Communications regarding the prosecution of any Related Patents or Related Applications; and

    f.    Documents referring or relating to or evidencing any decision by You, on Your behalf, or that you are aware of regarding what documents (including without limitation patents or printed publications) to cite during prosecution of any Related Patents or Related Applications.

3.    Documents and Communications related to each effort by You, on Your behalf, or that you are aware of to obtain patent protection in the United States or in the countries designated in the PCT application for the Asserted Patent, for the subject matter described and/or claimed in the Asserted Patent, covering the period from March 23, 2006 through the last action

taken by or on behalf of the inventor or any assignee in connection with the prosecution of the Asserted Patent or any Related Patent or Related Application.[3]

4.      Communications, studies, comparisons, reports, surveys, evaluations, opinions, or memorandums regarding the conception of the subject matter described and/or claimed in the Asserted Patent, prior to March 23, 2006.[4]

5.      Communications, studies, comparisons, reports, surveys, evaluations, opinions, or memorandums regarding the testing, design, and development of the subject matter described and/or claimed in the Asserted Patent, prior to August 2, 2017.[5]

6.      Communications, studies, comparisons, reports, surveys, evaluations, opinions, or memorandums regarding the reduction to practice of the subject matter described and/or claimed in the Asserted Patent, prior to August 2, 2017.[6]

7.      Statements, articles, abstracts, publications, and Product literature made by, or

---

[3]  Such materials will be relevant to determining the scope of the patents in claim construction and to defenses, such as non-infringement, and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement).

[4]  Such materials will be relevant to determining the scope of the patents in claim construction and to defenses, such as non-infringement and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement).  Such materials will also be relevant to defenses, such as improper inventorship, derivation, and inequitable conduct.

[5]  Such materials will be relevant to determining the scope of the patents in claim construction and to defenses, such as non-infringement and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement).  Such materials will also be relevant to defenses, such as improper inventorship, derivation, and inequitable conduct.

[6]  Such materials will be relevant to determining the scope of the patents in claim construction and to defenses, such as non-infringement and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement).  Such materials will also be relevant to defenses, such as improper inventorship, derivation, and inequitable conduct.

under the direction of, any of the Named Inventors concerning the subject matter described and/or claimed in the Asserted Patent, prior to August 2, 2017.[7]

8.      Laboratory notebooks, technical memoranda, technical files, diaries, appointment calendars, and trip reports, in complete unredacted form, of the Named Inventors, or made under the direction of the Named Inventors, concerning the subject matter described and/or claimed in the Asserted Patent, prior to August 2, 2017.[8]

9.      Documents sufficient to identify any Person (whether or not named as an inventor) involved in the conception, research, testing, design, development, and reduction to practice of any element of any of the inventions described and/or claimed in the Asserted Patent, and to understand their role, prior to August 2, 2017.[9]

10.      Communications, studies, comparisons, reports, surveys, evaluations, opinions, or memorandums regarding the conception of the subject matter described and/or claimed in Related Patents or Related Applications, prior to March 23, 2006.[10]

---

[7]  Such materials will be relevant to determining the scope of the patents in claim construction and to defenses, such as non-infringement and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement).  Such materials will also be relevant to defenses, such as improper inventorship, derivation, and inequitable conduct.

[8]  Such materials will be relevant to determining the scope of the patents in claim construction and to defenses, such as non-infringement and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement).  Such materials will also be relevant to defenses, such as improper inventorship, derivation, and inequitable conduct.

[9]  Such materials will be relevant to determining the scope of the patents in claim construction and to defenses, such as non-infringement and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement).  Such materials will also be relevant to defenses, such as improper inventorship, derivation, and inequitable conduct.

[10]  Such materials will be relevant to determining the scope of the patents in claim construction and to defenses, such as non-infringement and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description,

11.     Communications, studies, comparisons, reports, surveys, evaluations, opinions, or memorandums regarding the testing, design, and development of the subject matter described and/or claimed in Related Patents or Related Applications, prior to August 2, 2017.[11]

12.     Communications, studies, comparisons, reports, surveys, evaluations, opinions, or memorandums regarding the reduction to practice of the subject matter described and/or claimed in Related Patents or Related Applications, prior to August 2, 2017.[12]

13.     Statements, articles, abstracts, publications, and Product literature made by, or under the direction of, any of the Named Inventors concerning the subject matter described and/or claimed in Related Patents or Related Applications, prior to August 2, 2017.[13]

14.     Laboratory notebooks, technical memoranda, technical files, diaries, appointment calendars, and trip reports, in complete unredacted form, of the Named Inventors, or made under the direction of the Named Inventors, concerning the subject matter described and/or claimed in Related Patents or Related Applications, prior to August 2, 2017.[14]

---

indefiniteness, and enablement).  Such materials will also be relevant to defenses, such as improper inventorship, derivation, and inequitable conduct.

[11]     Such materials will be relevant to determining the scope of the patents in claim construction and to defenses, such as non-infringement and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement).  Such materials will also be relevant to defenses, such as improper inventorship, derivation, and inequitable conduct.

[12]     Such materials will be relevant to determining the scope of the patents in claim construction and to defenses, such as non-infringement and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement).  Such materials will also be relevant to defenses, such as improper inventorship, derivation, and inequitable conduct.

[13]     Such materials will be relevant to determining the scope of the patents in claim construction and to defenses, such as non-infringement and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement).  Such materials will also be relevant to defenses, such as improper inventorship, derivation, and inequitable conduct.

[14]     Such materials will be relevant to determining the scope of the patents in claim construction and to defenses, such as non-infringement and invalidity (including obviousness, secondary

15. Documents sufficient to identify any Person (whether or not named as an inventor) involved in the conception, research, testing, design, and reduction to practice (actual or constructive), or other development of any aspect (for example, any element and/or limitation) of any of the inventions described and/or claimed in Related Patents or Related Applications, and to understand their role, prior to August 2, 2017.[15]

16. Communications, studies, comparisons, reports, surveys, evaluations, opinions, or memorandums that concern or show the structure, functions, or operation of, or that constitute embodiments of, any invention disclosed or claimed in the Asserted Patent, regardless of whether such embodiment was commercialized, and regardless of whether or not it worked properly, from March 23, 2006 to August 2, 2017.[16]

17. Documents and Communications relating to Your assignment policies with inventors applicable to the invention described and/or claimed in the Asserted Patent.[17] This

---

considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement). Such materials will also be relevant to defenses, such as improper inventorship, derivation, and inequitable conduct.

[15] Such materials will be relevant to determining the scope of the patents in claim construction and to defenses, such as non-infringement and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement). Such materials will also be relevant to defenses, such as improper inventorship, derivation, and inequitable conduct.

[16] Such materials will be relevant to determining the scope of the patents in claim construction and to defenses, such as non-infringement, and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement). Such materials will also be relevant to defenses relating to damages, including the availability of non-infringing alternatives and failure to mark.

[17] Such materials will be relevant to issue regarding Plaintiffs standing to bring the current suit and joinder of the proper parties. Such materials will also be relevant to quantifying any alleged damages pursuant the *Georgia-Pacific* factors, which require consideration of the: "established profitability of the product made under the patent"; "the character of the commercial embodiment of it as owned and produced by the licensor"; and "portion of the realizable profit that should be credited to the invention"; among others things. *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1119–20 (S.D.N.Y. 1970). Courts in the United States consider these *Georgia-Pacific* factors when determining a

includes but is not limited to:

  a.  Assignment agreements with the inventors of the inventions described
      and/or claimed in the Asserted Patent;

  b.  Cost-sharing or profit-sharing agreements with the inventors of the
      inventions described and/or claimed in the Asserted Patent; and

  c.  Remuneration agreements with inventors of the inventions described
      and/or claimed in the Asserted Patent.

18.  Communications, studies, comparisons, reports, surveys, evaluations, opinions, or
memorandums concerning any of the following activities with regard to the subject matter
described and/or claimed in the Asserted Patent:

  a.  First written description and/or drawing of such subject matter;

  b.  First publication of such subject matter;

  c.  First promotion of such subject matter;

  d.  First advertisement of such subject matter;

  e.  First offer for sale of such subject matter;

  f.  First sale of such subject matter;

  g.  First public disclosure of such subject matter; and

  h.  First public use of such subject matter.[18]

19.  Documents concerning the making, using, testing, selling, or disclosure of any

_____

reasonable royalty for patent infringement damages. *See, e.g.*, *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F. 3d 1301, 1324–37 (Fed.  Cir. 2009).

