# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | |
|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT,<br><br>Plaintiff,<br><br>v.<br><br>DELL Technologies INC., DELL INC., EMC CORPORATION, AND VMWARE, INC.,<br><br>Defendants. | Case No. 6:20-cv-00480-ADA<br><br><br>**JURY TRIAL DEMANDED**<br><br><br>**PUBLIC VERSION** |

**DEFENDANTS' OPPOSED MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION
UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1)**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................1

II. FACTUAL BACKGROUND.............................................................................3

    A. The Assignment History of the '133 Patent ...........................................3

    B. ███████████████████████████████████.....................................3

    C. █████████████████████████████..................6

    D. ████████████████████ ................................................7

III. WSOU BEARS THE BURDEN TO PROVE STANDING..............................7

IV. WADE NEVER ASSIGNED THE '133 PATENT TO WSOU .......................10

    A. █████████████████..........................................10

    B. ██████████████████ ..................................11

V. WSOU LACKS STANDING TO SUE FOR PRE-ASSIGNMENT DAMAGES ...........14

    A. ███████████████████ ..............................14

    B. █████████████████████.........................................15

        1. ███████████████████ ......................................15

        2. █████████████████████....17

        3. The USPTO Assignment Records Confirm ████████ ████████.........................................18

VI. CONCLUSION .................................................................................................18

# TABLE OF AUTHORITIES

Page(s)

### CASES

*Abbott Point of Care Inc. v. Epocal, Inc.*,
  666 F.3d 1299 (Fed. Cir. 2012) ........................................................................7

*Abraxis Bioscience, Inc. v. Navinta LLC*,
  625 F.3d 1359 (Fed. Cir. 2010) .............................................................. 7, 9, 12

*Arachnid, Inc. v. Merit Indus.*,
  939 F.2d 1574 (Fed. Cir. 1991) ............................................................ 8, 14, 15

*Barlow & Haun, Inc. v. United States*,
  805 F.3d 1049 (Fed. Cir. 2015) ........................................................................9

*Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*,
  583 F.3d 832 (Fed. Cir. 2009), *aff'd*, 563 U.S. 776 (2011) ........................... 15, 16

*Bowmer v. Bowmer*,
  50 N.Y.2d 288 (N.Y. 1980) ............................................................................18

*Campbell v. Thomas*,
  897 N.Y.S.2d 460 (2010) ...............................................................................13

*DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*,
  517 F.3d 1284 (Fed. Cir. 2008) ......................................................................15

*Enzo APA & Son, Inc. v. Geapag A.G.*,
  134 F.3d 1090 (Fed. Cir. 1998) ........................................................................2

*Epistar Corp. v. Int'l Trade Comm'n*,
  566 F.3d 1321 (Fed. Cir. 2009) ......................................................................11

*F.D.I.C. v. McFarland*,
  243 F.3d 876 (5th Cir. 2001) .........................................................................11

*Faison v. Lewis*,
  25 N.Y.3d 220 (N.Y. 2015) ............................................................................12

*Gellman v. Telular Corp.*,
  2010 WL 5173213 (E.D. Tex. Dec. 14, 2010) ............................................ 15, 16

*Green Tech. Lighting Corp. v. Liberty Surplus Ins. Corp.*,
  No. 1:18-CV-01799 (PAC), 2020 WL 2036705 (S.D.N.Y. Apr. 28, 2020) ........................17

*LNV Corp. v. Sorrento*,
  31 N.Y.S.3d 922, 2016 N.Y. Slip Op. 50250(U), (Sup. Ct. N.Y. Feb. 29,
  2016) .................................................................................................................12

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,
  925 F.3d 1225 (Fed. Cir. 2019)........................................................................8, 9

*Mas-Hamilton Grp. v. LaGard, Inc.*,
  156 F.3d 1206 (Fed. Cir. 1998)............................................................................9

*Minco, Inc. v. Combustion Eng'g, Inc.*,
  95 F.3d 1109 (Fed. Cir. 1996)............................................................................14

*Moore v. Marsh*,
  74 U.S. 515 (1868) ........................................................................................9, 14

