# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| WSOU INVESTMENTS, LLC d/b/a/ BRAZOS LICENSING AND DEVELOPMENT,<br><br>    Plaintiff,<br><br>v.<br><br>DELL TECHNOLOGIES INC., DELL INC., EMC CORPORATION, and VMWARE, INC.,<br><br>    Defendants. | Case No. 6:20-cv-00480-ADA<br>Case No. 6:20-cv-00481-ADA<br>Case No. 6:20-cv-00486-ADA<br><br>**JURY TRIAL DEMANDED**<br><br> |

**DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS (-480, DKTS. 345, 346; -481, DKTS. 346, 347; -486, DKT. 346)**

Pursuant to Federal Rule of Civil Procedure 72(a) and Rule 4(a) of Appendix C to the Local Rules, Defendants respectfully object to the Magistrate Judge's Orders (-480, Dkts. 345, 346; -481, Dkts. 346, 347; -486, Dkt. 345),[1] which recommended denial of various pre-trial motions as detailed below. The Magistrate Judge held a hearing on January 27 and 30, 2023, and issued his recommendations without a written order explaining his reasoning on January 30, 2023.[2] Specifically, one highly contested issue pertains to Defendants objections to Dr. Weinstein's opinions regarding the damages base for the '360 patent, which is based on the same theory as the damages base for the '800 patent. While the Magistrate Judge recommended excluding the damages base for the '800 patent, the Magistrate Judge came to the opposite conclusion with respect to the '360 patent. This recommendation is wholly inconsistent with the ruling for the '800 patent, and it would be highly prejudicial to Defendants if an improper damages base is allowed with respect to the '360 patent.

I.   **LEGAL STANDARD**

A district court makes a *de novo* determination of those portions of the magistrate judge's report and recommendations on dispositive motions to which a timely objection is made. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). Federal Rule of Civil Procedure 72(a) and Rule 4(a) of Appendix C to the Local Rules each require the district court to "modify or set aside" any part of a magistrate judge's order on nondispositive motions that is clearly erroneous or is contrary to law. Fed. R. Civ. P. 72(a); L. R. App. C, R. 4(a).

---

[1]   The orders for -480, Dkt. 345; -481, Dkt. 346; -486, Dkt. 345 are the same and -480, Dkt. 346; -481, Dkt. 347 are the same. Thus, citations throughout these objections will be only to the -480, Dkts. 345, 346.

[2]   As of the date of this filing, transcripts for the January 27, 2023 hearing was not available.

1

## II. OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS

### A. Objections to the Magistrate Judge's Recommended Denial of Defendants' Motion to Exclude Dr. Weinstein's Opinions

Defendants object to the Magistrate Judge's recommendation to deny Defendants' motion to exclude the opinions of Mr. Weinstein with respect to the '133, '800, and '360 patents for the reasons described in the motions and at a supplemental hearing held by the Court on February 3, 2023, and those arguments are incorporated herein by reference. *See* -480, Dkts. 246, 323; -481, Dkts. 246, 324; -486, Dkts. 249, 326; 1/30/2023 Hearing Tr. at 136:20–138:24. If a patentee proffering expert testimony "fails to tie the theory to the facts of the case, the testimony must be excluded." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011). The party offering expert testimony has the burden to prove that testimony's admissibility. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). Permitting expert testimony that makes assumptions "without any basis in economic reality" is reversible error. *Shockley v. Arcan, Inc.*, 248 F.3d 1349, 1363 (Fed. Cir. 2001). The Court should grant Defendants' motion to dismiss, and the Magistrate Judge legally erred in recommending otherwise, for several reasons:

- First, Mr. Weinstein failed to exclude non-infringing acts from his damages base. *See* -480, Dkt. 246 at 12; -481, Dkt. 246 at 10–12; -486, Dkt. 249 at 10–12. Proceeding on an improper damages theory would be highly prejudicial to Defendants. In fact, courts will generally grant a motion for a new trial when the damages evidence is based on an improper theory. *See Ericsson Inc v. TCL Commc'n Tech. Holdings, Ltd.*, 2018 WL 3089701, at *7 (E.D. Tex. Mar. 7, 2018); *see also Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011) (granting new trial on damages because expert's use of 25% rule of thumb "fails to pass muster under Daubert and taints the jury's damages calculation" and (2) improper use of EMVR and reference to $19 billion in revenue tainted the damages

award). For the '133 patent, WSOU's infringement theory depends on customers misconfiguring their systems, which Mr. Weinstein fails to account for in his analysis. *See* -480, Dkt. 246 at 12. Thus, his damages base includes both accused and unaccused configurations. *Id.* For the '800 and '360 patents, the damages base should exclude any sales of software only—that is, sales of software not installed on hardware. The Magistrate Judge agreed and excluded Mr. Weinstein's damages for the '800 patent that were based on software only. -480, Dkt. 345 at 4, Dkt. 346 at 1. The same reasoning applies to the '360 patent, and the Magistrate Judge erred by not excluding Mr. Weinstein's software-only damages for that patent. Because WSOU never disclosed an infringement theory under which the asserted claims may be met by software only, the damages base must necessarily include only the sale of the software sold together with the hardware. *See* -481, Dkt. 246 at 10–12; -486, Dkt. 249 at 10–12. However, Mr. Weinstein's royalty base improperly includes the sales of *all* vSphere software, regardless of whether the software was sold together with the hardware. *Id.* In fact, neither WSOU nor Mr. Weinstein cited any evidence that VMware ever sold vSphere software combined with hardware, as opposed to software alone. As a result, the damages base improperly includes non-infringing acts and must be excluded.

- Indeed, the Magistrate Judge initially agreed and recommended that software-only sales for the '800 and '360 patents should be excluded. *See* -481, Dkt. 346 at 4; -486, Dkt. 346 at 4; 1/30/2023 Hearing Tr. at 138:12–19. Subsequently, Plaintiff emailed the Court requesting clarification on this ruling and arguing that because Defendants did not move for summary judgment on the '360 patent with respect to software-only versions of the accused products, it was improper to exclude the software-only sales opinions for the '360

3

patent, and the Court changed its ruling on the basis that this issue for the '360 patent was not raised in Defendants' briefing. 1/31/2023 Email from H. Kim (Ex. 1); 2/1/2023 Emails from M. Scott (Exs. 2, 3). The Court held a supplemental hearing on the matter and maintained its recommendation not to exclude the '360 patent's software-only damages opinions. This is error because Defendants did in fact raise the argument regarding software-only damages for the '360 patent. *See* -486, Dkt. 249 at 10. This issue was argued with respect to both the '800 and '360 patents at the January 30, 2023 hearing, and at the time, WSOU never argued or suggested the issue was limited to only the '800 patent. As the issues with WSOU's damages case are identical for both patents, the software-only sales should be excluded for the '360 patent for the same reasons it was excluded for the '800 patent.

- Second, Mr. Weinstein's apportionment opinions that wholly adopt Dr. McClellan's deficient apportionment analysis should be excluded. *See* -480, Dkt. 246 at 2–4; -481, Dkt. 246 at 2–4; -486, Dkt. 249 at 2–4. Mr. Weinstein's report contains no substitute independent apportionment analysis. *See* -480, Dkt. 246 at 2–4; -481, Dkt. 246 at 2–4; - 486, Dkt. 249 at 2–4.

- Third, Mr. Weinstein improperly included revenue from non-infringing services into his revenue base. *See* -480, Dkt. 246 at 4–10, -481, Dkt. 246 at 4–10; -486, Dkt. 249 at 4–10. Because services are not accused and do not infringe, the only possible basis for including them in the royalty base would be through the entire market value rule (EMVR). *See* -480, Dkt. 246 at 6–7, -481, Dkt. 246 at 6–7; -486, Dkt. 249 at 6–7. However, Mr. Weinstein admitted that he did not undertake an EMVR analysis and was not relying on the EMVR. *See* -480, Dkt. 246 at 7, -481, Dkt. 246 at 7; -486, Dkt. 249 at 7. Indeed, Mr. Weinstein