[18]  Such materials will be relevant to defenses, such as invalidity (including obviousness, secondary considerations regarding obviousness, and anticipation) and inequitable conduct.

embodiment described and/or claimed in the Asserted Patent, or any Product, process, equipment, or service embodying or using such invention, prior to March 23, 2006.[19]

20. Documents relating to any Prior Art search performed by You, on Your behalf, or that you are aware of, relating to the Asserted Patent, including, but not limited to, any search methodology or results, prior to August 2, 2017.[20]

21. Documents relating to any Prior Art search performed by You, on Your behalf, or that you are aware of, relating to any Related Patent or Related Application, including, but not limited to, any search methodology or results, from November 8, 2006 to August 2, 2017.[21]

22. Communications, studies, comparisons, reports, surveys, evaluations, opinions, or memorandums regarding whether any claim in the Asserted Patent is invalid, valid, enforceable, or unenforceable (including any Prior Art or alleged Prior Art), prior to August 2, 2017.[22]

23. Documents that concern the commercial success (a secondary consideration regarding obviousness of the Asserted Patent as considered under 35 U.S.C. § 103) of any Product, process, equipment, or service that has a nexus to any invention claimed in the Asserted Patent (i.e., the Product, process, equipment, or service is "essentially the claimed invention"[23]),

---

[19] Such materials will be relevant to defenses, such as invalidity (including obviousness, secondary considerations regarding obviousness, and anticipation) and inequitable conduct.
[20] Such materials will be relevant to defenses, such as invalidity (including obviousness, secondary considerations regarding obviousness, and anticipation) and inequitable conduct.
[21] Such materials will be relevant to defenses, such as invalidity (including obviousness, secondary considerations regarding obviousness, and anticipation) and inequitable conduct.
[22] Such materials will be relevant to determining the scope of the patents in claim construction and to defenses, such as invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement) and inequitable conduct.
[23] *Fox Factory, Inc. v. SRAM, LLC*, 944 F. 3d 1366, 1374 (Fed. Cir. 2019).

from March 23, 2006 to August 2, 2017.[24]

24.    Documents that concern any copying by others (a secondary consideration regarding obviousness of the Asserted Patent as considered under 35 U.S.C. § 103) of any invention claimed in the Asserted Patent, or of any Product, process, equipment, or service that embodies or uses such invention, from March 23, 2006 to August 2, 2017.[25]

25.    Documents that concern any third party's praise, criticism, acknowledgments, awards, or discussion of the significance (a secondary consideration regarding obviousness of the Asserted Patent as considered under 35 U.S.C. § 103) of any invention claimed in the Asserted Patent, or of any Product, process, equipment, or service that embodies or uses such invention, from March 23, 2006 to August 2, 2017.[26]

26.    Communications (or Documents relating thereto) between You and Plaintiff, from November 8, 2006 to the present, relating to:

    a.    The Asserted Patent or any inventions disclosed therein;

    b.    This Action (including, without limitation, the initiation of this Action and the actual or anticipated costs, profits, and outcome of this Action);

---

[24] Such materials will be relevant to defenses, such as invalidity (including obviousness and secondary considerations regarding obviousness).  Such materials will also be relevant to quantifying any alleged damages pursuant the *Georgia-Pacific* factors, which require consideration of the:  "established profitability of the product made under the patent"; "the character of the commercial embodiment of it as owned and produced by the licensor"; and "portion of the realizable profit that should be credited to the invention"; among others things.  *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1119–20 (S.D.N.Y. 1970).  Courts in the United States consider these *Georgia-Pacific* factors when determining a reasonable royalty for patent infringement damages.  *See, e.g.*, *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F. 3d 1301, 1324–37 (Fed.  Cir. 2009).

[25]  Such materials will be relevant to defenses, such as invalidity (including obviousness and secondary considerations regarding obviousness).

[26] Such materials will be relevant to defenses, such as invalidity (including obviousness and secondary considerations regarding obviousness).

and

    c.    Any Defendant, any of Defendants' technology, or any of the Accused Products.[27]

27.    Communications (or Documents relating thereto) between You and any of the Named Inventors, from November 8, 2006 to the present, relating to:

    a.    The Asserted Patent or any inventions disclosed therein;

    b.    This Action (including, without limitation, the initiation of this Action and the actual or anticipated costs, profits, and outcome of this Action); and

    c.    Any Defendant, any of Defendants' technology, or any of the Accused Products.[28]

28.    Negotiations, agreements, draft agreements between You and Plaintiff, from November 8, 2006 to the present, relating to:

    a.    The Asserted Patent or any inventions disclosed therein;

    b.    This Action (including, the initiation of this Action and the actual or anticipated costs, profits, and outcome of this Action); or

    c.    Any Defendant, any of Defendants' technology, or any of the Accused

---

[27] Such materials will be relevant to quantifying any alleged damages. Such materials will also be relevant to defenses, such as non-infringement and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement).

[28] Such materials will be relevant to quantifying any alleged damages. Such materials will also be relevant to defenses, such as non-infringement and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement).

Products.[29]

29.    Negotiations, **agreements**, draft **agreements** between You and any Named Inventor, from November 8, 2006 to the present, relating to:

    a.    The Asserted Patent or any inventions disclosed therein;

    b.    This Action (including the initiation of this Action and the actual or anticipated costs, profits, and outcome of this Action); or

    c.    Any Defendant, any of Defendants' technology, or any of the Accused Products.[30]

30.    Documents and Communications concerning any statement, concern, or contention by You, any Named Inventor, counsel responsible for prosecuting the patent application and their agents, regarding the scope of any of the claims or the interpretation or construction of any term or phrase in the claims of the Asserted Patent, prior to August 2, 2017.[31]

31.    Documents concerning the alleged infringement of any of the claims of the Asserted Patent, including studies, comparisons, reports, surveys, and any evaluation, opinion, memorandum, or report, comparing any of the Accused Products or any portion, feature, and/or

---

[29] Such materials will be relevant to quantifying any alleged damages. Such materials will also be relevant to defenses, such as non-infringement and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement).

[30] Such materials will be relevant to quantifying any alleged damages. Such materials will also be relevant to defenses, such as non-infringement and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement).

[31] Such materials will be relevant to determining the scope of the patents in claim construction and to defenses, such as non-infringement and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement) and inequitable conduct.

aspect thereof to any limitation in any claim of the Asserted Patent, prior to.[32]

32.     Documents and Communications concerning any decision to pursue or not to pursue a claim infringement of the Asserted Patent against any Defendant, from November 8, 2006 to August 2, 2017.[33]

33.     Documents and Communications concerning any decision to pursue or not to pursue a claim infringement of any Related Patent against any Defendant, from November 8, 2006 to August 2, 2017.[34]

34.     Documents comprising or memorializing any sworn statements, including affidavits, declarations, trial and deposition testimony concerning the subject matter of the Asserted Patent, by any of the Named Inventors, counsel responsible for prosecuting the patent application and their agents.t.[35]

35.     Documents comprising or memorializing any sworn statements, including affidavits, declarations, trial and deposition testimony concerning the subject matter of any Related Patents or Related Applications, by any of the Named Inventors or any person involved in the prosecution of the Asserted Patent.[36]

---

[32] Such materials will be relevant to determining the scope of the patents in claim construction and to defenses, such as non-infringement.

[33] Such materials will be relevant to quantifying any alleged damages pursuant the *Georgia-Pacific* factors, which require consideration of the "commercial relationship between the licensor and licensee"; among others things. *Georgia-Pacific*, 318 F. Supp. at 1119–20.

[34] Such materials will be relevant to quantifying any alleged damages pursuant the *Georgia-Pacific* factors, which require consideration of the "commercial relationship between the licensor and licensee"; among others things. *Georgia-Pacific*, 318 F. Supp. at 1119–20.

[35] Such materials will be relevant to determining the scope of the patents in claim construction and to defenses, such as non-infringement and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement) and inequitable conduct.

[36] Such materials will be relevant to determining the scope of the patents in claim construction and to defenses, such as non-infringement and invalidity (including obviousness, secondary

36.     Business plans, marketing plans, marketing materials, advertising plans, advertising materials, promotional materials, and offers for sale, involving or concerning the Asserted Patent, from November 8, 2006 to August 2, 2017.[37]

37.     Documents concerning the relationship between You and potential or actual Licensees regarding the Asserted Patent, including agreements and draft agreements with such potential Licensees, Communications with such potential Licensees, and Documents exchanged with such potential Licensees that relate to such patents.[38]

38.     Documents concerning the relationship between You and potential or actual Licensees regarding Related Patents or Related Applications, including agreements and draft agreements with such potential Licensees, Communications with such potential Licensees, and Documents exchanged with such potential Licensees that relate to such patents.[39]

39.     Valuations of the Asserted Patent (either alone, or together with other patents or

---

considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement) and inequitable conduct.

[37] Such materials will be relevant to quantifying any alleged damages pursuant the *Georgia-Pacific* factors, which require consideration of the:  "established profitability of the product made under the patent"; "character of the commercial embodiment of it as owned and produced by the licensor"; and "portion of the realizable profit that should be credited to the invention"; among others things.  *Georgia-Pacific*, 318 F. Supp. at 1119–20.

[38] Such materials will be relevant to patent exhaustion and license defenses, as well as, to quantifying any alleged damages pursuant the *Georgia-Pacific* factors, which require consideration of the:  "royalties received by the patentee"; "rates paid by the licensee for the use of other patents comparable to the patent in suit"; "established profitability of the product made under the patent"; "character of the commercial embodiment of it as owned and produced by the licensor"; and "portion of the realizable profit that should be credited to the invention"; among others things.  *Georgia-Pacific*, 318 F. Supp. at 1119–20.