*Morrow v. Microsoft Corp.*,
  499 F.3d 1332 (Fed. Cir. 2007)......................................................................8, 10

*Muzak Corp. v. Hotel Taft Corp.*,
  1 N.Y.2d 42 (N.Y. 1956) ....................................................................................18

*Nat'l Org. for Women, Inc. v. Scheidler*,
  510 U.S. 249 (1994) .............................................................................................9

*Neutron Depot, LLC v. All Web Leads, Inc.*,
  No. AU-16-CA-00901-SS, 2017 WL 9538893 (W.D. Tex. Nov. 30, 2017) ......................2, 3

*S.O.T.A.T., Inc. v. Frank's Int'l, Inc.*,
  No. 2:06 CV 523, 2008 WL 4093599 (E.D. Tex. Aug. 28, 2008) ......................14

*Script Sec. Sol., LLC v. Amazon.com, Inc.*,
  No. 2:15-CV-1030-WCB, 2016 WL 6433776 (E.D. Tex. Oct. 31, 2016).............8

*Sicom Sys., Ltd. v. Agilent Techs., Inc.*,
  427 F.3d 971 (Fed. Cir. 2005).........................................................................2, 7

*Speedplay, Inc. v. Bebop, Inc.*,
  211 F.3d 1245 (Fed. Cir. 2000).........................................................................15

*Sphere Drake Insurance Ltd. v. Clarendon National Insurance Co.*,
  263 F.3d 26 (2d Cir. 2001).................................................................................13

*Spota v. Jackson*,
  10 N.Y.3d 46 (2008)...........................................................................................13

*Uniloc 2017 LLC v. Google LLC*,
  508 F. Supp. 3d 556 (N.D. Cal. 2020) ................................................................9

*Uniloc USA, Inc. v. Apple, Inc.*,
    2020 WL 7122617 (N.D. Cal. Dec. 4, 2020) .........................................................9

*Wacoh Co. v. Chrysler LLC*,
    No. 08-cv-456-slc, 2009 WL 36666 (W.D. Wis. Dec. 1, 2008) ............................8

*WiAV Sols. LLC v. Motorola, Inc.*,
    631 F.3d 1257 (Fed. Cir. 2010) ....................................................................8, 9

### OTHER AUTHORITIES

MPEP, § 301 (June 2020) ..........................................................................................18

### TREATISES

BLACK'S LAW DICTIONARY (11th ed. 2019) .............................................................12

Restatement (Second) of Contracts § 203(c) (Am. L. Inst. 1981) .............................18

Restatement (Second) of Contracts § 328 (Am. L. Inst. 1981) .................................11

5B Wright & Miller, *Federal Practice & Procedure* § 1350 (3d ed. 2004)..................8

## TABLE OF ABBREVIATIONS

| Abbreviation | Term |
| --- | --- |
| '133 patent | U.S. Patent No. 7,539,133 |
| Dell | Dell Technologies Inc., Dell Inc., EMC Corporation, and VMware, Inc. |
| NPE | Non-practicing entity |
| Amended PPA | Amended Patent Purchase Agreement |
| PPA | Patent Purchase Agreement |
| Wade | Wade and Company |
| WSOU | WSOU Investments, LLC |

# TABLE OF EXHIBITS

| Exhibit | Document |
|---|---|
| A | USPTO Reel 017726 Frame 0867 |
| B | USPTO Reel 022446 Frame 0223 |
| C | USPTO Reel 049636 Frame 0201 |
| D | USPTO Reel 044000 Frame 0053 |
| E | ███████████████████████████ |
| F | ██████████████████████████████████ |
| G | ███████████████████████ |
| H | Black's Law Dictionary (11th ed. 2019) (example provided under definition of "VOID") |
| I | █████████████ |
| J | 2020 Patent Dispute Report: Year in Review, *available at* https://www.unifiedpatents.com/insights/2020-patent-dispute-report-year-in-review |
| K | Analytics: The Most Litigious District Court Patent Plaintiffs, *available at* https://lawstreetmedia.com/news/tech/analytics-the-most-litigious-district-court-patent-plaintiffs |
| L | Etchegoyen Deposition Exhibit 8 (BRAZOS-GOOALL-0002132) |
| M | Etchegoyen Deposition Exhibit 9 (BRAZOS-GOOALL-0007904) |
| N | ██████████████████████████████ |
| O | Excerpt from Deposition Transcript of Stuart Shanus, dated April 12, 2022 |
| P | Federal Trade Commission, Patent Assertion Entity Activity: An FTC Study (2016), available at https://www.ftc.gov/system/files/documents/reports/patent-assertion-entity-activity-ftc-study/p131203_patent_assertion_entity_activity_an_ftc_study_0.pdf |