has offered no opinions that the patented features drive customer demand of the associated services, as required in order for EMVR to apply. *Id.*; *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014). Instead, Mr. Weinstein improperly includes services that do not infringe in his royalty base, which is contrary to Federal Circuit law. *See* -480, Dkt. 246 at 8–10, -481, Dkt. 246 at 8–10; -486, Dkt. 249 at 8–10; *Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*, 909 F.3d 398, 411–12 (Fed. Cir. 2018). In addition, to the extent such ancillary sales could be included in the royalty base, Mr. Weinstein's analysis was still fatally deficient under *Daubert* because he applied the same apportionment values determined by Dr. McClellan to services revenue as he did for software license revenue, even though Dr. McClellan's apportionment values did not take services into account and were never intended to be applied to services.

### B. Objections to the Magistrate Judge's Recommended Denial of Defendants' Motions to Strike or Exclude Dr. McClellan's Opinions

Defendants object to the Magistrate Judge's recommendation to deny Defendants' motions to strike or exclude Dr. McClellan's opinions for the reasons described in the motions and at the January 30, 2023 hearing, and those arguments are incorporated herein by reference. *See* -480, Dkts. 242, 248, 321, 324; -481, Dkts. 242, 248, 322, 325; -486, Dkts. 245, 251, 324, 327; 1/30/2023 Hearing Tr. at 69:21–74:10. The party offering expert testimony has the burden to prove that testimony's admissibility. *Moore*, 151 F.3d at 276. Plaintiff failed to meet its burden, and the Magistrate legally erred in concluding otherwise, for several reasons:

- With respect to the '133 patent, Plaintiff should not be permitted to rely on Dr. McClellan's opinions that were not previously disclosed in WSOU's infringement contentions. *See* -480, Dkt. 242 at 2–6. In its final infringement contentions, WSOU accused only the ▮▮▮▮▮▮▮▮ feature as meeting the "switching module" limitation. *Id.* at 5.

5

However, Dr. McClellan opines that the ▬▬▬▬▬▬ feature is the "switching module" in his expert report. *Id.* at 5–6. This previously undisclosed infringement theory should be stricken. *See Pisony v. Commando Constructions, Inc.*, 2020 WL 4934463, at *1 (W.D. Tex. Aug. 24, 2020) ("[E]xpert infringement reports may not introduce theories not previously set forth in infringement contentions.").

- With respect to the '800 patent, the Court should strike Dr. McClellan's ▬▬▬▬▬▬ and ▬▬▬▬▬▬ opinions, which were not disclosed in WSOU's final infringement contentions. *See* -481, Dkt. 242 at 6–7; *see also Pisony*, 2020 WL 4934463, at *1. WSOU's Final Infringement Contentions include no reference to either feature, and WSOU's injection of these new theories—which have become the central theories in the case—long after the close of fact discovery, is highly prejudicial to Defendants.

- With respect to the '360 patent, the Court should strike Dr. McClellan's opinions related to two issues. First, Dr. McClellan failed to apply the Court's construction for the "comparing means" limitation (in remaining asserted claims 1 and 21), which was construed as requiring the specific structure of "rule checker 132 with set of rules 134." *See* -486, Dkt. 245 at 4–7. Recently, the Federal Circuit affirmed a district court's decision to strike expert testimony that applied a claim construction materially different from the one the Court had adopted. *Treehouse Avatar LLC v. Valve Corp.*, 54 F.4th 709, 715 (Fed. Cir. 2022). The appeals court reasoned that "[w]hen the court has adopted a construction that the parties requested and agreed upon, any expert theory that does not rely upon that agreed upon-construction is suspect." *Id.* As a result, Dr. McClellan failed to identify the corresponding structure, as required by the Court's construction, in the accused product. *See* -486, Dkt. 245 at 7–10. Second, Dr. McClellan fails to provide a mapping of how the

6

accused product meets each of the four "elements" of the claimed scheduler in claim 1. *See id.* Dr. McClellan should not be able to conclude infringement exists without providing a specific mapping of the claim limitations to the specific features in the accused product. *See id.* at 8–10; *Magnetar Techs. Corp. v. Six Flags Theme Parks Inc.*, 2014 WL 529983, at *2 (D. Del. Feb. 7, 2014), *adopted by Magnetar Techs. Corp. v. Six Flags Theme Parks, Inc.*, 61 F. Supp. 3d 437, 441–42 (D. Del. 2014), *aff'd*, 599 F. App'x 960 (Fed. Cir. 2015).