[39] Such materials will be relevant to patent exhaustion and license defenses, as well as, to quantifying any alleged damages pursuant the *Georgia-Pacific* factors, which require consideration of the:  "royalties received by the patentee"; "rates paid by the licensee for the use of other patents comparable to the patent in suit"; "established profitability of the product made under the patent"; "character of the commercial embodiment of it as owned and produced by the licensor"; and "portion of the realizable profit that should be credited to the invention"; among others things.  *Georgia-Pacific*, 318 F. Supp. at 1119–20.

consideration, including as part of an intellectual property portfolio) from November 8, 2006 to August 2, 2017.[40]

40. Valuations of Related Patents or Related Applications (either alone, or together with other patents or consideration, including as part of an intellectual property portfolio) from November 8, 2006 to August 2, 2017.[41]

41. Documents and Communications concerning the right, title, or interest in any litigation or action involving any of the Asserted Patent, Related Patents, or Related Applications, including analyses or opinions related thereto, from November 8, 2006 to August 2, 2017.[42]

42. Documents sufficient to identify, and to show the design, operation, or functioning of, any commercially acceptable, non-infringing (potential or actual) alternative to the subject matter claimed in the Asserted Patent, after May 26, 2009.[43]

---

[40] Such materials will be relevant to quantifying any alleged damages pursuant the *Georgia-Pacific* factors, which require consideration of the: "royalties received by the patentee"; "rates paid by the licensee for the use of other patents comparable to the patent in suit"; "established profitability of the product made under the patent"; "character of the commercial embodiment of it as owned and produced by the licensor"; and "portion of the realizable profit that should be credited to the invention"; among others things. *Georgia-Pacific*, 318 F. Supp. at 1119–20.

[41] Such materials will be relevant to quantifying any alleged damages pursuant the *Georgia-Pacific* factors, which require consideration of the: "royalties received by the patentee"; "rates paid by the licensee for the use of other patents comparable to the patent in suit"; "established profitability of the product made under the patent"; "character of the commercial embodiment of it as owned and produced by the licensor"; and "portion of the realizable profit that should be credited to the invention"; among others things. *Georgia-Pacific*, 318 F. Supp. at 1119–20.

[42] Such materials will be relevant to quantifying any alleged damages pursuant the *Georgia-Pacific* factors, which require consideration of the: "established profitability of the product made under the patent"; "character of the commercial embodiment of it as owned and produced by the licensor" and "portion of the realizable profit that should be credited to the invention"; among others things. *Georgia-Pacific*, 318 F. Supp. at 1119–20.

[43] Such materials will be relevant to defenses relating to damages, including the availability of non-infringing alternatives.

43.    Documents sufficient to identify, and to show the design, operation, or functioning of any technically acceptable, non-infringing (potential or actual) alternative to the subject matter claimed in the Asserted Patent, after May 26, 2009.[44]

44.    Documents sufficient to identify the nature and scope of any rights you retained in the Asserted Patent, including any right to control litigation, future royalties, payments for licenses of the Asserted Patent, or payments relating to or resulting from the outcome of any litigation involving or relating to the Asserted Patent (including without limitation the Action).[45]

45.    Documents and Communications exchanged with trade associations, standards setting organizations, or industry working groups, relating to the subject matter of the Asserted Patent, or the inventions disclosed therein, from November 8, 2006 to the present.[46]  This includes but is not limited to:

      a.    Communications with trade associations, standards setting organizations, or industry trade groups relating to the Asserted Patent, or the inventions disclosed therein;

---

[44] Such materials will be relevant to defenses relating to damages, including the availability of non-infringing alternatives.

[45] Such materials will be relevant to issue regarding Plaintiffs standing to bring the current suit and joinder of the proper parties.  Such materials will be relevant to patent exhaustion and license defenses, as well as, to quantifying any alleged damages pursuant the *Georgia-Pacific* factors, which require consideration of the:  "royalties received by the patentee"; "rates paid by the licensee for the use of other patents comparable to the patent in suit"; "established profitability of the product made under the patent"; "character of the commercial embodiment of it as owned and produced by the licensor"; and "portion of the realizable profit that should be credited to the invention"; among others things.  *Georgia-Pacific*, 318 F. Supp. at 1119–20.

[46] Such materials will be relevant to determining the scope of the patents in claim construction and to defenses, such as non-infringement, and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement).

b.      Technical and non-technical submissions to trade associations, standards setting organizations, or industry trade groups relating to the Asserted Patent, or the inventions disclosed therein;

c.      Intellectual property declarations to any trade associations, standards setting organizations, or industry trade groups relating to the Asserted Patent, or the inventions disclosed therein; and

d.      Documents related to trade associations, standards setting organizations, or industry trade groups meetings (including working group meetings) where the subject matter described and/or claimed in the Asserted Patent was discussed.

46.      Documents and Communications exchanged with trade associations, standards setting organizations, or industry working groups, relating to the subject matter of Related Patents, Related Applications, from November 8, 2006 to the present.[47]  This includes but is not limited to:

a.      Communications with trade associations, standards setting organizations, or industry trade groups relating to Related Patents, Related Applications, or the inventions disclosed therein;

b.      Technical and non-technical submissions to trade associations, standards setting organizations, or industry trade groups relating to Related Patents, Related Applications, or the inventions disclosed therein;

---

[47] Such materials will be relevant to determining the scope of the patents in claim construction and to defenses, such as non-infringement, and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement).

c.    Intellectual property declarations to any trade associations, standards setting organizations, or industry trade groups relating to Related Patents, Related Applications, or the inventions disclosed therein; ands

d.    Documents related to trade associations, standards setting organizations, or industry trade groups meetings (including working group meetings) where the subject matter described and/or claimed in Related Patents was discussed.

47.    Documents (including without limitation correspondence, notes, meeting minutes, proposals, statements, and other Communications) regarding what constitutes Fair Reasonable and Non-Discriminatory ("FRAND") or Reasonable and Non-Discriminatory ("RAND") terms relating to patent licensing in the technical space related to the subject matter of the Asserted Claims.[48]

48.    Documents concerning all sections and/or subsection of any standard or draft standard to which You believe the Asserted Patent are essential.[49]

---

[48]    Such materials will be relevant to quantifying any alleged damages pursuant the *Georgia-Pacific* factors, which require consideration of the:  "royalties received by the patentee"; "rates paid by the licensee for the use of other patents comparable to the patent in suit"; "established profitability of the product made under the patent"; "character of the commercial embodiment of it as owned and produced by the licensor"; "portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions"; and "portion of the realizable profit that should be credited to the invention"; among others things.  *Georgia-Pacific*, 318 F. Supp. at 1119–20.

[49]    Such materials will be relevant to determining the scope of the patents in claim construction and to defenses, such as non-infringement, and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement).  Such materials will also be relevant to quantifying any alleged damages pursuant the *Georgia-Pacific* factors, which require consideration of the: "royalties received by the patentee"; "rates paid by the licensee for the use of other patents comparable to the patent in suit"; "established profitability of the product made under the patent"; "character of the commercial embodiment of it as owned and produced by the

49.     Documents concerning all sections and/or subsection of any standard or draft standard to which You believe the Asserted Patent is relevant to.[50]

50.     Documents sufficient to identify patents of which You are aware that have been contented to be essential to, or relevant to, standards or draft standard for which the Asserted Patent has been contented to be essential to, or relevant to, such as standards maintained by the Institute of Electrical and Electronics Engineers, Internet Engineering Task Force, and the European Telecommunications Standards Institute.

51.     Documents sufficient to show Your past and present electronic data and Document destruction and retention policies with respect to the Documents produced in response to the above requests.

---

licensor"; and "portion of the realizable profit that should be credited to the invention"; among others things. *Georgia-Pacific*, 318 F. Supp. at 1119–20.

[50]    Such materials will be relevant to determining the scope of the patents in claim construction and to defenses, such as non-infringement, and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement). Such materials will also be relevant to quantifying any alleged damages pursuant the *Georgia-Pacific* factors, which require consideration of the: "royalties received by the patentee"; "rates paid by the licensee for the use of other patents comparable to the patent in suit"; "established profitability of the product made under the patent"; "character of the commercial embodiment of it as owned and produced by the licensor"; and "portion of the realizable profit that should be credited to the invention"; among others things. *Georgia-Pacific*, 318 F. Supp. at 1119–20.

# EXHIBIT B2

## ORAL EXAMINATION TOPICS REQUESTED

Defendants Dell Technologies Inc., Dell Inc., EMC Corporation, and VMware, Inc. (collectively, "Defendants") seek to ask questions on topics described below.

## DEFINITIONS

The following definitions are applicable to terms employed in responding to this request:

1.  "Accused Product" or "Accused Products" shall refer to any device, product, or other thing that Plaintiff is permitted to accuse of infringing the Asserted Patent in this Action. A copy of the Complaint in case number 6:20-cv-00480-ADA is attached as Exhibit B3. In referring to any device, product, or other thing as an "Accused Product," Defendants in no way communicate their agreement that it infringes the Asserted Patent.

2.  "Action" shall refer to the above-captioned proceeding in the United States District Court for the Western District of Texas, with case number 6:20-cv-00480-ADA.

3.  "Asserted Claim" shall refer to each claim of the Asserted Patent that Plaintiff contends Defendants infringe.

4.  "Asserted Patent" shall refer to U.S. Patent No. 7,539,133; and any patent applications related thereto.

5.  "Communication" shall mean, without limitation, any written, oral, or other transmission of information, including but not limited to emails.

6.  "Complaint" shall refer to the Complaint (including exhibits) that Plaintiff filed on June 2, 2020 as docket number 1 in this Action, as may be amended.