Defendants move under FRCP 12(b)(1) to dismiss WSOU's lawsuit for lack of subject matter jurisdiction.  WSOU does not own the '133 patent (the sole asserted patent in this action) and thus lacks standing to bring this lawsuit.

## I.    INTRODUCTION

WSOU lacks standing for multiple independent reasons.  By way of background, WSOU is an NPE founded by Craig Etchegoyen.  Its primary business is threatening and filing lawsuits based on patents that it purportedly acquired from Nokia and related entities such as Alcatel Lucent.  However, WSOU never actually acquired the '133 patent.  This is not the first time Mr. Etchegoyen failed to acquire sufficient rights to patents before asserting them.  In just the last two years, Uniloc[1]—another NPE founded by Mr. Etchegoyen—has had lawsuits against Apple and Google dismissed because it did not have exclusionary rights in the asserted patents.  With fact discovery now closed and all fact depositions completed, it is clear that WSOU does not have *any* rights—let alone exclusionary rights—to the '133 patent for several reasons.

First, the '133 patent was never assigned to WSOU, period. ████████████



[1] ███████████████████████████████████████

[2] ███████████████████████████████████████

1

█████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████    No interest in that patent was ever assigned to WSOU.

Second, even if there were some purported assignment to WSOU of *some* interest in the '133 patent—and there was not—WSOU still has a fatal standing problem.  ████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████

Finally, even if WSOU's standing as to the '133 patent did not suffer from the previous fatal deficiencies, ████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████

All of these defects are jurisdictional and cannot retroactively be cured because "[s]tanding must be present at the time the suit is brought." *Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 975–76 (Fed. Cir. 2005); *see also Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998) ("[N]unc pro tunc assignments are not sufficient to confer retroactive standing."); *Neutron Depot, LLC v. All Web Leads, Inc.*, No. AU-16-CA-00901-SS, 2017 WL 9538893, at *2, n.3 (W.D. Tex. Nov. 30, 2017) (rejecting argument that after suit was filed Plaintiff gained the retroactive right to sue for past infringement).  As a result, the case must be dismissed.

---

3 ████████████████████████████████████████████████████████████████████████████████ *See infra* p. 13 n.9.

## II.    FACTUAL BACKGROUND

### A.    The Assignment History of the '133 Patent

On March 21, 2006, the '133 patent's named inventors assigned to Lucent Technologies Inc. the "entire right, title and interest in" the patent application that ultimately issued as the '133 patent.  Ex. A (USPTO Reel 017726 Frame 0867), at 2.  The assignment was recorded with the USPTO on March 23, 2006.  *Id.* at 1.  Lucent Technologies Inc. then assigned the '133 patent to Alcatel-Lucent USA Inc.  Ex. B (USPTO Reel 022446 Frame 0223).  After that assignment, Alcatel-Lucent USA Inc. changed its name to Nokia of America Corporation and assigned the '133 patent to Alcatel Lucent.  Ex. C (USPTO Reel 049636 Frame 0201).

On September 25, 2017, WSOU recorded, at the Patent Office, several documents purporting to relate to the '133 patent.[4]  WSOU recorded an assignment of assignor's interest from Alcatel Lucent to Wade.  Ex. D (USPTO Reel 044000 Frame 053).

### B.



---

[4]  Although WSOU recorded this assignment as purporting to be from Alcatel Lucent to WSOU, the included documentation reflects that the patents were assigned from Alcatel Lucent to Wade. ██████████████████████████ *See infra* Section II.D.  Moreover, WSOU recorded this assignment at the Patent Office as having an "[e]xecution date" of July 22, 2017.