- With respect to all three patents, Dr. McClellan's apportionment analysis is based only on his own admittedly subjective determinations instead of any objective bases. *See* -480, Dkt. 248 at 2–4.[3] Because his methodology rests solely on his subjective "experience," and is not grounded in any scientific methodologies or procedures, his "best estimates" methodology is unreliable. *Id.* at 4–5. Even if it were proper to rely solely on his subjective experience, Dr. McClellan's methodology fails to meet the standards under Fed. R. Evid. 702(d). Dr. McClellan assigned a "technical weight" (in percentages) to each of the features, but never explained what the overall whole represents—whether it is the code base, the total number of features, or something else. *See id.* at 7. Additionally, Dr. McClellan failed to apportion the value of the asserted claims of the '133 and '800 patents over the respective prior art. For instance, because the accused functionalities ▬▬ ▬▬▬▬ existed in an earlier version of vSphere, which predates the '800 patent, Dr. McClellan should have differentiated the alleged benefits that the '800 patent contributed to the ▬▬▬▬▬▬▬ features in the later, accused vSphere versions from the ▬▬ ▬▬▬▬▬ features as they existed in the prior art, unaccused versions. *See id.* at 7–8. By failing to do this analysis, his apportionment percentages grossly overstate the

---

[3] The motions filed in the -481 and -486 cases are identical to the motion in -480; thus, citations will only be to the -480 motion.

contribution of the '800 patent to vSphere—something that Dr. McClellan acknowledged and admitted that he had hoped the damages expert would address. *See id.* at 8–9. Likewise, for the '800 patent, Dr. McClellan failed to apportion the value of asserted claim 16 from invalid claim 13 from which claim 16 depends. *See id.* at 9–10; *see ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010) (stating that the damages case must be tied "to the claimed invention's footprint in the market place."). Finally, for the '133 patent, Dr. McClellan failed to apportion the value of the asserted claims of the patent from invalid claim 1, which is materially the same as the asserted claims. *Id.* at 9–10; *see ResQNet.com*, 594 F.3d at 869.

### C. Objections to the Magistrate Judge's Recommended Denial of Defendants' Motions for Summary Judgment of Non-Infringement

An accused infringer "is entitled to summary judgment, on the ground of non-infringement, by pointing out that the patentee failed to put forth evidence to support a finding that a limitation of the asserted claim was met by the structure in the accused devices." *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1577 (Fed. Cir. 1989). Further, a patentee must "specifically identify the infringing features" as well as "the reason that one of skill in the art would recognize them as infringing." *Intellectual Sci. & Tech., Inc. v. Sony Elecs., Inc.*, 589 F.3d 1179, 1185 (Fed. Cir. 2009).

#### 1. Objections to the Magistrate Judge's Recommended Denial of Defendants' Summary Judgment Motion of Non-Infringement of the '800 Patent

Defendants object to the Magistrate Judge's recommendation to deny Defendants' motions for summary judgment of non-infringement of the '800 patent for the reasons described in the motion, and those arguments are incorporated herein by reference. *See* -481, Dkts. 244, 323. Plaintiff failed to identify any genuine factual dispute that Defendants infringe, and the Magistrate Judge erred in concluding otherwise:

8

- The accused ▇ feature in vSphere v6.5 and later does not meet the "limit for a maximum latency" requirement in claim 16. *See* -481, Dkt. 244 at 15–16. Because the accused functionalities existed in earlier versions of vSphere (v5.0) that predate the patent, Dr. McClellan found himself in a quandary, where if he took the position that if the accused functionalities infringed, they would also anticipate, rendering the claims invalid. *Id.* at 16–17. Thus, when pressed about whether the accused features meet the claim limitation on maximum latency, Dr. McClellan denied each one and admitted that the accused functionality does not meet the "limit for a maximum latency" element. *Id.* Dr. McClellan further confirmed that the same is true in the later versions. *Id.* There is thus no evidence in the record sufficient to create a genuine dispute of material fact that ▇ infringes claim 16. Thus, summary judgment of non-infringement should be granted because WSOU's expert admitted the claim limitation is not met by any of the accused functionalities.

- Similarly, several accused ▇ feature in vSphere v6.5 and later are identical to the features in vSphere 5.0, which Dr. McClellan testified do not infringe. *Id.* at 17–18. Thus, there is no question of fact left for the jury to decide on these features.

- Additionally, Dr. McClellan's untimely theories of infringement based on ▇ ▇ should not be considered. *Id.* at 18–20. Even if they were timely disclosed, Dr. McClellan admitted that the ▇ was not a measure of latency at all. *Id.* And ▇ measures network utilization in terms of network saturation, which is not the same as measuring the latency. *Id.* Thus, summary judgment of no infringement should be granted even if the Court were to consider WSOU's untimely theories of infringement.

9

- Furthermore, there is no evidence that vSphere meets the "minimizing a total latency" requirement in claim 16. *Id.* at 21. There is no evidence in the record that the ▬▬▬ ▬▬▬ or any other ▬▬ feature attempts to minimize total latency. *Id.* Indeed, WSOU does not allege that ▬▬ attempts to minimize network saturation, which is the only ▬▬ feature WSOU argues is latency. Similarly, there is no evidence that ▬▬ attempts to minimize latency, including I/O latency. Rather, undisputed evidence—including Dr. McClellan's own infringement report—shows that ▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ as the patent claims require, and ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬.

- Finally, under 35 U.S.C. § 273(a), the accused features were commercially used more than one year before the filing date of the application for the '800 patent. *Id.* at 22–24. Thus, Defendants are entitled to summary judgment of no infringement.

    **2.    Objections to the Magistrate Judge's Recommended Denial of Defendants' Summary Judgment Motion of Non-Infringement of the '360 Patent**

Defendants object to the Magistrate Judge's recommendation to deny Defendants' motion for summary judgment of non-infringement of the '360 patent for the reasons described in the motion, and those arguments are incorporated herein by reference. *See* -486, Dkts. 247, 325; 1/30/2023 Hearing Tr. at 138:25–139:16. Plaintiff identified no genuine dispute of material fact, and the Magistrate Judge erred in concluding otherwise:

- There is no "monitor" in the accused product, as required by claims 1 and 21. -486, Dkt. 247 at 8–9. None of the evidence cited by Dr. McClellan disclose the required monitor. *Id.*

- There is no "computer generated model" in the accused product, as required by claims 1 and 21. *Id.* at 9–11. There is a fundamental distinction between the ***hardware*** scheduler described in the patent and the ***software*** scheduler in the Accused Product. Because the accused scheduler in the accused product is implemented in the software, there is no need for a computer generated model of the accused scheduler because the software can be tested directly before it is finalized. *Id.* at 10–11. By contrast, the hardware scheduler described in the patent requires a computer generated model of the scheduler in order to test the model before synthesizing the scheduler hardware. *Id.* In addition, WSOU improperly points to the same thing—the scheduler itself—to meet all three separate limitations of the claims: the scheduler, the computer generated model, and the monitor.