7.  "Concerning," "refer(s) to," "related to," "reflecting," and "relating to" shall mean directly or indirectly relating to, referring to, mentioning, reflecting, pertaining to, evidencing, illustrating, involving, describing, discussing, commenting on, embodying, responding to,

supporting, contradicting, or constituting (in whole or in part), as the context makes appropriate.

8.      "Defendants" or "Defendant" shall refer to Dell Technologies Inc., Dell Inc., EMC Corporation, and VMware, Inc., and any and all of their then-current or prior subsidiaries, parents, affiliates, divisions, successors, predecessors, agents, employees, representatives, directors, officers, trustees, and attorneys, or any other person or entity acting in whole or in part in concert with any of the foregoing, directly or indirectly.

9.      "Document" shall include, without limitation, all documents, electronically stored information, and tangible things within the scope of the Federal Rules of Civil Procedure, including Rule 34. Federal Rules of Civil Procedure 34 permits discovery of: "(A) documents or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or (B) any designated tangible things."

10.     "Employee" shall refer to any officer, director, partner, employee, representative, or agent.

11.     "Licensee(s)" shall refer to any entity having a license, assignment, covenant not to sue, or other understanding, written, oral or implied, that the entity has any rights to the Asserted Patent, any Related Patents, or any Related Applications, may practice one or more claims of the Asserted Patent and/or that Plaintiff will not file suit or otherwise enforce against that entity one or more claims of the Asserted Patent or any Related Patent or Related Application.

12. "Named Inventor" shall refer to any individual who is listed as an inventor on the Asserted Patent or any Related Patent or Related Application thereof.

13. "Person" shall refer to any natural person, firm, association, partnership, government agency, corporation, proprietorship, or other entity and its officers, directors, partners, employee, representatives, and agents.

14. The terms "Plaintiff," and/or "WSOU" shall refer to the responding Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development, and any and all of its then-current or prior subsidiaries, parents, affiliates, divisions, successors, predecessors, agents, employees, representatives, directors, officers, trustees, and attorneys, or any other person or entity acting in whole or in part in concert with any of the foregoing, directly or indirectly.

15. "Prior Art" encompasses, without limitation, the subject matter described in each and every subdivision of 35 U.S.C. §§ 102 and 103, and includes, but is not limited to, memoranda, notes, manuals, interviews, testing data, disclosures, prototypes, correspondence, drawings, papers, articles, patents, printed publications, public uses, demonstrations, offers for sale or license, and sales.

16. "Related Application(s)" means any and all applications related to the Asserted Patent, including any provisional or non-provisional applications, continuations, continuations- in-part, divisions, interferences, reexaminations, re-issues, parents, foreign counterpart applications, and any other applications disclosing, describing or claiming any invention disclosed, described or claimed in the Asserted Patent, or claiming the benefit of the filing date of any application whose benefit is claimed in the Asserted Patent, whether or not abandoned and whether or not issued.

17. "Related Patent(s)" means any and all U.S. or foreign patents based upon or related to any Related Application(s) or Asserted Patent, including any patents or applications that may have been opposed, reexamined, re-issued or subjected to any validity or nullity proceeding.

18. "Third Party" shall refer to any person other than Plaintiff or Defendants.

19. "You," "Your," "Yours" shall refer to Ronald van Haalen, and any and all of its then-current or prior subsidiaries, parents, affiliates, divisions, successors, predecessors, agents, employees, representatives, directors, officers, trustees, and attorneys, or any other person or entity acting in whole or in part in concert with any of the foregoing, directly or indirectly.

20. "Product(s)" means a machine, manufacture, apparatus, device, instrument, mechanism, appliance, software, service, process, or an assemblage of components/parts (either individually or collectively) that are designed to function together electronically, mechanically, or otherwise, including any offered for sale or under development.

21. Any pronouns shall be construed to refer to the masculine, feminine, or neutral gender, in singular or plural, as in each case is most appropriate.

22. The singular form of any word shall be construed to also include the plural, and vice-versa.

23. The word "each" shall be construed to mean "each and every."

24. The words "and" and "or" shall be construed conjunctively or disjunctively, whichever makes the request more inclusive.

25. The words "any" and "all" shall be construed to mean "any and all."

**INSTRUCTIONS**

1. This request seeks disclosure to the full extent of the Federal Rules of Civil Procedure and shall be interpreted as inclusive rather than exclusive.

2.      It is Your duty in responding to this request to designate one or more officers, directors, managing agents, or other Persons who are the most knowledgeable with respect to the topics identified below.

**DEPOSITION TOPICS**

1.      The alleged invention(s) claimed in each Asserted Claim, and the alleged benefits, advantages, disadvantages or limitations of those alleged invention(s) as compared to the state of the art at the time of filing, and the factual bases thereof.

2.      The inventorship of each Asserted Claim, including identification of any individuals other than the Named Inventors who aided or participated in the conception, reduction to practice, or diligence toward reduction to practice of the subject matter of the Asserted Claims.

3.      The role of each Named Inventor, as well as any individual identified pursuant to Topic No. 2, in the alleged invention of each Asserted Claim, including conception, diligence and reduction to practice, and including the subject matter to which each Person contributed, and the dates and circumstances in which each Named Inventor, as well as any individual identified pursuant to Topic No. 2, made such contributions.

4.      The conception, reduction to practice, and diligence toward the reduction to practice of each Asserted Claim, and any corroboration thereof.

5.      The dates and circumstances concerning any first disclosure, demonstration, sale or offer for sale of any prototype or commercial embodiment of any of the inventions claimed in the Asserted Claims, and the identification and subject matter of any documents relating to or referring to each such activity.

6.      The past and current ownership of the Asserted Patent, including its chain of title.

7.      The preparation and prosecution of the applications relating to the Asserted Patent, any Related Patents, Related Applications, and patents and applications incorporated by reference

into the Asserted Patent, and any certificates of correction.

8.      The state of the art at the time of filing for the Asserted Patent, any Related Patents, Related Applications, and patents and applications incorporated by reference into the Asserted Patent, and Your knowledge thereof.

9.      Any facts, studies, investigations, information, documents (including Prior Art), and analyses You identified, received, or knew at any time relating to the alleged validity, enforceability, infringement, valuation, or priority dates of the Asserted Patent, Related Patents, Related Applications, or patents and applications incorporated by reference into the Asserted Patent, including any Communications with third parties relating to the foregoing.

10.      Any facts, studies, investigations, information, documents, and analyses regarding the structure, functions, development of, or operation of, or that constitute embodiments of, any alleged invention disclosed or claimed in the Asserted Patent, regardless of whether such embodiment was commercialized, and regardless of whether or not it worked properly.

11.      Your knowledge of, and participation in, any Communications between Plaintiff and Defendants prior to the filing of the Action.

12.      Any Communications related to Plaintiff, including communications related to licensing of any patents related the subject matter of the Asserted Claims, including the Asserted Patent, Related Patents, and Related Applications, compensation, license rates, royalties related thereto, agreements with Plaintiff, Defendants, the Action, the decision to file the Action, requests or offers to provide assistance, witnesses and/or documents for use in the Lawsuit, and any discussion about standing of Plaintiff to bring the Action.  Your relationship with all potential Licensees, including all agreements, assurances, covenants not to sue, and understandings not to assert patents against such potential Licensees, including but not limited to Communications and

agreements relating to the Asserted Patent, Related Patents or Related Applications, and the circumstances relating to such activity.

13. Your relationship with any entity associated with Stuart A. Shanus, Marc Wade, and/or Craig Etchegoyen, including without limitation Wade and Company, Orange Holdings, WSOU, and/or Uniloc USA, Inc.,[1] including any patent license agreements with any such entity that relate to patents or patent applications that claim subject matter related to the subject matter of the Asserted Claims.

14. Any Communication You engaged in regarding each Defendant and its respective products or services, and any analysis You performed of each Defendant and its respective products and services related to the Asserted Patent, Related Patents or Related Applications.

15. Any valuations of the Asserted Patent or any portfolio of patents that includes the Asserted Patent.

16. Any financial interests that You may have in the Asserted Patent, including but not limited to royalties and the outcome of the Action.

17. Any facts, studies, investigations, and analyses relating to any submission of intellectual property right declarations with respect to the Asserted Patent to any standard maintained by an international and/or domestic trade association or standards setting organization, including all analyses or opinions related thereto.

18. Any facts, studies, investigations, and analyses relating to any alleged essentiality of the Asserted Patent to any industry standard, including any Communications with third parties relating to the foregoing.

---

[1] Stuart A. Shanus and Craig Etchegoyen are the Chairman and President of WSOU. Mark Wade, Wade and Company, Orange Holdings, and/or Uniloc USA, Inc. are all related persons or entities of WSOU.

19.     Any investigation of the standards activity and intellectual property right disclosures of any predecessor-in-interest to the Asserted Patent, including any investigation by You into the intellectual property right policies, Fair Reasonable and Non-Discriminatory ("FRAND") obligations, or Reasonable and Non-Discriminatory ("RAND") terms relating to patent licensing in the technical space related to the subject matter of the Asserted Claims.

20.     The role of You and/or any prior owner of the Asserted Patent, or any affiliates of You, or a prior owner of the Asserted Patent, in any standards setting organization from March 23, 2006 to present.

21.     Any Communications that You, any predecessor-in-interest of the Asserted Patent, and/or any Named Inventors had with by an international and/or domestic trade association or standards setting organizations regarding the subject matter of the Asserted Claims.