█████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████. *Id.* ████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

     ████████████████████████████████████████████

████████████████████████████████████████████████

███████  ███████████████████████████████████████

     ████████████████████████████████████████████

█████████████████████████████████████████████

          ██████████████████████████████████████
          ██████████████████████████████████████
          ██████████████████████████████████████
          ██████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████

          ██████████████████████████████████████
          ██████████████████████████████████████
          ██████████████████████████████████████
          ██████████████████████████████████████

███████████████████████████████████

**C.** █████████████████████████████████████████████████████████
████████████████████████████████████████████████████ █

███████████████████████████████████████████████████ █

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████ *See infra* Section V.

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████ ██████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

**D.** 

## III.   WSOU BEARS THE BURDEN TO PROVE STANDING

"Standing to sue is a threshold requirement in every federal action."   *Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 975 (Fed. Cir. 2005).   As the plaintiff, WSOU bears "the burden to show necessary ownership rights to support standing to sue."   *Abbott Point of Care Inc. v. Epocal, Inc.*, 666 F.3d 1299, 1302 (Fed. Cir. 2012).   To meet its burden, WSOU "must demonstrate that it held enforceable title to the patent at the inception of the lawsuit" or else its infringement claims must be dismissed for lack of jurisdiction.   *Abraxis Bioscience, Inc. v. Navinta LLC*, 625

F.3d 1359, 1364 (Fed. Cir. 2010).[5]   These standards apply to "each claim [a plaintiff] seeks to press," including for past infringement.  *Wacoh Co. v. Chrysler LLC*, No. 08-cv-456-slc, 2009 WL 36666, at *9 (W.D. Wis. Dec. 1, 2008).

The plaintiff must also satisfy the requirements of both Article III of the U.S. Constitution (constitutional standing) and 35 U.S.C. § 281 (statutory standing).  *See, e.g.*, *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1234–36 (Fed. Cir. 2019).   Constitutional standing determines whether a plaintiff "may invoke the judicial power" at all, while statutory standing "establish[es] when a party may obtain relief under the patent laws."   *Id.* at 1235.   To meet the "injury in fact" requirement for constitutional standing, the plaintiff must possess exclusionary rights in the patent.  *Id.* at 1234 (citing *WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1264 (Fed. Cir. 2010)).    "Exclusionary rights" are "the ability to exclude others from practicing an invention or 'to forgive activities that would normally be prohibited under the patent statutes.'"  *Id.* (quoting *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1342 (Fed. Cir. 2007)).    A plaintiff lacking exclusionary rights cannot have constitutional standing because no injury in fact can occur.  *Morrow*, 499 F.3d at 1340–41.

Further, "the general rule is that one seeking to recover money damages for infringement of a United States patent (an action 'at law') must have held the legal title to the patent during the time of the infringement."  *Arachnid, Inc. v. Merit Indus.*, 939 F.2d 1574, 1579 (Fed. Cir. 1991).

---

[5]  Where, as here, the standing challenge is "factual" rather than "facial," the Court "does not assume the correctness of the factual allegations in the complaint.  Rather, in the case of a factual challenge to jurisdiction, the question is whether the facts actually establish that the court has jurisdiction over the matter.   In that setting, the burden is on the plaintiff to show jurisdiction, and parties may offer factual evidence bearing on that question."   *Script Sec. Sol., LLC v. Amazon.com, Inc.*, No. 2:15-CV-1030-WCB, 2016 WL 6433776, at *2 (E.D. Tex. Oct. 31, 2016) (citing 5B Wright & Miller, *Federal Practice & Procedure* § 1350, at 154–80 (3d ed. 2004)).   In a factual 12(b)(1) challenge, it is appropriate to consider documentary evidence produced in the litigation, such as the agreements referenced herein. *Script Sec.*, 2016 WL 6433776, at *2.

The mere reference in an assignment to all right, title, and interest in the patent does not transfer the right to sue for past infringement. *Moore v. Marsh*, 74 U.S. 515, 522 (1868). "A party may sue for past infringement transpiring before it acquired legal title to a patent if a written assignment *expressly grants* the party a right to do so." *Abraxis*, 625 F.3d at 1367 (emphasis added). Standing to sue for past infringement cannot be cured. *See Mas-Hamilton Grp. v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998) (explaining that a *nunc pro tunc* assignment cannot cure a standing defect existing at the time the suit was filed).