   3. **Objections to the Magistrate Judge's Recommended Denial of Defendants' Summary Judgment Motion of Non-Infringement of the '133 Patent**

Defendants object to the Magistrate Judge's recommendation to deny Defendants' motions for summary judgment of non-infringement of the '133 patent for the reasons described in the motion, and those arguments are incorporated herein by reference. *See* -480, Dkts. 244, 322. There was no genuine factual dispute that Plaintiff cannot prove infringement, and the Magistrate Judge erred in concluding otherwise:

- The accused product, VeloCloud, does not "detect whether a congestion condition exists for the egress node" as required in claim 13. *See* -480, Dkt. 244 at 10. Instead, VeloCloud ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████. *Id.* at 10–13. Dr. McClellan, WSOU's expert, admitted that VeloCloud's ████████████ ██████████████████████████████████████████████████████, which Dr.

11

McClellan admits is different from egress congestion. *Id.* at 13–14. The plain and ordinary meaning of "detect whether a congestion condition exists for the egress node" does not encompass detecting congestion on links (*i.e.*, congestion *for* the egress node) as expressly supported by lexicography in the specification. *See* -480, Dkt. 322 at 2–4.

- VeloCloud does not alter "queueing priority" of the packets based on any congestion condition of their respective egress points, as required by claim 13. -480, Dkt. 244 at 14–15. ███████████████████████████████████████████████████████████████████████████████ ███████. *Id.* at 15. WSOU's expert advanced a new theory of infringement during his deposition that simply selecting the path on which to send packets satisfies the "queueing priority" limitation. *Id.* at 16. In addition to being untimely, there is no evidence in the record that packets sent along different network paths have different priorities. *Id.* The ███████████████████████████████████████, which are not altered on the basis of path selection. *Id.* at 16–17. Furthermore, WSOU has identified no evidence that packets sent to *different nodes* (congested nodes versus uncongested nodes) are given different priority as the claims require, as opposed to packets sent along different paths to the *same node*. *See* -480, Dkt. 322 at 7–8.

D. **Objections to the Magistrate Judge's Recommended Denial of Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction under 12(b)(1)**

Defendants object to the Magistrate Judge's recommendation to deny Defendants' motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) for the reasons described in the motions, and those arguments are incorporated herein by reference. *See* -480, Dkts. 196, 210; -481, Dkts. 193, 210; -486, Dkts. 195, 210. As the plaintiff, WSOU bears "the burden to show necessary ownership rights to support standing to sue." *Abbott Point of Care Inc. v. Epocal, Inc.*,

666 F.3d 1299, 1302 (Fed. Cir. 2012). To meet its burden, WSOU "must demonstrate that it held enforceable title to the patent at the inception of the lawsuit" or else its infringement claims must be dismissed for lack of jurisdiction. *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364 (Fed. Cir. 2010). These standards apply to "each claim [a plaintiff] seeks to press," including for past infringement. *Wacoh Co. v. Chrysler LLC*, 2009 WL 36666, at *9 (W.D. Wis. Dec. 1, 2008). WSOU lacks standing, and the Magistrate Judge erred in concluding otherwise, for several reasons:

- There is a gap in the chain of title for the '360 patent, where the patent was never assigned from Alcatel-Lucent Canada to Alcatel Lucent. *See* -486, Dkt. 195 at 10–12.
- Wade never assigned the '133 and '360 patents to WSOU—it only assigned its interest in the patent purchase agreement (PPA). *See* -480, Dkt. 196 at 10–11; -486, Dkt. 195 at 12–13. By the time the PPA was executed, Nokia's obligation to assign the patents to Wade had already been completed. It is black-letter law that the assignment of the PPA from Wade to WSOU would apply only to future or outstanding rights and obligations, and would not have resurrected an already satisfied obligation. Restatement (Second) of Contracts § 328 (Am. L. Inst. 1981). ("[A]ssignment in similar general terms is an assignment of the assignor's rights and a delegation of his unperformed duties under the contract."); *Epistar Corp. v. Int'l Trade Comm'n*, 566 F.3d 1321, 1333 (Fed. Cir. 2009) ("Black letter contract law states that the assignment of a contract to an assignee . . . only changes the obligated party, not the scope of the obligation."); *see also F.D.I.C. v. McFarland*, 243 F.3d 876, 887 (5th Cir. 2001) ("[A]n assignee takes all of the rights of the assignor, no greater and no less."). Thus, WSOU did not obtain rights to the patents when it stepped into Wade's shoes in the PPA, and those patents are still owned by Wade.