22.     Any disclosures made by or on behalf of You or any predecessor-in-interest of the Asserted Patent to an international and/or domestic trade association or standards setting organization regarding the existence and/or potential standard essentiality of the Asserted Patent, Related Patents, or Related Applications.

23.     Your knowledge of, and compliance with, intellectual property right policies of an international and/or domestic trade association or standards setting organization related to the subject matter of the Asserted Claims.

24.     Your knowledge of, and compliance with, FRAND and/or RAND obligations, including without limitation any policies, guidelines, or instructions, and any related analysis or discussions.

25.     Your collection, retention and production of documents and information relevant to the Action.

26.     The subject matter and content of all Documents and Communications identified and/or produced in response to the above requests.

27.     The authenticity of all Documents identified in response to the requests for production.

28.     All Documents reviewed by You in connection with the deposition on these topics.

# EXHIBIT B3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT, | § § § § § § § § § § § § | NO. 6:20-cv-480-ADA |
| Plaintiff, | | **JURY TRIAL DEMANDED** |
| v. | | |
| DELL TECHNOLOGIES INC., DELL INC., EMC CORPORATION, AND VMWARE, INC. | | |
| Defendants. | | |

**FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development ("Brazos" or "Plaintiff"), by and through its attorneys, files this First Amended Complaint ("Amended Complain" or "Complaint") for Patent Infringement against Dell Technologies Inc., Dell Inc., EMC Corporation, and VMWare, Inc. (collectively, "Defendants") and alleges:

**<u>NATURE OF THE ACTION</u>**

1.      This is a civil action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 1, et seq., including §§ 271, 281, 284, and 285.

**<u>THE PARTIES</u>**

2.      Brazos is a limited liability corporation organized and existing under the laws of Delaware, with its principal place of business at 605 Austin Avenue, Suite 6, Waco, Texas 76701.

3.      On information and belief, defendant Dell Technologies Inc. ("Dell") is a Delaware corporation with a principal place of business at One Dell Way, Round Rock, Texas 78682.

4.      On information and belief, defendant Dell Inc. is a Delaware corporation with a principal place of business at One Dell Way, Round Rock, Texas 78682.  Dell Inc. is wholly owned by its corporate parent, Dell.

5.      On information and belief, defendant EMC Corporation ("EMC") is a Massachusetts corporation with a principal place of business at One Dell Way, Round Rock, Texas 78682. EMC Corporation is wholly owned by its corporate parent, Dell Technologies Inc.

6.      Upon information and belief, VMware, Inc. ("VMWare") is a Delaware corporation with two established places of business in this District, including two in Austin, Texas with over 700 employees.

7.      Upon information and belief, VMWare was acquired by EMC in 2004 and conducted an initial public offering of Class A common stock in August 2007.  On or around September 2016, Dell acquired by EMC. As a result, EMC became a wholly-owned subsidiary of Dell, and VMWare became an indirectly-held, majority-owned subsidiary of Dell. Under the rules of the New York Stock Exchange, VMWare is a controlled company. As of January 31, 2020, Dell controlled approximately 80.9% of VMWare's outstanding common stock, including 31 million shares of its Class A common stock and all of it Class B common stock.

## JURISDICTION AND VENUE

8.      This is an action for patent infringement which arises under the Patent Laws of the United States, in particular, 35 U.S.C. §§ 271, 281, 284, and 285.

9.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

10.      This Court has specific and general personal jurisdiction over each defendant pursuant to due process and/or the Texas Long Arm Statute, because each defendant has committed

acts giving rise to this action within Texas and within this judicial district. The Court's exercise of jurisdiction over each defendant would not offend traditional notions of fair play and substantial justice because each defendant has established minimum contacts with the forum. For example, on information and belief, each defendant has committed acts of infringement in this judicial district, by among other things, selling and offering for sale products that infringe the asserted patent, directly or through intermediaries, as alleged herein.

11.     Venue in the Western District of Texas is proper pursuant to 28 U.S.C. §§1391 and/or 1400(b). Each defendant has established places of business in the Western District of Texas. Each defendant is registered to do business in Texas. Upon information and belief, each defendant has transacted business in this District and has committed acts of infringement in this District.

**COUNT ONE - INFRINGEMENT OF**
**U.S. PATENT NO. 7,539,133**

12.     Brazos re-alleges and incorporates by reference the preceding paragraphs of this Complaint.

13.     On May 26, 2009, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 7,539,133 ("the '133 Patent"), entitled "Method and Apparatus for Preventing Congestion in Load-Balancing Networks." A true and correct copy of the '133 Patent is attached as Exhibit A to this Complaint.

14.     Brazos is the owner of all rights, title, and interest in and to the '133 Patent, including the right to assert all causes of action arising under the '133 Patent and the right to any remedies for the infringement of the '133 Patent.

15.     Defendants make, use, sell, offer for sale, import, and/or distribute in the United States, including within this judicial district, products such as, but not limited to, cloud-related solutions, including but not limited to, devices incorporating VMware's VeloCloud solutions and

SD-WAN software, such as Dell EMC SD-WAN Edge 600 series products (collectively, the "Accused Products").



https://www.dell.com/learn/us/en/15/solutions/vmware-vcloud



https://www.delltechnologies.com/en-us/networking/sd-wan-solution/index.htm

16.     The Accused Products can provide a cloud network service solution enabling sites to deploy enterprise-grade access to legacy and cloud applications over both private networks and

Internet broadband. Cloud-delivered Software-Defined Wide-Area-Network (SD-WAN) aids enterprise and cloud application performance over Internet and hybrid WAN.

> This section provides an overview of VeloCloud.
>
> Cloud-delivered Software-defined WAN from VeloCloud assures enterprise and cloud application performance over Internet and hybrid WAN while simplifying deployments and reducing costs.
>
> VeloCloud is a cloud network service solution enabling sites to quickly deploy Enterprise grade access to legacy and cloud applications over both private networks and Internet broadband. The following figure

https://docs.vmware.com/en/VMware-SD-WAN-by-VeloCloud/3.3/velocloud-admin-guide-33.pdf

17.     The Accused Products have a variety of features and capabilities including Dynamic Multipath Optimization (DMPO) technology.  VMware SD-WAN processing of traffic flows at a node in a network can provide packet level redirection, which allows one or multiple physical WAN links to be abstracted and virtualized packet-by-packet. Path selection and remediation techniques can be applied in virtually real-time. Dynamic load-sharing maintains end-customer application performance quality, regardless of the reliability or consistency of the individual physical link.

> Dell deploys VMware SD-WAN Gateways as part of its overall SD-WAN platform, managing all sites on its network and eliminating any latency that may occur. Using VMware SD-WAN Dynamic Multi-Path Optimization (DMPO), Dell no longer has to manage traffic routes on the network or troubleshoot sub-par connections. Additionally, VMware SD-WAN captures data on users and traffic patterns so that Dell IT administrators can analyze it to determine what type of transport and bandwidth is necessary based on the branch location.

https://www.velocloud.com/content/dam/digitalmarketing/velocloud/en/documents/case-study-dell-emc.pdf

## Introduction

VeloCloud Cloud-delivered SD-WAN solution enables Enterprise and Service Pro-vider to utilize multiple WAN transports simultaneously, maximize the bandwidth, while ensuring application performance. The unique Cloud-Delivered architecture offers these benefits for on-premise and cloud applications (SaaS/IaaS). This re-quires building overlay network, which consists of multiple tunnels, monitoring and adapting to the change in the underlying WAN transports in real time. To deliver a resilient overlay network that takes into account real-time performance of WAN links, VeloCloud has developed the Dynamic Multi-Path Optimization (DMPO). This document explains the key functionalities and benefits of DMPO.

https://partners.lantelligence.com/wp-content/uploads/2018/07/dmpo-brief.pdf

18.     VMware DMPO provides automatic link monitoring, auto-detection of provider and autoconfiguration of link characteristics, routing, and quality of service (QoS) settings. VMware DMPO delivers sub-second blackout and brownout protection to improve application availability. VMware DMPO remediates link degradation through forward error correction (FEC), jitter buffering activation, and synthetic packet production.

### VMware SD-WAN Features

Dynamic Multipath Optimization™ (DMPO)

VMware DMPO provides automatic link monitoring, auto-detection of provider and autoconfiguration of link characteristics, routing and quality of service (QoS) settings. VMware DMPO delivers subsecond blackout and brownout protection to improve application availability. It remediates link degradation through FEC, activating jitter buffering and synthetic packet production.

https://www.velocloud.com/content/dam/digitalmarketing/velocloud/en/documents/brief-solution-overview.pdf

19.     DMPO performs per-packet load balancing for SD-WAN networks.

## Bandwidth Aggregation

For applications that can benefit from more bandwidth, e.g. file transfer, DMPO performs per-packet load balancing, utilizing all available links to deliver all packets of a single flow to the destination.

https://partners.lantelligence.com/wp-content/uploads/2018/07/dmpo-brief.pdf

20.     Nodes may have a hub-spoke design with a hub and multiple spokes. Traffic flow may be received at the hub and may be transmitted to various spokes. When dynamic edge-to-edge is enabled, the hub will not know the traffic between edges and may keep sending low priority

traffic until congestion occurs.  As congestion conditions are detected at an edge, with multi-source inbound QoS enabled, the edge will proactively inform the hub to slow down the low priority traffic.