The right to sue for damages predating patent assignment is an exclusionary right because it provides the plaintiff with the right to exclude others from practicing the invention during that period (which is the legally protected interest that is harmed by an alleged infringement). *Lone Star*, 925 F.3d at 1234; *WiAV Sol.*, 631 F.3d at 1264–65. Whether the plaintiff holds the right to sue for alleged infringement during that pre-assignment period is therefore a constitutional standing issue. *Lone Star*, 925 F.3d at 1234–35. A challenge to a plaintiff's constitutional standing is properly raised under FRCP 12(b)(1). *Uniloc 2017 LLC v. Google LLC*, 508 F. Supp. 3d 556, 564 (N.D. Cal. 2020); *see also Uniloc USA, Inc. v. Apple, Inc.*, 2020 WL 7122617 (N.D. Cal. Dec. 4, 2020) (dismissing case for lack of standing).[6] The plaintiff's lack of constitutional standing can be raised at any time by a defendant, or *sua sponte* by the Court. *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 255 (1994); *Barlow & Haun, Inc. v. United States*, 805 F.3d 1049, 1060 n.5 (Fed. Cir. 2015).

---

[6] ████████████████████████████████████████████████████████

## IV.   WADE NEVER ASSIGNED THE '133 PATENT TO WSOU

WSOU cannot and does not own *any* rights in the '133 patent because there has never been any valid assignment to WSOU of that patent. ███████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████Each of these arguments is discussed in turn below.  Because WSOU never obtained any rights in the '133 patent, it suffers no injury in fact from alleged infringement, and therefore lacks Article III standing to assert the '133 patent against Defendants.  *See Morrow*, 499 F.3d at 1339.

**A.**   ████████████████████████████████

WSOU never obtained exclusionary rights to the '133 patent because ███████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████

10

It is black-letter law that ██████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████ Restatement (Second) of Contracts § 328 (Am. L. Inst. 1981). ("[A]ssignment

in similar general terms is an assignment of the assignor's rights and a delegation of his

*unperformed duties* under the contract."); *Epistar Corp. v. Int'l Trade Comm'n*, 566 F.3d 1321,

1333 (Fed. Cir. 2009) ("Black letter contract law states that the assignment of a contract to an

assignee . . . only changes the obligated party, not the scope of the obligation."); *see also F.D.I.C.*

*v. McFarland*, 243 F.3d 876, 887 (5th Cir. 2001) ("[A]n assignee takes all of the rights of the

assignor, no greater and no less."). ██████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████████████

**B.**   █████████████████████████████████████████████

Even if Wade had successfully assigned the '133 patent to WSOU ████████████████

███████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████   ██████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

█████████████████████████████████████████████   The phrase "void *ab initio*"

means: "Null from the beginning, as from the first moment when a contract is entered into." BLACK'S LAW DICTIONARY (11th ed. 2019) (example provided under definition of "VOID") (Ex. H); *Faison v. Lewis*, 25 N.Y.3d 220, 222, 224, 230 (N.Y. 2015) (holding that something void *ab initio* "is never entitled to legal effect" because "[v]oid things are as no things") (internal citations omitted); *LNV Corp. v. Sorrento*, 31 N.Y.S.3d 922, 2016 N.Y. Slip Op. 50250(U), at *3 (Sup. Ct. N.Y. Feb. 29, 2016) (citing *Faison* for its explanation of the term "void *ab initio*"). ████

████████████████████████████████████████████████████████

████████████████████ █ ████████████████████████████████

███████████████████████████████     WSOU therefore has not met, and cannot meet, its burden to demonstrate standing. *See Abraxis*, 625 F.3d at 1364.