13

Further, even if Wade did assign the '133 and '360 patents, because the PPA prohibits such assignments to a Non-Practicing Entity (NPE), such as WSOU, any attempted assignment would also be null and void. *See* -480, Dkt. 196 at 11–14; -486, Dkt. 195 at 13–16. Thus, any purported assignment to WSOU is void and has no legal effect.

- WSOU never obtained the rights to sue for past damages for the '133, '800, and '360 patents, because there was no express assignment of the right to sue for past infringement. *See id.* -480, Dkt. 196 at 14–15; -481, Dkt. 193 at 7; -486, Dkt. 195 at 16–17. The PPA only includes a future intent to assign, and not a present assignment. Thus, the Amended Schedule B1 (for the '133 and '360 patents) or Schedule G1 (for the '800 patent) is the operative document, which does not include a provision for the right to past damages. *See* -480, Dkt. 196 at 15–17; -481, Dkt. 193 at 8–10; -486, Dkt. 195 at 17–19. This is further supported by contemporaneous communications between Wade and Nokia. *See* -480, Dkt. 196 at 17; -481, Dkt. 193 at 10–11; -486, Dkt. 195 at 19–20. Moreover, Amended Schedule B1 or Schedule G1 is the assignment document on file with the USPTO, further supporting them as the operative documents. *See* -480, Dkt. 196 at 18; -481, Dkt. 193 at 11; -486, Dkt. 195 at 20.

### E. Objections to the Magistrate Judge's Recommended Denial of Defendants' Motions for Judgment of Ineligibility under Rule 12(c)

#### 1. Objections to the Magistrate Judge's Recommended Denial of Defendants' Motions for Judgment of Ineligibility of the '800 Patent

Defendants object to the Magistrate Judge's recommendation to deny Defendants' motion for judgment on the basis of ineligibility of the '800 patent for the reasons described in the motion, and those arguments are incorporated herein by reference. *See* -481, Dkts. 191, 201. The Federal Circuit and other courts repeatedly have held ineligible claims directed to this same basic concept of assigning and distributing resources. *See, e.g.*, *Appistry, Inc. v. Amazon.com, Inc.*, 2015 WL

4210890, at *2 (W.D. Wash. July 9, 2015), *aff'd*, 676 F. App'x 1007 (Fed. Cir. 2017) (a "system for processing information" "in a distributed manner" by assigning data processing tasks to a network of "computing engines" organized by location); *Coho Licensing LLC v. Glam Media, Inc.*, 2017 WL 6210882, at *5–6 (N.D. Cal. Jan. 23, 2017), *aff'd*, 710 F. App'x 892 (Fed. Cir. 2018) (assigning data processing tasks to be performed by a plurality of computers).  The Magistrate Judge erred in recommending denial of Defendants' 12(c) motion, and the Court should grant the motion:

- Under *Alice* step one, asserted claim 16 of the '800 patent is directed to the abstract idea of assigning or distributing resources based on costs, such as latency.  *See* -481, Dkt. 191 at 7–11.  The claim recites no technological improvement, relying on generic, preexisting technology.  *See id.* at 11–13.  Additionally, the claim invokes purely functional language, thus encompassing the abstract idea no matter how it is implemented.  *See id.* at 13–14.

- Under *Alice* step two, the claim fails to amount to significantly more than the abstract idea itself.  The claim recites only well-known and conventional technology functioning in its routine manner to implement the abstract idea of assigning resources based on costs, such as latency, in the context of computers.  *See id.* at 14.