## Multi-Source Inbound QoS

VeloCloud supports multi-source inbound QoS which proactively measures the bandwidth usage with multiple remote peers, and will begin to regulate the traffic before congestion.With a hub-spoke design, when dynamic edge to edge is enabled, the hub will not know the traffic between edges and keep sending low priority traffic until congestion occurs. With multi-source inbound QoS enabled, the edge will proactively inform the hub to slow down the low priority traffic.

https://partners.lantelligence.com/wp-content/uploads/2018/07/dmpo-brief.pdf

21.    Under congestion, the traffic in the Accused Products will be queued. When the queue is full, packets are dropped.  This is an example of processing packets such that those associated with egress nodes for which the congestion condition does not exist have a different queuing priority within the load-balancing network than packets associated with egress nodes for which the congestion condition exists.

### Rate-Limiting an Application or Category

Rate limiting is offered in both inbound and outbound directions for a specific application. When a rate limit for the outbound/inbound traffic is applied, under congestion, the traffic will be queued and when the queue is full, the packets will be dropped.

https://partners.lantelligence.com/wp-content/uploads/2018/07/dmpo-brief.pdf

22.    The Accused Products may also provide an enhanced QoS feature called Business Policy. Based on this Business Policy configuration, the Accused Products examine the traffic being used (whether congestion condition exists or not) and identify the application behavior and the Edge WAN Link conditions. Based on this, the Business Policy optimizes application behavior driving queuing, bandwidth utilization, link steering, and the mitigation of network errors.

The VeloCloud provides an enhanced Quality of Service feature called Business Policy. This feature is defined using the **Business Policy** tab in a Profile (or at the Edge override level).

https://docs.vmware.com/en/VMware-SD-WAN-by-VeloCloud/3.3/velocloud-admin-guide-

33.pdf

Based on the business policy configuration, the VeloCloud examines the traffic being used, identifies the Application behavior, the business service objective required for a given app (High, Med, or Low), and the Edge WAN Link conditions. Based on this, the Business Policy optimizes Application behavior driving queuing, bandwidth utilization, link steering, and the mitigation of network errors.

https://docs.vmware.com/en/VMware-SD-WAN-by-VeloCloud/3.3/velocloud-admin-guide-33.pdf

23.     In view of preceding paragraphs, each and every element of at least claim 1 of the '133 Patent is found in the Accused Products.

24.     And upon information and belief, each and every element of at least one claim of the patent-in-suit is performed or practiced by Defendants at least through Defendants' own use and configuration of its own Accused Products, and/or through Defendants' own testing and configuration of its own Accused Products, and/or through Defendants' providing services for its Accused Products, including but not limited to providing installation, deployment, support and configuration of its Accused Products.

25.     Defendants continue to directly infringe at least one claim of the '133 Patent, literally or under the doctrine of equivalents, by making, using, selling, offering for sale, importing, and/or distributing the Accused Products in the United States, including within this judicial district, without the authority of Brazos.

26.     In May 2020, Plaintiff filed a suit against Defendants asserting infringement of the same patent and by the same accused products that are asserted in this case.   Plaintiff dismissed the prior suit before filing this suit.   As a result of the prior suit, Defendants had notice and actual or constructive knowledge of their infringement of the patent-in-suit since at least May 2020, before the filing of this case.   Further, Defendants had knowledge of their infringement of

the patent-in-suit before the filing of this Amended Complaint.[1]

27.     Since at least May 2020, through its actions, Defendants have actively induced product makers, distributors, retailers, and/or end users of the Accused Products to infringe the '133 Patent throughout the United States, including within this judicial district, by, among other things, advertising and promoting the use of the Accused Products in various websites, including providing and disseminating product descriptions, operating manuals, and other instructions on how to implement and configure the Accused Products. Examples of such advertising, promoting, and/or instructing include the documents at:

- https://www.vmware.com/company/acquisitions/velocloud.html

- https://www.dell.com/learn/us/en/15/solutions/vmware-vcloud

- https://www.delltechnologies.com/en-us/networking/sd-wan-solution/index.htm

---

[1] Dell filed a motion to dismiss that is mooted by this amended complaint.  Dell's motion cites a WDTX case (which relies authority from the District of Delaware) for the proposition that knowledge of a plaintiff's patent after the lawsuit was filed is insufficient to plead the requisite knowledge for indirect infringement.  *See Aguirre v. Powerchute Sports, LLC*, No. SA-10-CV-0702 XR, 2011 WL 2471299, at *3 (W.D. Tex. June 17, 2011) (citing *Xpoint Techs. v. Microsoft Corp.*, 730 F.Supp.2d 349 (D. Del. 2010)). Several Delaware courts have since rejected this rule because there is no statutory basis to support it and because there is no purpose served by the formality of requiring the plaintiff to file an amended complaint in order to be allowed to assert knowledge of the patents during the period following the filing of the original complaint.  *See Walker Digital, LLC v. Facebook, Inc.*, 852 F. Supp. 2d 559, 566 (D. Del. 2012) ("The court acknowledges that this result is inconsistent with its prior decisions in *Xpoint Techs. v. Microsoft Corp.*, 730 F.Supp.2d 349 (D.Del.2010), and *EON Corp. IP Holdings LLC v. FLO TV Inc.*, 802 F.Supp.2d 527 (D. Del. 2011). Given the ease of amendment, the limitation of damages to post-knowledge conduct, and in the interests of judicial economy, the court finds that the better reasoning is to allow a complaint that satisfies Rule 8 to proceed to discovery rather than dismissing it for lack of pre-filing knowledge when, by the time the motion to dismiss has been filed, defendant in fact has the requisite knowledge as pled by plaintiff."); *see also IOENGINE, LLC v. PayPal Holdings, Inc*., CV 18-452-WCB, 2019 WL 330515, at *4 (D. Del. Jan. 25, 2019) ("The Court sees no purpose that would be served by the formality of requiring IOENGINE to file an amended complaint in order to be allowed to assert knowledge of the patents during the period following the filing of the original complaint.").

- https://www.dell.com/en-us/work/shop/povw/sd-wan-edge-600

- https://partners.lantelligence.com/wp-content/uploads/2018/07/dmpo-brief.pdf

- https://docs.vmware.com/en/VMware-SD-WAN-by-VeloCloud/3.3/velocloud-admin-guide-33.pdf

- https://www.velocloud.com/content/dam/digitalmarketing/velocloud/en/documents/brief-solution-overview.pdf

28.     Since at least May 2020, through its actions, Defendants have contributed to the infringement of the '133 Patent by having others sell, offer for sale, or use the Accused Products throughout the United States, including within this judicial district, with knowledge that the Accused Products infringe the '133 Patent. The Accused Products are especially made or adapted for infringing the '133 Patent and have no substantial non-infringing use. For example, in view of the preceding paragraphs, the Accused Products contain functionality which is material to at least one claim of the '133 Patent.

## **JURY DEMAND**

Brazos hereby demands a jury on all issues so triable.

## **REQUEST FOR RELIEF**

WHEREFORE, Brazos respectfully requests that the Court:

(A)     Enter judgment that Defendants infringe one or more claims of the '133 Patent literally and/or under the doctrine of equivalents;

(B)     Enter judgment that Defendants have induced infringement and continue to induce infringement of one or more claims of the '133 Patent;

(C)     Enter judgment that Defendants have contributed to and continue to contribute to the infringement of one or more claims of the '133 Patent;

(D)     Award Brazos damages, to be paid by Defendants in an amount adequate to compensate Brazos for such damages, together with pre-judgment and post-judgment interest for the infringement by Defendants of the '133 Patent through the date such judgment is entered in accordance with 35 U.S.C. § 284, and increase such award by up to three times the amount found or assessed in accordance with 35 U.S.C. § 284;

(E)     Declare this case exceptional pursuant to 35 U.S.C. § 285; and

(F)     Award Brazos its costs, disbursements, attorneys' fees, and such further and additional relief as is deemed appropriate by this Court.

Dated: October 19, 2020                          Respectfully submitted,

*/s/ James L. Etheridge*
James L. Etheridge
Texas State Bar No. 24059147
Ryan S. Loveless
Texas State Bar No. 24036997
Travis L. Richins
Texas State Bar No. 24061296

ETHERIDGE LAW GROUP, PLLC
2600 E. Southlake Blvd., Suite 120 / 324
Southlake, Texas 76092
Telephone: (817) 470-7249
Facsimile: (817) 887-5950
Jim@EtheridgeLaw.com
Ryan@EtheridgeLaw.com
Travis@EtheridgeLaw.com

Mark D. Siegmund
State Bar No. 24117055
mark@waltfairpllc.com
Law Firm of Walt, Fair PLLC.
1508 North Valley Mills Drive
Waco, Texas 76710
Telephone: (254) 772-6400
Facsimile: (254) 772-6432

**COUNSEL FOR PLAINTIFF**

# EXHIBIT B4

UNITED STATES DISTRICT COURT
Western District of Texas
WACO DIVISION

| | | |
|---|---|---|
| WSOU INVESTMENTS LLC | § | |
| | § | |
| vs. | § | NO:  WA:20-CV-00480-ADA |
| | § | |
| DELL TECHNOLOGIES INC., DELL INC., | § | |
| EMC CORPORATION, VMWARE, INC. | | |

**ORDER GOVERNING PROCEEDINGS – PATENT CASE**

This Order shall govern proceedings in this case. The following deadlines are hereby set:

This case is SET for a telephonic Rule 16 Case Management Conference on Wednesday, October 21, 2020 at 1:30 p.m.  Participants shall dial into the following number 5 minutes before the scheduled time: **866.434.5269; access code 967-8090**. Lead counsel for each party, and all unrepresented parties, shall be present. Client representatives are welcome to attend, but such attendance is not required. In person attendance is permitted, but not required. Anyone planning to attend in person should so inform the Court by contacting chambers not later than two court days before the scheduled hearing so the Court can evaluate whether to hold the conference in the courtroom, or in chambers. The Court expects the parties to be prepared to discuss:

    a.  an overview of the claims and defenses, including any unique issues the parties believe should be addressed at this stage of the case;

    b.  issues involving the case schedule and potential amendments to the Court's default scheduling order, including the date for the *Markman* Hearing;

    c.  issues relating to claim construction, including whether a live tutorial would be of benefit to the Court;

    d.  issues relating to discovery, including potential amendments to the Court's default discovery limits or Protective Order; and,

    e.  any other issues the parties believe would lead to the just, speedy and inexpensive determination of this action.