WSOU is an NPE. ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████[8]   Since its inception, WSOU has been an NPE.   WSOU has never employed any inventors at the time of the purported inventions of their patents, and did *not* research or develop any of the technology claimed by its patents.  Rather, WSOU activities to date have consisted of monetization of the patents through licensing and filing lawsuits.  *E.g.*, ████████████ Ex. J (2020 Year Review), at 1 ("WSOU Investments accounted for 5% of all patent litigation in 2020 and was the most active assertor with 187 cases brought in district court."); Ex. K (Analytics), at

---

[7] ████████████████████████████████████████████
████████████████████████████████████████████████

[8]  The Federal Trade Commission has referred to NPEs as "Patent Assertion Entities," ("PAEs") and defined PAEs as businesses that acquire patents from third parties and seek to generate revenue by asserting them against alleged infringers.  Ex. P (FTC Study), at 1.

3 ("WSOU Investments averages approximately five new case filings per week.").  Thus, to the extent WSOU argues ███████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████ █

To the extent WSOU argues that ██████████████████████████████████████

████████████████████████████████ WSOU's argument is a red herring and wrong. ███████████

████████████████████████████████████████████████████████████████████

█████████████████████████████ *Spota v. Jackson*, 10 N.Y.3d 46, 52 (2008) ("This conclusion is supported by the clause, present in each version, that '[a]ny lease, contract or agreement . . . *shall be void*,' as such language would be meaningless if the tribe could, by its actions, "agree" to accept an outsider and change such person's status as an 'intruder.'") (emphasis added); *Campbell v. Thomas*, 897 N.Y.S.2d 460, 466 (2010) (explaining that "the parties to a void marriage (and everyone else) are free to treat the marriage as a nullity without the involvement of a court"); *Sphere Drake Insurance Ltd. v. Clarendon National Insurance Co.*, 263 F.3d 26, 31 (2d Cir. 2001) ("[I]f an agreement is void, it cannot be a contract.").  Thus, Defendants are not enforcing the terms of a contract, but rather challenging standing (due to the absence of a contract).

---

9 

Thus, because WSOU never obtained any rights to the '133 patent from Wade—even if Wade had rights to give, which it did not—WSOU lacks standing and its claim for patent infringement should be dismissed in its entirety.

## V.   WSOU LACKS STANDING TO SUE FOR PRE-ASSIGNMENT DAMAGES

In addition to the preceding fatal standing problems, WSOU also never obtained the right to sue for *past* damages relating to the '133 patent. ████████████████████████████

████████████████████████████████████████████████████████████

### A.   ████████████████████████████████

WSOU claims it "is the owner of all rights, title, and interest in and to the '133 patent, including the right to assert all causes of action arising under the '133 Patent and ***the right to any remedies for the infringement*** of the '133 Patent."   Dkt. 35 ¶ 14 (emphasis added).   But WSOU lacks standing to sue for past infringement of the '133 patent because ████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████ *Moore*, 74 U.S. at 522; *Arachnid*, 939 F.2d at 1579 & n.7; *see also Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1117 (Fed. Cir. 1996) ("As the Supreme Court stated, it is a 'great mistake' to 'suppose' that the assignment of the patent carries with it the right to sue for past infringement."); *S.O.T.A.T., Inc. v. Frank's Int'l, Inc.*, No. 2:06 CV 523, 2008 WL 4093599, at *3 (E.D. Tex. Aug. 28, 2008) ("It is settled law that a transfer of a right of action for past infringement must be express, and cannot be inferred from an assignment of the patent itself.") (internal citation omitted).

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████



Accordingly, the Court should dismiss WSOU's claims for infringement before this date.

    **B.**

      **1.**

To the extent WSOU argues that

When a contract's language is prospective and states that rights "*shall be* the property of the client" and/or that "all rights thereto *will be* assigned," the contract is not a present assignment but an agreement or promise to assign in the future. *See Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1253 (Fed. Cir. 2000) (emphases added) (citing *Arachnid*, 939 F.2d at 1574, 1576–81). Such a contract does not operate as an immediate assignment of legal title. *Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d 832, 841–42 (Fed. Cir. 2009), *aff'd*, 563 U.S. 776 (2011). "To determine whether a contractual provision is a present assignment of future rights or a promise to assign rights in the future, the language of the contract is dispositive." *Gellman v. Telular Corp.*, 2010 WL 5173213, at *4 (E.D. Tex. Dec. 14, 2010); *see also DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1290 (Fed. Cir. 2008) ("[W]e have

held that whether an assignment of patent rights in an agreement such as the one in this case is automatic, requiring no further act on the part of the assignee, or merely a promise to assign depends on the contractual language.").