    **2. Objections to the Magistrate Judge's Recommended Denial of Defendants' Motions for Judgment of Ineligibility of the '360 Patent**

Defendants object to the Magistrate Judge's recommendation to deny Defendants' motion for judgment on the basis of ineligibility of the '360 patent for the reasons described in the motion, and those arguments are incorporated herein by reference.  *See* -486, Dkts. 172, 191.  The Federal Circuit and other courts repeatedly have held ineligible claims that were directed to the same abstract concept of monitoring, and that recited the same basic functions of collecting, analyzing, and outputting information.  *See, e.g.*, *In re Gale*, 856 F. App'x 887, 888–89 (Fed. Cir. 2021)

15

("monitoring" a "critical test result message management system," by comparing the system's "calculated usage pattern" with a "pre-defined usage pattern requirement" and "reporting the results" of the comparison); *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1351–52 (Fed. Cir. 2016) ("systems and methods for performing real-time performance monitoring of an electric power grid"). The Magistrate Judge erred in recommending denial of Defendants' 12(c) motion, which the Court should grant:

- Under *Alice* step one, the asserted claims 1 and 21 of the '360 patent are directed to the abstract idea of monitoring by comparing an expected state with a detected state. *See* -486, Dkt. 172 at 8–12. The claims recite no technological improvement, relying on preexisting technology to monitor preexisting components. *See id.* at 12–14. And the claims invoke purely functional language, thus encompassing the abstract idea no matter how it's implemented. *See id.* at 14–15.

- Under *Alice* step two, the claims fail to amount to significantly more than the abstract idea itself. The claims recite only well-known and conventional technology functioning in its routine manner to implement the abstract idea of monitoring a software program. *See id.* at 15. This is further supported by the Court's *Markman* order that the claims involve only generic, black-box structures like "module," "rule checker," and "data storage" to carry out the claimed functions. *See id.* at 15–16. Nothing in the claims recite anything more than the abstract idea itself. *See id.* at 19.

### F.     Objections to the Magistrate Judge's Recommended Denial of Defendants' Opposed Motion for Intra-District Transfer of Venue to the Austin Division of the Western District of Texas

Defendants object to the Magistrate Judge's recommendation to deny Defendants' opposed motion for intra-district transfer of venue to the Austin Division of the Western District of Texas,

16

subject to not losing the current trial date, for the reasons described in the motion, and those arguments are incorporated herein by reference. *See* -480, Dkts. 43, 58; -481, Dkts. 44, 58, -486, Dkts. 43, 56. The Magistrate Judge legally erred, and the Court should transfer the case to the Austin Division because the transfer factors show that Austin is clearly more convenient than Waco. *See* -480, Dkt. 43 at 5.[4]

| Factor | Venue Favored |
| --- | --- |
| Relative ease of access to sources of proof | Austin |
| Availability of compulsory process to secure the attendance of witnesses | Neutral |
| Cost of attendance for willing witnesses | Austin |
| All other practical problems that make trial of a case easy, expeditious, and inexpensive | Austin |
| Administrative difficulties flowing from court congestion | Neutral |
| Local interest in having localized interests decided at Home | Austin |
| Avoidance of unnecessary problems of conflict of laws or in the application of foreign law | Neutral |

## III. CONCLUSION

For the foregoing reasons, the Court should sustain Defendants' objections to the Magistrate Judge's decisions denying Defendants' motions.

---

[4] The motions filed in the -481 and -486 cases are identical to the motion in -480; thus, citations will only be to the -480 motion.

Dated: February 10, 2023 By: */s/ Brian A. Rosenthal*
Barry K. Shelton
Texas State Bar No. 24055029
bshelton@winston.com
**WINSTON & STRAWN LLP**
2121 North Pearl Street, Suite 900
Dallas, TX 75201
Telephone: 214.453.6407
Facsimile: 214.453.6400

Benjamin Hershkowitz
bhershkowitz@gibsondunn.com
Brian A. Rosenthal
brosenthal@gibsondunn.com
Allen Kathir
akathir@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

Y. Ernest Hsin
ehsin@gibsondunn.com
Jaysen S. Chung
jschung@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

Ryan K. Iwahashi
riwahashi@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
1881 Page Mill Road
Palo Alto, CA 94304-1211
Telephone: 650.849.5300
Facsimile: 650.849.5333

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on February 10, 2023, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document (which is filed under seal) through email.

/s/ *Brian A. Rosenthal*
Brian A. Rosenthal