2.    (Not later than 7 days before the CMC). Plaintiff shall serve preliminary infringement contentions in the form of a chart setting forth where in the accused product(s) each element of the asserted claims(s) are found.  Plaintiff shall also identify the priority date (*i.c.*

the earliest date of invention) for each asserted claim and produce: (1) all documents evidencing conception and reduction to practice for each claimed invention, and (2) a copy of the file history for each patent in suit.

3.  (Not later than 3 business days before the CMC). Lead counsel for each party shall meet and confer (either in person or by telephone), to discuss whether they believe the Court's default Scheduling Order and default Discovery Limits are appropriate for this case, and any issues relating to the management of this case they intend to raise at the CMC.

4.  (Two weeks after the CMC). The Parties shall submit an agreed Scheduling Order. If the parties cannot agree, the parties shall submit a separate Joint Motion for entry of each Order briefly setting forth their respective positions on items where they cannot agree. Absent agreement of the parties, the Plaintiff shall be responsible for the timely submission of this and other Joint filings.

5.  (Two weeks after the CMC). Deadline for Motions to Transfer. The Court also adopts the following page limits and briefing schedule for Motions to Transfer:

    a. Opening – 15 pages

    b. Response – 15 pages, due 14 days after the Opening brief

    c. Reply – 5 pages, due 7 days after the Response brief

6.  (Seven weeks after the CMC). Defendant shall serve preliminary invalidity contentions in the form of (1) a chart setting forth where in the prior art references each element of the asserted claim(s) are found, (2) an identification of any limitations the Defendant contends are indefinite or lack written description under section 112, and (3) an identification of any claims the Defendant contends are directed to ineligible subject matter under section 101. Defendant shall also produce (1) all prior art referenced in the invalidity contentions, (2) technical documents, including software where applicable, sufficient to show the operation of the accused product(s), and (3) summary, annual sales information for the accused product(s) for the two years preceding the filing of the Complaint,[1] unless the parties agree to some other timeframe.

## **DISCOVERY**

Except with regard to venue, jurisdictional, and claim construction-related discovery, all other discovery is stayed until after the *Markman* hearing. Notwithstanding this general stay of discovery, the Court will permit limited discovery by agreement of the parties, or upon request, where exceptional circumstances warrant. For example, if discovery outside the United States is contemplated, the Court will be inclined to allow such discovery to commence before the *Markman* hearing.

---

[1] With regard to expired patents, the sales information shall be provided for the two years preceding expiration.

With respect to venue and jurisdictional discovery, the Court generally grants leave for the parties to conduct targeted discovery (including, but not limited to requests for production, interrogatories, and depositions) with regard to motions to transfer venue or motions to dismiss based on lack of jurisdiction. If the parties disagree as to what reasonable discovery limits are, the Court encourages the parties to contact the Court to request a telephonic discovery hearing.

Following the *Markman* hearing, the following discovery limits will apply to this case. The Court will consider reasonable requests to adjust these limits should circumstances warrant.

1. Interrogatories: 30 per side2

2. Requests for Admission: 45 per side

3. Requests for Production: 75 per side

4. Fact Depositions: 70 hours per side (for both party and non-party witnesses combined)

5. Expert Depositions: 7 hours per report3

**<u>Electronically Stored Information</u>**. As a preliminary matter, the Court will not require general search and production of email or other electronically stored information (ESI), absent a showing of good cause. If a party believes targeted email/ESI discovery is necessary, it shall propose a procedure identifying custodians and search terms it believes the opposing party should search. The opposing party can oppose, or propose an alternate plan. If the parties cannot agree, they shall contact chambers to schedule a call with the Court to discuss their respective positions.

## DISCOVERY DISPUTES

A party may not file a Motion to Compel discovery unless: (1) lead counsel have met and conferred in good faith to try to resolve the dispute, and (2) the party has contacted the Court's law clerk (with opposing counsel) to arrange a telephone conference with the Court to summarize the dispute and the parties respective positions. After hearing from the parties, the Court will determine if further briefing is required.

## PROTECTIVE ORDER

Pending entry of the final Protective Order, the Court issues the following interim Protective Order to govern the disclosure of confidential information in this matter:

> If any document or information produced in this matter is deemed confidential by the producing party and if the Court has not entered a protective order, until a protective order is issued by the Court, the document shall be marked "confidential" or with some

---

[2] A "side" shall mean the plaintiff (or related plaintiffs suing together) on the one hand, and the defendant (or related defendants sued together) on the other hand. In the event that the Court consolidates related cases for pretrial purposes, with regard to calculating limits imposed by this Order, a "side" shall be interpreted as if the cases were proceeding individually. For example, in consolidated cases the plaintiff may serve up to 30 interrogatories on each defendant, and each defendant may serve up to 30 interrogatories on the plaintiff.

[3] For example, if a single technical expert submits reports on both infringement and invalidity, he or she may be deposed for up to 14 hours in total.

other confidential designation (such as "Confidential – Outside Attorneys Eyes Only") by the disclosing party and disclosure of the confidential document or information shall be limited to each party's outside attorney(s) of record and the employees of such outside attorney(s).

If a party is not represented by an outside attorney, disclosure of the confidential document or information shall be limited to one designated "in house" attorney, whose identity and job functions shall be disclosed to the producing party 5 days prior to any such disclosure, in order to permit any motion for protective order or other relief regarding such disclosure. The person(s) to whom disclosure of a confidential document or information is made under this local rule shall keep it confidential and use it only for purposes of litigating the case.

## CLAIM CONSTRUCTION ISSUES

**Terms for Construction**. Based on the Court's experience, the Court believes that it should have presumed limits on the number of claim terms to be construed. The "presumed limit" is the maximum number of terms that the parties may request the Court to construe without further leave of Court. If the Court grants leave for the additional terms to be construed, depending on the complexity and number of terms, the Court may split the Markman hearing into two hearings.

The presumed limits based on the number of patents-in-suit are as follows:

### Limits for Number of Claim Terms to be Construed

| 1-2 Patents | 3-5 Patents | More than 5 Patents |
|---|---|---|
| 10 terms | 12 terms | 15 terms |

When the parties submit their joint claim construction statement, in addition to the term and the parties' proposed constructions, the parties should indicate which party or side proposed that term, or if that was a joint proposal.

**Claim Construction Briefing**. The Court will require simultaneous claim construction briefing with the following default page limits; however, where exceptional circumstances warrant, the Court will consider reasonable requests to adjust these limits. These page limits shall also apply collectively for consolidated cases; however, the Court will consider reasonable requests to adjust page limits in consolidated cases where circumstances warrant. In addition, the Court is very familiar with the law of claim construction and encourages the parties to forego lengthy recitations of the underlying legal authorities and instead focus on the substantive issues unique to each case.

Unless otherwise agreed by the parties, all simultaneous filings will take place at 5:00 p.m. CT.

**Page Limits for Markman Briefs**

| Brief | 1-2 Patents | 3-5 Patents | More than 5 Patents |
|---|---|---|---|
| Opening | 20 pages | 30 pages | 30 pages, plus 5 additional pages for each patent over 5 up to a maximum of 45 pages |
| Response | 20 pages | 30 pages | 30 pages, plus 5 additional pages for each patent over 5 up to a maximum of 45 pages |
| Reply | 10 pages | 15 pages | 15 pages, plus 2 additional pages for each patent over 5 up to a maximum of 21 pages |

**Conduct of the Markman Hearing**.

The Court generally sets aside one half day for the *Markman* hearing; however, the Court is open to reserving more or less time, depending on the complexity of the case and input from the parties. The Court requires submission of technology tutorials in advance of the *Markman* hearing when they may be of benefit. The parties may submit tutorials in electronic form not later than one week before the *Markman* hearing and the Court encourages the parties to aim for tutorials with voiceovers in the 15 minute range. If a party intends to present a live tutorial, the parties should contact the Court to set-up a Zoom or telephonic tutorial to occur at least a week before the *Markman* hearing. In general, tutorials should be: (1) directed to the underlying technology (rather than argument related to infringement or validity), and (2) limited to 15 minutes per side. For the Court's convenience, the tutorial may be recorded, but will not be part of the record. Parties may not rely on or cite to the tutorial in other aspects of the litigation.