*Stanford*, 583 F.3d at 841–42; *see Gellman v. Telular Corp.*, 2010 WL 5173213, at *3 (E.D. Tex. Dec. 14, 2010), *aff'd*, 449 F. App'x 941 (Fed. Cir. 2011) ("Because Plaintiff has not produced a written assignment of the patent in suit and her alternative theories create an obligation to assign the patent rather than an actual assignment, Plaintiff has failed to demonstrate complete legal title to the patent-in-suit.").[10]

---

[10] State law generally governs who owns patent rights and on what terms. *Stanford*, 583 F.3d at 841. However, whether contractual language effects a present assignment of patent rights, or an agreement to assign rights in the future, is a question of Federal Circuit law. *Id.*

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████,

WSOU would be wrong.  Isolating words "flies in the face of the basic principle of New York contract interpretation that the Court must read the [contract] as a whole, and not myopically scrutinize individual words and provisions in isolation."  *Green Tech. Lighting Corp. v. Liberty Surplus Ins. Corp.*, No. 1:18-CV-01799 (PAC), 2020 WL 2036705, at *5 (S.D.N.Y. Apr. 28, 2020).  ████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████

**2.**   ████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████

**3.    The USPTO Assignment Records Confirm** ███████████
████████████████████

Finally, ████████████████████████████████████████████████

█████████████   *See* Ex. D (USPTO Reel 044000 Frame 0053).  It would make no sense to have

a specific assignment execution document be filed with the USPTO if a different, privately held

document were to override it and impose different terms on the transfer.    To do so would impair

the public notice function of the USPTO assignment registration database, cause confusion over

ownership of rights, and be prejudicial to any subsequent defendant who might be subjected to a

claim for past damages from either or both transacting parties.  *See* MPEP, § 301, Part V(A) (June

2020).

In contract law, a more specific provision controls over a more general one.   *See, e.g.,*

*Bowmer v. Bowmer*, 50 N.Y.2d 288, 294 (N.Y. 1980) ("[T]he specific provisions [of a contract]

tend to restrict the general."); *Muzak Corp. v. Hotel Taft Corp.*, 1 N.Y.2d 42, 46–47 (N.Y. 1956)

("Even if there was an inconsistency between a specific provision and a general provision of a

contract . . . the specific provision controls."); *see also* Restatement (Second) of Contracts § 203(c)

(Am. L. Inst. 1981) ("[S]pecific terms and exact terms are given greater weight than general

language.").   Thus, ████████████████████████████████████████████

████████████████████████████████████

## VI.    CONCLUSION

Defendants respectfully request that the Court dismiss with prejudice the entirety of

WSOU's claim.  Alternatively, WSOU never received the right to assert claims for infringement

of the '133 patent ███████████████████  WSOU has no legal right to seek relief

from this Court to bring any claim involving the time period prior to such date.

Dated:  June 8, 2022                              By:  */s/ Barry K. Shelton*
                                                         _____

18

Barry K. Shelton
Texas State Bar No. 24055029
bshelton@winston.com
**WINSTON & STRAWN LLP**
2121 North Pearl Street, Suite 900
Dallas, TX  75201
Telephone:  214-453-6407
Facsimile:  214-453-6400

Benjamin Hershkowitz
bhershkowitz@gibsondunn.com
Brian A. Rosenthal
brosenthal@gibsondunn.com
Allen Kathir
akathir@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY  10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

Y. Ernest Hsin
ehsin@gibsondunn.com
Jaysen S. Chung
jschung@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
555 Mission Street, Suite 3000
San Francisco, CA  94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306

Ryan K. Iwahashi
riwahashi@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
1881 Page Mill Road
Palo Alto, CA  94304-1211
Telephone:  650.849.5300
Facsimile:  650.849.5333

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on June 8, 2022, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a).

<u>/s/ Barry K. Shelton</u>
Barry K. Shelton