The Court will consider the parties suggestions on the order of argument at the *Markman* hearing. However, if the parties do not suggest a different procedure, the Court will allow the Plaintiff to pick the first term and then alternate by term. As a general rule, if one side proposes "plain and ordinary meaning" as its construction or asserts that a term is indefinite, the other party shall go first.

## GENERAL ISSUES

1.   The Court does not have a limit on the number of motions for summary judgment (MSJs); however, absent leave of Court, the cumulative page limit for Opening Briefs for all MSJs is 40 pages per side.

2.      There may be instances where the submission of substantive briefs via audio file will be of help to the Court. If a party is contemplating submitting a brief via audio file it should contact the Court for guidance on whether it would be helpful to the Court. However, the Court has determined that audio recordings of *Markman* briefs are of limited value and those need not be submitted. The recordings shall be made in a neutral fashion, shall be verbatim transcriptions without additional colloquy (except that citations and legal authority sections need not be included), and each such file shall be served on opposing counsel. The Court does not have a preference for the manner of recording and has found automated software recordings, as well as attorney recordings, to be more than satisfactory. Audio files shall be submitted via USB drive, Box (not another cloud storage), or email to the law clerk (with a cc to opposing counsel) and should be submitted in mp3 format.

3.      The Court will entertain reasonable requests to streamline the case schedule and discoveryand encourages the parties to contact the Court's law clerk (with opposing counsel) toarrange a call with the Court when such interaction might help streamline the case.

4.      The Court is generally willing to extend the response to the Complaint up to 45 days ifagreed by the parties. However, longer extensions are disfavored and will require goodcause.

5.      For Markman briefs, summary judgment motions, and *Daubert* motions, each party shalldeliver to Chambers one (1) paper copy of its Opening, Response, and Reply Briefs, omittingattachments, no later than one week after the last-filed brief or at least a week before the hearing, whichever is earlier.

6.      Plaintiff must file a notice informing the Court when an IPR is filed, the expected time for an institution decision, and the expected time for a final written decision, within two weeks of the filing of the IPR.

7.      To the extent the parties need to email the Court, the parties should use the following emailaddress: TXWDml_LawClerks_JudgeAlbright@txwd.uscourts.gov.


ORDERED this 5th day of October, 2020.



ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

APPENDIX A – DEFAULT SCHEDULE

| Deadline | Item |
|---|---|
| 7 days before CMC | Plaintiff serves preliminary[4] infringement contentions in the form of a chart setting forth where in the accused product(s) each element of the asserted claim(s) are found. Plaintiff shall also identify the earliest priority date (*i.e.* the earliest date of invention) for each asserted claim and produce: (1) all documents evidencing conception and reduction to practice for each claimed invention, and (2) a copy of the file history for each patent in suit. |
| 2 weeks after CMC | Deadline for Motions to Transfer. |
| 7 weeks after CMC | Defendant serves preliminary invalidity contentions in the form of (1) a chart setting forth where in the prior art references each element of the asserted claim(s) are found, (2) an identification of any limitations the Defendant contends are indefinite or lack written description under section 112, and (3) an identification of any claims the Defendant contends are directed to ineligible subject matter under section 101. Defendant shall also produce (1) all prior art referenced in the invalidity contentions, (2) technical documents, including software where applicable, sufficient to show the operation of the accused product(s), and (3) summary, annual sales information for the accused product(s) for the two years preceding the filing of the Complaint, unless the parties agree to some other timeframe. |
| 9 weeks after CMC | Parties exchange claim terms for construction. |
| 11 weeks after CMC | Parties exchange proposed claim constructions. |
| 12 weeks after CMC | Parties disclose extrinsic evidence. The parties shall disclose any extrinsic evidence, including the identity of any expert witness they may rely upon with respect to claim construction or indefiniteness. With respect to any expert identified, the parties shall also provide a summary of the witness's expected testimony including the opinions to be expressed and a general description of the basis and reasons therefor. A |

---

[4] The parties may amend preliminary infringement contentions and preliminary invalidity contentions without leave of court so long as counsel certifies that it undertook reasonable efforts to prepare its preliminary contentions and the amendment is based on material identified after those preliminary contentions were served, and should do so seasonably upon identifying any such material. Any amendment to add patent claims requires leave of court so that the Court can address any scheduling issues.

OGP Version 3.0

| | failure to summarize the potential expert testimony in a good faith, informative fashion may result in the exclusion of the proffered testimony. With respect to items of extrinsic evidence, the parties shall identify each such item by production number or produce a copy of any such item if not previously produced. |
|---|---|
| 13 weeks after CMC | Deadline to meet and confer to narrow terms in dispute and exchange revised list of terms/constructions. |
| 14 weeks after CMC | Parties file Opening claim construction briefs, including any arguments that any claim terms are indefinite. |
| 17 weeks after CMC | Parties file Responsive claim construction briefs. |
| 19 weeks after CMC | Parties file Reply claim construction briefs. |
| 20 weeks after CMC | Parties submit Joint Claim Construction Statement. In addition to filing, the parties shall jointly submit, via USB drive, Box (not another cloud storage),[5] or email to the law clerk, pdf versions of all as-filed briefing and exhibits. Each party shall deliver to Chambers paper copies of its Opening, Response , and Reply *Markman* Briefs, omitting attachments. Absent agreement of the parties, the Plaintiff shall be responsible for the timely submission of this and other Joint filings. |
| 23 weeks after CMC (but at least 1 week before Markman hearing) | Parties submit optional technical tutorials. The parties shall also jointly submit, via USB drive, Box (not another cloud storage), or email to the law clerk, pdf versions of all as-filed briefing and exhibits. |
| 24 weeks after CMC (or as soon as practicable) | Markman Hearing at [9:00 a.m. or 1:00 p.m.] |
| 1 business day after Markman hearing | Fact Discovery opens; deadline to serve Initial Disclosures per Rule 26(a). |
| 6 weeks after Markman hearing | Deadline to add parties. |
| 8 weeks after Markman hearing | Deadline to serve Final Infringement and Invalidity Contentions. After this date, leave of Court is required for any amendment to Infringement or Invalidity contentions. This deadline does not relieve the Parties of their obligation to |

---

[5] To the extent a party wishes to use cloud storage, the parties should contact the law clerk to request a Box link so that the party can directly upload the file to the Court's Box account.

OGP Version 3.0

| | seasonably amend if new information is identified after initial contentions. |
|---|---|
| 12 weeks after Markman hearing | Deadline to amend pleadings. A motion is not required unless the amendment adds patents or patent claims. |
| 26 weeks after Markman | Deadline for the first of two meet and confers to discuss significantly narrowing the number of claims asserted and prior art references at issue. Unless the parties agree to the narrowing, they are ordered to contact the Court's Law Clerk to arrange a teleconference with the Court to resolve the disputed issues. |
| 30 weeks after Markman hearing | Close of Fact Discovery. |
| 31 weeks after Markman hearing | Opening Expert Reports. |
| 35 weeks after Markman hearing | Rebuttal Expert Reports. |
| 38 weeks after Markman hearing | Close of Expert Discovery. |
| 39 weeks after Markman hearing | Deadline for the second of two meet and confer to discuss narrowing the number of claims asserted and prior art references at issue to triable limits. To the extent it helps the parties determine these limits, the parties are encouraged to contact the Court's Law Clerk for an estimate of the amount of trial time anticipated per side. The parties shall file a Joint Report within 5 business days regarding the results of the meet and confer. |
| 40 weeks after Markman hearing | Dispositive motion deadline and *Daubert* motion deadline. |
| 42 weeks after Markman hearing | Serve Pretrial Disclosures (jury instructions, exhibits lists, witness lists, discovery and deposition designations). |
| 44 weeks after Markman hearing | Serve objections to pretrial disclosures/rebuttal disclosures. |
| 45 weeks after Markman hearing | Serve objections to rebuttal disclosures and **File** Motions *in limine.* |

9

OGP Version 3.0

| 46 weeks after Markman hearing | File Joint Pretrial Order and Pretrial Submissions (jury instructions, exhibits lists, witness lists, discovery and deposition designations); file oppositions to motions *in limine* |
|---|---|
| 47 weeks after Markman hearing | File Notice of Request for Daily Transcript or Real Time Reporting. If a daily transcript or real time reporting of court proceedings is requested for trial, the party or parties making said request shall file a notice with the Court and e-mail the Court Reporter, Kristie Davis at kmdaviscsr@yahoo.com<br><br>Deadline to meet and confer regarding remaining objections and disputes on motions *in limine*. |
| 3 business days before Final Pretrial Conference. | File joint notice identifying remaining objections to pretrial disclosures and disputes on motions *in limine*. |
| 49 weeks after Markman hearing (or as soon as practicable) | Final Pretrial Conference. The Court expects to set this date at the conclusion of the *Markman* Hearing. |
| 52 weeks after Markman hearing (or as soon as practicable)[6] | Jury Selection/Trial. The Court expects to set these dates at the conclusion of the *Markman* Hearing. |

[6] If the actual trial date materially differs from the Court's default schedule, the Court will consider reasonable amendments to the case schedule post-*Markman* that are consistent with the Court's default deadlines in light of the actual trial date.

OGP Version 3.0