**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

|  |  |
|---|---|
| **WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT,** | **Civil Action No.: 6:20-cv-00480-ADA** |
| *Plaintiff,* | **JURY TRIAL DEMANDED** |
| **v.** | |
| **DELL TECHNOLOGIES INC., DELL INC., AND VMWARE, INC.,** | |
| *Defendants.* | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'**
**MOTION FOR JUDGMENT AS A MATTER OF LAW**

## **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................ 1

II.    LEGAL STANDARD ......................................................................................... 3

III.   ARGUMENT ...................................................................................................... 4

    A.    Brazos Presented Substantial Evidence to Allow the Jury to Reasonably
Conclude That Every Element of Claim 13 of the '133 Patent Was Met.............. 4

        1.    Brazos Presented Evidence that the Limitation "a processor module for
receiving a traffic flow comprising a plurality of packets" Was Met......... 4

        2.    Brazos Presented Evidence that the Limitation "switching module
coupled to the processor module, the switching module comprising
egress node information adapted for determining an egress node
associated with each of the plurality of packets" Was Met ...................... 6

        3.    Brazos Presented Evidence that the Limitation "processing the
packets such that packets associated with egress nodes for which the
congestion condition does not exist have a different queueing priority
within the load-balancing network than packets associated with egress
nodes for which the congestion condition exists" Was Met...................... 8

        4.    Brazos Presented Evidence that the Limitation "detect whether a
congestion condition exists for the egress node" Was Met ...................... 9

    B.    Claim 13 Of The '133 Patent Is Patent-Eligible Under 35 U.S.C. § 101 And
The Governing Test As Set Forth In *Alice Corp*. ................................................. 10

        1.    *ALICE* STEP 1: Claim 13 Is Directed to Technical Solutions to
Problems Associated with Prior Art Techniques for Routing Traffic
in a Load-Balancing Network ................................................................ 10

        2.    *ALICE* STEP 2: The '133 Patent Claim Has an Inventive Concept
That Transforms It Into a Patentable Invention ....................................... 12

    C.    Plaintiff Does Not Lack Standing. ...................................................................... 12

    D.    Brazos Provided Substantial Evidence To Support Its Requested Damages........ 15

        1.    Dr McClellan's Apportionment Methodology Is Legally Sound And
Factually Supported ............................................................................. 15

        2.    Mr. Weinstein's Damages Calculation Is Legally Sound And There
Is Substantial Evidence In The Record That Supported His Damages
Theory ............................................................................................... 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amigo Broad, LP v. Spanish Broad. Sys., Inc.*,
    521 F.3d 472 (5th Cir. 2008) ........................................................................6, 7, 8, 9

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)..............................................................................................3

*CloudofChange, LLC v. NCR Corp.*,
    6:19-CV-00513-ADA, Dkt. 205 (W.D. Tex. Nov. 9, 2021)...................................18

*Comark Commc'ns, Inc. v. Harris Corp.*,
    156 F.3d 1182 (Fed. Cir. 1998)..............................................................................3

*Content Guard Holdings, Inc. v. Amazon.com, Inc.*,
    No. 2:13-cv-1112-JRG, 2015 WL 11089749 (E.D. Tex. Aug. 6, 2015) ...............18

*DDB Techs., LLC v. MLB Advanced Media, LP*,
    517 F.3d 1284 (Fed. Cir. 2008)............................................................................14

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed Cir. 2016)..............................................................................11

*Filmtec Corp. v. Allied-Signal Inc.*,
    939 F.2d 1568 (Fed. Cir. 1991)............................................................................15

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
    879 F.3d 1299 (Fed. Cir. Jan. 10, 2018) ..............................................................10

*Johnson Worldwide Assocs., Inc. v. Zebco Corp.*,
    175 F.3d 985 (Fed. Cir. 1999)................................................................................7

*Maddux v. Officer One*,
    90 F. App'x 754 (5th Cir. 2004)............................................................................1

*Mentone Sols. LLC v. Digi Int'l Inc.*,
    No. 2021-1202, 2021 WL 5291802 (Fed. Cir. Nov. 15, 2021) .............................11

*Network-1 Techs., Inc. v. Hewlett-Packard Co.*,
    No. 6:13-CV-00072-RWS, 2017 WL 10222211 (E.D. Tex. Nov. 7, 2017) .....................16, 17

*Osseo Imaging, LLC v. Planmeca USA, Inc.*,
    No. 13-cv-00103-JRG, Dkt. 153 (D. Del. Oct. 28, 2020).....................................17

*Packet Intelligence LLC v. NetScout Systems, Inc.*,
    965 F.3d 1299 (Fed. Cir. 2020), *cert. denied*, 141 S. Ct. 2521 (2021) ...................11

*Realtime Data v. Actian Corp.*,
    No. 6:15-cv-463, 2017 WL 1513098 (E.D. Tex. April 27, 2017) ..........................................19

*Red Rock Analytics, LLC v. Samsung Elecs. Co.*,
    No. 217CV00101RWSRSP, 2019 WL 13212713 (E.D. Tex. Feb. 6, 2019) ..........................16

*Reeves v. Sanderson Plumbing Prods., Inc.*,
    530 U.S. 133 (2000) ...........................................................................................................3

*ResQNet.com, Inc. v. Lansa, Inc.*,
    594 F.3d 860 (Fed. Cir. 2010) ..........................................................................................16

*Shopify Inc. v. Express Mobile, Inc.*,
    No. CV 19-439-RGA, 2021 WL 4288113 (D. Del. Sept. 21, 2021) .....................................17

*Speedplay, Inc. v. Bebop, Inc.*,
    211 F.3d 1245 (Fed. Cir. 2000) .........................................................................................15

*SRI Int'l, Inc. v. Cisco Systems, Inc.*,
    930 F.3d 1295 (Fed. Cir. 2019) .........................................................................................12

*ThinkOptics, Inc. v. Nintendo of Am., Inc.*,
    2014 WL 2859578 (E.D. Tex. 2014) ..................................................................................17

*TI Group Auto. Sys. Inc. v. VDO N. Am., L.L.C.*,
    375 F.3d 1126 (Fed. Cir. 2004).............................................................................................3

*TQ Delta, LLC v. 2Wire, Inc.*,
    373 F. Supp. 3d 509 (D. Del. 2019) ...................................................................................11

*Uniloc USA, Inc. v. LG Elecs.. USA, Inc.*,
    957 F.3d 1303 (Fed. Cir. 2020)....................................................................................11, 12

*Visual Memory LLC v. NVIDIA Corp.*,
    867 F.3d 1253 (Fed. Cir. 2017)..........................................................................................11

Pursuant to Federal Rule of Civil Procedure 50(a), Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development ("Brazos" or "Plaintiff") respectfully submits this opposition to Defendants Dell Technologies Inc., Dell Inc., EMC Corporation, and VMware, Inc. ("VMware" or collectively, "Defendants") motion for judgment as a matter of law of non-infringement of claim 13 of U.S. Patent No. 7,539,133 (the "'133 patent"), Plaintiff's damages theories, patent eligibility under 35 U.S.C. § 101, and Plaintiff's standing.

## I.   INTRODUCTION

Defendants are not entitled to judgment as a matter of law on any of the four bases they raise in their motion:   (1) standing, (2) eligibility under Section 101, (3) damages, or (4) infringement.   "Judgment as a matter of law is appropriate only in the *rare instance* in which the *facts and inferences* favor one party *so profoundly* that reasonable minds *could not disagree*." *Maddux v. Officer One*, 90 F. App'x 754, 760 (5th Cir. 2004) (emphasis added).   When the record is viewed in the light most favorable to Plaintiff, as is required, Defendants have failed to meet this heavy burden and are not entitled to this rarely granted relief.

With respect to standing and damages, the Court did not hear oral argument on these issues at trial, but had previously correctly denied each of the arguments that Defendants raise again in the instant motion.[1]   Ex. G (1/27/23 Tr.) at 8:16-9:25; Ex. H (1/30/23 Tr.) at 73:6-10, 74:7-10, 70:13-16; Dkts. 345, 346; Ex. I (2/21/23 Tr.) 20:4-10.   As Defendants admit, standing is a "pure legal issue" (Mot. at 13), and this Court already determined that the very same documents that Plaintiff adduced at trial fully demonstrated that Plaintiff had standing.   *Id.*   And Defendants again

---

[1] The parties understand that Defendants' judgment as a matter of law was granted only regarding noninfringement on the record during trial on February 23, 2023. Ex. E (2/23/23 Tr.) at 684:3-685:10; 722:3-13; Ex. F (2/28/23 email from Brian A. Rosenthal).   Plaintiff contends the remainder of the Motion is moot, but has responded to the other aspects of the Motion out of an abundance of caution so as not to waive its defenses.   If the Court is inclined to consider the other aspects of the Motion which were not addressed on the record on February 23, 2023, Plaintiff requests oral argument on these issues.

ask this Court to decide that the same arguments on damages which they previously raised in their *Daubert* motions were insufficient as a matter of law.  But this Court already correctly denied Defendants' same legal arguments before the jury trial.  *Id.*  The Court also did not hear oral argument on Defendants' Section 101 eligibility arguments at trial.  Notably, Defendants failed to introduce any evidence, let alone substantial evidence, required to meet *their burden* on invalidity of '133 patent pursuant to 35 U.S.C. § 101.

With respect to Defendants' grounds for judgements as a matter of law, the Magistrate Judge previously denied the same arguments Defendants raise in this Motion when Defendants raised them in their Motion for Summary Judgment and Motion to Strike, and this Court overruled VMware's objections and adopted the Magistrate Judge's Report and Recommendation ("R&R").  Ex. G (1/27/23 Tr.) at 145-179 (MSJ argument); 178:19-179:5 (MSJ ruling); 180-212 (MTS Argument); 211:19-212:12 (MTS ruling); Ex. I (2/21/23 Tr.) at 20:4-10 (overruling Defs.' R&R Objs.).[2]  As the record plainly shows, Plaintiff presented substantial evidence to support that each claim element was met by Defendants' accused products, and Defendants failed to show that a reasonable jury would not have a legally sufficient evidentiary basis to arrive at a verdict of infringement based on the evidence presented by Brazos through Dr. McClellan's testimony and documentary evidence entered into the record.[3]  Plaintiff adduced substantial evidence at trial, and

---

[2] It should be noted that Defendants' Motion for Judgment was filed while the parties were in Court.  Plaintiff's counsel received the brief only after stating that he had not seen the same and moments before the court required an oral response, which was not expected, and prejudicially deprived plaintiff of a full and fair opportunity to respond.  Ex. E (2/23/23 Tr.) 690: 14-17, 691:11-13, 692:4-6.

[3] Plaintiff includes herewith as Exhibit A to the Declaration of Jonathan K. Waldrop, exemplary trial testimony demonstrating the evidence presented in support of a limitation-by-limitation infringement analysis.  Plaintiff also includes herewith Exhibit B, exemplary citations to Dr. McClellan's expert report and deposition testimony in support of a limitation-by-limitation infringement analysis.  Plaintiff also includes herewith Exhibits C and D, the demonstratives presented to the jury during the examination of Dr. McClellan.

as such, these issues are classic "battles of the experts" – disputes to be weighed by the trier of fact—the jury—not the Court.   Defendants' Motion should be denied on all counts.

## II.  LEGAL STANDARD

The Court may only grant a Rule 50 motion for judgment as a matter of law where "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."  Fed. R. Civ. P. 50(a).  The standard on a judgment as a matter of law is identical to the standard on a summary judgment motion where the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  The Court must review all evidence of record and draw all reasonable inferences in favor of the non-moving party, without weighing the facts.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  Because the Court cannot make credibility determinations, weigh the evidence, or draw inferences from the facts themselves, "it must disregard all evidence favorable to the moving party that the jury is not required to believe."  *Reeves*, 530 U.S. at 151.  Since judgment as a matter of law is only appropriate where the record is "critically deficient of the minimum quantum of evidence" in support of the verdict, *TI Group Auto. Sys. Inc. v. VDO N. Am., L.L.C.*, 375 F.3d 1126, 1133 (Fed. Cir. 2004), Defendants' burden on this motion is "a heavy one." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1190 (Fed. Cir. 1998).

## III. ARGUMENT

### A. Brazos Presented Substantial Evidence to Allow the Jury to Reasonably Conclude That Every Element of Claim 13 of the '133 Patent Was Met.

Brazos's technical expert Dr. McClellan testified that each and every limitation of claim 13 of the '133 patent is practiced by VMware's VeloCloud product.[4]  Defendants misled the Court when they argued that there was no evidence to allow a reasonable jury to conclude that claim 13 was met.  Moreover, Defendants moved for judgment as a matter of law on issues that require narrow claim constructions that this Court did not adopt.  The trial evidence shows that VeloCloud practices claim 13 of the '133 patent, as collected in Exhibit A, filed concurrently herewith.  *See, e.g.*, Ex. J (2/22/23 Tr.) at 362-363, 371-373, 376-378, 380-385.

#### 1. Brazos Presented Evidence that the Limitation "a processor module for receiving a traffic flow comprising a plurality of packets" Was Met

At trial, Dr. McClellan opined that VeloCloud's Link Scheduler and Network Scheduler – (graphically depicted in Ex. K (PTX-126)) met claim 13's requirements of "processor module for

---

[4] Brazos also contends that the Court erroneously excluded testimony of Dr. McClellan at trial.  The Court granted unsubstantiated objections by Defendants' counsel during Dr. McClellan's direct examination that prevented Dr. McClellan from testifying in full regarding information disclosed in his expert report and deposition.  See Exhibit B (showing support in both expert report and deposition transcript for Dr. McClellan's analysis and conclusions as to each claim element).  The Court ruled that Dr. McClellan's opinions were not disclosed based on an erroneous application of the requirements of evidence in expert reports.  The Court's understanding cannot be correct as it elevates form over substance and artificially limits all expert testimony to carbon copies of expert report language akin to asking for "magic words."  "The purpose of Rule 26 is to eliminate 'unfair surprise to the opposing party.' . . . Rule 26, however, 'does not limit an expert's testimony simply to reading his report . . . [t]he rule contemplates that the expert will supplement, elaborate upon, [and] explain ... his report' in his oral testimony."  Sec. & Exch. Comm'n v. Life Partners Holdings, Inc., No. 1-12-CV-00033-JRN, 2013 WL 12076934, at *3 (W.D. Tex. Nov. 8, 2013) (rejecting motion to strike expert testimony as violating Rule 26 or Rule 37 and defendants arguments on prejudice, finding expert's "testimony was a natural, logical, and wholly predictable outgrowth of [expert's] expert report."); Ratliff v. Seadrill Americas, Inc., No. CV 17-11581, 2018 WL 6523477, at *3 (E.D. La. Dec. 12, 2018) (same); see also Iacangelo v. Georgetown Univ., 272 F.R.D. 233, 234 (D.D.C. 2011) ("Technically, all expert disclosures required by Rule 26(a)(2)(B) must be made in the expert's written report . . . In practice, however, a party is considered to have met its obligations for expert disclosure so long as all required information is divulged in either the written report or a subsequent deposition of the expert.").

L

receiving . . ." element (replicated fully above).  As shown in Exhibit A, both Dr. McClellan's testimony[5] and documents submitted into evidence directly (or at a minimum, inferentially) support that a "a processor module for receiving a traffic flow comprising a plurality of packets" is present in the accused devices.  *See* Ex. I (2/21/23 Tr.) at 264:19-265:20 (discussing Ex. L (PTX-265) and how packets are processed by the VeloCloud product); 266:5-267:13 (discussing Ex. K (PTX-126) flowchart and how "VeloCloud processes packets."); Ex. J (2/22/23 Tr.) at 345:9-346:12 (discussing how the appliance works to process the packets); 349:1-8 (discussing VMware deposition testimony confirming that software makes choice to select path); 360:24-362:19 (after Dr. McClellan explained the process of receiving traffic flow inside the device, testifying that Velocloud device "has a processor in it.").  The jury was also shown the exhibits (*e.g.* Ex. K (PTX-126) and Ex. L (PTX-265)) on screens as demonstratives, as Mr. McClellan described his analysis.  Finally, Dr. McClellan testified that he relied on several source code files that were entered into evidence to confirm his infringement analysis, including but not limited to, linkscheduler.c.  *See* Ex. J (2/22/23 Tr.) at 393:17-394:13.  Dr. McClellan's testimony and the supporting exhibits constitute substantial evidence that a jury could have used to find this claim element was met or at the very least provides inferences a jury could use to find it was met.

Defendants incorrectly argue the testimony of Brazos's expert, Dr. McClellan, on the limitation processor module was "unexplained" and a "bare conclusion""[6]  Mot. at 3.  Defendants

---

[5] Moreover, Defendants explained to the jury in its opening that Mr. Connors wrote the code for VeloCloud and that "any questions you have about how the product works are going to be answered by Mr. Connors."  Ex. I (2/21/23 Tr.) at 60:23-61:1.  This in itself shows a reasonable inference that the VeloCloud product includes code loaded on the device that is executed through processing hardware.

[6] Defendants' reliance on *Intell. Sci. & Tech., Inc. v. Sony Elecs., Inc.*, is inapposite.  There, the court found that the identification alone of the IC-109 multiplexer was not sufficient because it was not reasonable to infer that a multiplexing device also provides the required indication that the multiplexor "outputs a signal that simultaneously transmits a plurality of information sets." 589 F.3d 1179 at 1185 (Fed. Cir. 2009).  No such issue is presented here.

are wrong as shown above and even VMware admits that Dr. McClellan testified that VeloCloud is an "appliance device which has a processor in it."  Mot. at 4.  Defendants' complaint appears to be that Dr. McClellan did not identify "where" the processor module was – even though the claim language does not require a particular location.  Mot. at 4.  Cumulatively, the aforementioned shows that the jury was presented with the accused devices that included a processor that processed the packets according to the claim language.  Drawing all of the reasonable inferences in favor of Plaintiff, the non-moving party, and disregarding credibility determinations or weighing the evidence, judgment as a matter of law is not proper.  *Amigo Broad, LP v. Spanish Broad. Sys., Inc.*, 521 F.3d 472, 479 (5th Cir. 2008).

> 2. <u>Brazos Presented Evidence that the Limitation "switching module coupled to the processor module, the switching module comprising egress node information adapted for determining an egress node associated with each of the plurality of packets" Was Met</u>

At trial, Dr. McClellan opined that VeloCloud met claim 13's element "switching module coupled to the processor module . . ." (replicated fully above) by taking uni-directional measurements of performance metrics – loss, latency, and jitter of every packet.  *See* Ex. M (PTX-204).  Dr. McClellan testified about VeloCloud's ability to measure these performance metrics: loss, latency, and jitter at length when discussing PTX-204.  Ex. I (2/21/23 Tr.) at 255:19-257:12; Ex. C.  Dr. McClellan went on to explain through PTX-204 that VeloCloud detects congestion through these continuous performance measurements made between any two VeloCloud endpoints, thus showing this egress node information is used to detect congestion.  Ex. J (2/22/23 Tr.) at 344:15-345:1.  Furthermore, in discussing PTX-82, Dr. McClellan testified that the egress node information included congestion, latency, jitter and packet loss and this information is used by the Network Scheduler and Link Scheduler to make a "steering" decision that prioritizes packet traffic through path selection.  Ex. J (2/22/23 Tr.) at 373:5-374:8; 379:14-380:14; *see also* Ex. N (PTX-82)

(confirming the switching module which maintains the metric information is coupled to the processor module).  Moreover, during cross-examination, Defendant elicited testimony from Dr. McClellan where he confirmed: 1) that a path and node that are bound together are correlated with congestion on the other (Ex. J (2/22/23 Tr.) at 442:22-443:5); and 2) and that VeloCloud devices infringe because they use path selection or "steering" in this manner.  Ex. J (2/22/23 Tr.) at 446:20-448:5.  Finally, Dr. McClellan testified that he relied on VMware source code modules in reaching his conclusion that the switching module coupled to the processor module claim element was met.  Ex. J (2/22/23 Tr.) at 393:17-394:13; PTX-625A (Source code).  Dr. McClellan's testimony and the supporting exhibits constitute direct evidence or at the very least provides inferences a jury could have used to find this claim element was met.

In fact, the evidence above shows that the jury was presented with expert testimony that explained how VeloCloud maintain metrics that allowed the processor to detect congestion and make determinations regarding the path and egress node.  This is precisely the operation of the claimed switching module.  *See* Ex. K (PTX-126 (showing Network Scheduler and Link Scheduler flow diagram)).  Defendants' apparent argument that mechanical or physical coupling of two separate structural components is required, is simply a claim construction argument that Defendants never raised.  *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 992 (Fed. Cir. 1999) (finding the term "coupled" was not limited to physical or mechanical coupling).  Here, drawing all of the reasonable inferences in favor of Plaintiff, the non-moving party, and disregarding credibility determinations or weighing the evidence, judgment as a matter of law should be denied.  *Amigo*, 521 F.3d at 479.  -

3. <u>Brazos Presented Evidence that the Limitation "processing the packets such that packets associated with egress nodes for which the congestion condition does not exist have a different queueing priority within the load-balancing network than packets associated with egress nodes for which the congestion condition exists" Was Met</u>

At trial, Dr. McClellan opined that VeloCloud meets claim 13's "processing the packets . . ." element (fully replicated above) by VeloCloud's ability to on the one hand allow applications to burst to their maximum aggregate bandwidth when there is no congestion. Ex. O (PTX-125); Ex. I (2/21/23 Tr.) at 271:15-21.  And on the other hand, Dr. McClellan testified, referencing PTX-126, that packets are prioritized differently based on when congestion is present.  Ex. I (2/21/23 Tr.) at 279:18-280:6; Ex. N (PTX-82); Ex. K (PTX-126); Ex. C.

Defendants are mistaken that Brazos did not show that VeloCloud has a different queueing priority based on a congestion condition. Ex. I (2/21/23 Tr.) at 269:4-271:21; Ex. C.   During his cross-examination, Dr. McClellan was asked about PTX-82 and confirmed that steering decisions were made with regards to congestion, latency, jitter, and packet loss, referred to path steering decisions.  Ex. J (2/22/23 Tr.) at 447:12-19.  Defendants' argument that VeloCloud's ability to monitor and select paths does not infringe is a claim construction argument.  Defendants made this argument at claim construction in order to limit this element to a false premise – "that packets are marked depending on whether they are destined for a congested egress node, such that marked packets have a different probability of being dropped."  Dkt 106.  At trial, Plaintiff showed that VeloCloud treats packets differently based on when there is no congestion condition and when there is congestion.  Here, drawing all of the reasonable inferences in favor of Plaintiff, the non-moving party, and disregarding credibility determinations or weighing the evidence, judgment as a matter of law should be denied.  *Amigo*, 521 F.3d at 479.

4. <u>Brazos Presented Evidence that the Limitation "detect whether a congestion condition exists for the egress node" Was Met</u>

At trial, Dr. McClellan opined that VeloCloud met claim 13's "detect whether a congestion condition exists . . ." element because the path and the node are bound together – and correlated with congestion with for one another (Ex. J (2/22/23 Tr.) at 442:22-443:5; *see also* 381:1-21) and that VeloCloud products infringe because they use path selection or "steering" in this manner.  *Id.* at 446:20-448:5; *see also* (Ex. K (PTX-126) at 16.  Further, referencing PTX-204 (Ex. M), Dr. McClellan testified that VeloCloud's DMPO feature performs continuous unidirectional measurements of performance between any two DMPO endpoints thereby satisfying the claim element.  Ex. J (2/22/23 Tr.) at 494:1-22.

Defendants incorrectly argue that Dr. McClellan admitted that choosing a path in VeloCloud based on congestion does not meet the limitation "detect whether a congestion condition exists for the egress node."  Mot. at 7 (citing 460:18-24).  This is wrong.  Dr. McClellan testified clearly that claim 13 only requires a determination of whether a congestion condition exists *for the egress node*, which "is different than at the egress node or on the egress node or in the egress node."  Ex. J (2/22/23 Tr.) at 492:7-492:25.  Defendants' argument that the congestion condition must be measured *at the egress node* is another rejected claim construction position.  Of note, VMware's proposed construction sought to construe the claim language used in claims 1 ("on the egress node) and 13 ("for the egress node") to mean – "whether the egress node is currently congested" (*i.e.*, at the egress node) to support VMWare's non-infringement position.  The Court denied Defendants' argument. Dkt 106.  Thus, Dr. McClellan provided both evidentiary and testimonial support for his opinion that VeloCloud products meet this limitation.  Here, drawing all of the reasonable inferences in favor of Plaintiff, the non-moving party, and disregarding credibility determinations or weighing the evidence, judgment as a matter of law should be denied.   *Amigo*, 521 F.3d at 479.

A reasonable jury could find that VMware infringes claim 13 of the '133 patent, and thus the Court should deny judgment as a matter of law of non-infringement of claim 13 of the '133 patent under Federal Rule of Civil Procedure 50(a).

**B.    Claim 13 Of The '133 Patent Is Patent-Eligible Under 35 U.S.C. § 101 And The Governing Test As Set Forth In *Alice Corp*.[7]**

Defendants failed to meet their burden on proving invalidity of the '133 patent.  Defendants moved for judgment as a matter of law on this issue at the close of Plaintiff's case, and put on no invalidity case (and in fact, prior moving on Rule 50, VMware stated via email that their expert would no longer be addressing invalidity.)  Ex. P (2/23/23 email from Andrew Blythe).  Thus, Defendants have provided no evidence of invalidity at all, and their motion fails for that reason alone.

**1.    *ALICE* STEP 1: Claim 13 Is Directed to Technical Solutions to Problems Associated with Prior Art Techniques for Routing Traffic in a Load-Balancing Network**

Claim 13 is directed to a new and inventive network system for routing traffic in a load balancing network with a processor module and switching module that for each packet determines congestion associated with the egress node of the network and prioritizes packets based on whether said congestion exists.   This claim reflects a patent-eligible improvement to packet flow management and prioritizing packets in a load-balancing network, resulting in less egress congestion and avoiding wasted bandwidth.  This clear improvement is not an abstract idea.  *See, e.g.*, *Finjan, Inc. v. Blue Coat Sys., Inc*., 879 F.3d 1299, 1305 (Fed. Cir. Jan. 10, 2018) (method for virus scanning was directed to patent-eligible subject matter because it "employs a new kind of file that enables a computer security system to do things it could not do before," including "accumulat[ing] and utiliz[ing] newly available, behavior-based information about potential

---

[7] Plaintiff also contends that Defendants have waived their § 101 defense with respect to the '133 patent.  *See* Ex. Q (2/1/23 Tr.) at 47-52; Dkt. 296.

threats"); *see also Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1259 (Fed. Cir. 2017); *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed Cir. 2016).

The claims at issue here are similar to those found patent-eligible by the Federal Circuit and federal district courts. *See, e.g.*, *Uniloc USA, Inc. v. LG Elecs.. USA, Inc.*, 957 F.3d 1303, 1307 (Fed. Cir. 2020) (finding that claims directed to an improvement in network functionality, "namely the reduction of latency experienced by parked secondary stations in communication systems," were patent-eligible and specifically pointing to "change in the manner of transmitting data" that was part of the claimed system and resulted in reduced response time); *Mentone Sols. LLC v. Digi Int'l Inc.*, No. 2021-1202, 2021 WL 5291802 (Fed. Cir. Nov. 15, 2021) (holding the asserted claims were patent-eligible because the claimed invention to which they were directed improved resource allocation in packet radio systems); *Packet Intelligence LLC v. NetScout Systems, Inc.*, 965 F.3d 1299, 1307-1309 (Fed. Cir. 2020), *cert. denied*, 141 S. Ct. 2521 (2021); *TQ Delta, LLC v. 2Wire, Inc.*, 373 F. Supp. 3d 509, 520 (D. Del. 2019).

As in these cases, the claim 13 is directed to a clear improvement in networking: the ability to route traffic in a load balancing network using a processor module and switching module that for each packet determines congestion at associated with the egress node of the network and prioritizes packets based on whether said congestion exists. *Packet Intelligence* is particularly analogous – there, the invention involved collecting information about packets to determine which particular applications those packets were associated with in order to improve the functioning of a communications system. Here, the claimed invention determines the congestion condition associated with a packet's egress node and assigns a queueing priority within the network for the packet (or drops the packet), also to improve the functioning of the network. This improvement is also analogous to those in *Uniloc*, *Mentone*, and *TQ Delta*. Indeed, just as in *Uniloc, Mentone,* and *TQ Delta*, the claimed invention improves resource allocation and decreases congestion and hose

constraint violations within a load-balancing network, improving the functioning of the network as a whole. *Uniloc*, 957 F.3d at 1307; *see also SRI Int'l, Inc. v. Cisco Systems, Inc.*, 930 F.3d 1295, 1303 (Fed. Cir. 2019). Defendants argue that Dr. McClellan admitted that all the functionalities recited in the claims were known in the art (Mot. at 9), but no such admission was made. The claims should be read as a whole, not merely as individual elements. Moreover, Defendants' next argument is purely functional. However, no evidence was presented at trial regarding this argument. The Court construed the claims in this case and did not find that the language was functional. Accordingly, as a matter of law, claim 13 is not directed to an abstract idea and is patent-eligible.

> 2. *ALICE* STEP 2: The '133 Patent Claim Has an Inventive Concept That Transforms It Into a Patentable Invention

This Court should conclude that the claim 13 is patent eligible under *Alice* Step 1. Accordingly, it need not, and should not, reach the question of whether claim 13 has an inventive concept under *Alice* Step 2. Even if claim 13 is directed to an abstract idea, the claim remains patent-eligible under *Alice* Step 2. Dr. McClellan discussed in detail the prior art and the inventive concepts of the '133 patent. *See e.g.* Ex. I (2/21/23 Tr.) at 224:8-233:24, 244:22-245:25. Defendants failed to present any invalidity case or rebut Dr. McClellan's testimony. As a result, claim 13 of the '133 patent is patent-eligible as a matter of law under 35 U.S.C. § 101 and the governing test as set forth in *Alice*.

### C. Plaintiff Does Not Lack Standing.

Defendants once again regurgitate rejected arguments from a motion this Court already denied. In June 2022, Defendants moved to dismiss under Rule 12(b)(1), on grounds identical to the instant Motion, and Brazos filed an opposition. Dkts. 196, 203, 206, 226 The Court heard oral argument on the motion on August 4, 2022. *See* Ex. R. The Magistrate Judge denied Defendants' 12(b)(1) motion, with this Court adopting the Magistrate Judge's R&R and denying Defendants'

objections to the R&R.  Dkt. 345; Ex. G (1/27/23 Tr.) at 8:16-9:25, Ex. I (2/21/23 Tr.) at 20:4-10;

*see also* Dkts. 384, 385.

The Court's denial of Defendants' Motion to Dismiss under 12(b)(1) was correct for the

reasons stated in the R&R and Brazos's opposition to the motion, as well as the hearings on the

motion, and Brazos incorporates those arguments herein by reference.  *See* -480, Dkts. 203, 226;

Ex. W (8/4/2023 Tr.) at 1-76; Ex. G (1/27/23 Tr.) at 8:16-9:25; Dkts. 345, 385  After fully evaluating

the arguments of the parties in briefing and oral argument, the Court correctly determined that: (1)

based on the initial patent purchase agreement, the subsequent agreements thereto, the four corners

of those agreements, and the subsequent conduct of the parties, the intent of the parties were to

transfer all of the patents' right, title, and interest, including the right to sue for past damages, to

Brazos; (2) the '133 patent was properly assigned to Brazos; (3) there was no violation of the NPE

provision of the agreement, and (4) the documents filed with the Patent Office were a formality and

not the functional assignment agreements. *See* Ex. G (1/27/2023 Tr.) at 8:16-9:25; Ex. I (2/21/23

Tr.) at 20:5-10; *see also* -480, Dkts. 203, 226, 385,.

Nothing presented in Defendants' Motion[8] alters the Court's prior correct conclusion on the

same issue.  For example, Defendants once again argue that any assignment to Plaintiff was void

because the PPA prohibited assignments to a Non- Practicing Entity (NPE), but then offered no

evidence from the record that supports Defendants' assertion.  *See* Mot. at 14 (conclusory stating

"a Non- Practicing Entity (NPE), such as WSOU"); Ex. I (2/21/23 Tr.) at 104-106:18 (describing

purpose of Brazos including incubating companies and licensing the portfolio).  As this Court

previously found, Brazos was not a non-practicing entity as defined by the agreement, "and on top

---

[8] The section of Defendants' brief does not appear to be moving for "judgment as a matter of law," but instead for "dismissal."  But in this section, Defendants also make claims about Plaintiff's presentation of evidence.  As a result, it is not clear under which rule Defendants are moving, making it procedurally defective.

of that, the agreement only required the use of best efforts to avoid transferring to an NPE."  Ex. G (1/27/2023 Tr.) at 9:11-13. Even if Defendants had cited to any evidence on this point, it could not have been legally sufficient to demonstrate that Brazos lacked standing.

Defendants similarly claim that Plaintiff "failed to present evidence that Wade assigned the '133 patent" to Plaintiff.  But the assignment, the PPA, and its amendments are themselves evidence that the patent portfolios, including the '133 patent, were assigned to Plaintiff.  Ex. R (DTX-22), Ex. S (DTX-79), Ex. T (DTX-78), Ex. U (DTX-23), Ex. V (PTX-514); Ex. I (2/21/23 Tr.) at 156:6-159:6.  Defendants merely repacked prior arguments that *according to their interpretation* of the agreement (*i.e.*, Wade only assigned its interest in the PPA, not the patents). But the Court already rejected Defendants' same interpretation, as it was presented in Defendants' 12(b)(1) motion and during oral argument.  Dkt. 196; Ex. G (1/27/2023 Tr.) at 8:16-9:25; Ex. W (8/4/2023 Tr.) at 48:15-55:18; 55:23-50:13.

The same is true for Defendants' claim that Plaintiff presented "no evidence that it ever obtained the rights to sue for past damages for the '133 patent."  The PPA itself is evidence in the record of Plaintiff's evidence right to sue for past damages.  DTX-22 § 3.1 (Nokia shall "sell, transfer and assign to [Wade] … all right, title, and interest in and to the [Terrier] Patents, including without limitation all causes of action and other enforcement rights for damages, injunctive relief and any other remedies of any kind for past, current, and future infringement.").  As above, again put forth rejected arguments *according to their interpretation of the agreement* (*i.e.*, § 3.1 is prospective in nature and not a present assignment, Plaintiff did not obtain rights to sue for past damages).  But the Court already rejected Defendants' same interpretation, as it was presented in Defendants 12(b)(1) motion. Dkt. 345; Ex. G (1/27/23 Tr.) at 8:16-9:25; Ex. W (8/4/2023 Tr.) at 48:7-14; *see also  DDB Techs., LLC v. MLB Advanced Media, LP,* 517 F.3d 1284, 1290 (Fed. Cir. 2008) (contract that "agrees to and does hereby grant and assign" was an express assignment rather

than a promise to assign in the future); *Speedplay, Inc. v. Bebop, Inc.,* 211 F.3d 1245, 1253 (Fed. Cir. 2000) (contract providing that "[employee] hereby conveys, transfers and assigns to [employer]" was an express assignment rather than a promise to assign in the future); *Filmtec Corp. v. Allied-Signal Inc.,* 939 F.2d 1568, 1573 (Fed. Cir. 1991) (contract providing that the inventor "agrees to grant and does hereby grant" all rights in future inventions was an express assignment rather than a promise to assign in the future).

In sum, Defendants continue to argue rejected legal theories that were already fully considered.  Defendants' conclusory allegations that Plaintiff presented no evidence is squarely refuted by the record, and Defendants do not point to any new or differing evidence in the record that undermines the Courts well-reasoned conclusion on this issue.  Accordingly, Brazos is the rightful owner of all rights, title, and interest in the patents-in-suit, including the right to sue for past, current, and future patent infringement damages, and Defendants' Motion should be denied.

### D.   Brazos Provided Substantial Evidence To Support Its Requested Damages

1. Dr McClellan's Apportionment Methodology Is Legally Sound And Factually Supported

The Magistrate Judge already addressed Defendants' argument on Dr. McClellan's apportionment and denied a motion to strike on the very same basis.  Ex. H (1/30/23 Tr.)  at 73:6-10; 74:7-10; 70:13-16 (THE COURT: "I think that the distinction between apportionment, technical weight, and all of that is going to be something for the jury to decide after hearing the experts"); -480, Dkts. 345, 346 (the "R&R").  And this Court then denied Defendants' objections to the R&R before trial began. Ex. I (2/21/23 Tr.) at 20:5-10.  Dr. McClellan's testimony at trial did not differ from that of his expert report and deposition testimony on which Defendants' based their motion to strike, and as such it would make no sense to reach a contrary conclusion and reverse that finding. Ex. J (2/22/23 Tr.) at 408:5-422:9; 465.

Dr. McClellan assessed the technical importance and weight of each feature relative to each other and explained his reasoning for each weight. To account for and apportion the features and benefits of each feature set that exceed the teachings of the patents, Dr. McClellan then determined the percentage of each feature set attributable to the Patents and again provided a detailed reasoning for each percentage.   Dr. McClellan discussed the documents he reviewed showing that VeloCloud's DMPO is a key difference between the features offered by its competitors and that the accused technology was foundational to Velocloud.   *Id*. at 408:8-422:16 (describing in detail entire technical apportionment process).   There is ample evidence in the record to support Dr. McClellan's apportionment.

Defendants' motion is based on a classic  straw man argument. Defendants claim Dr. McClellan "admitted he failed to apportion the allegedly valid portions of claim 13 from the invalid portions" and admitted "that he did not do any analysis of the components that allegedly make claim 13 novel over the conventional features of claim 13." (Mot. at 12).   But Defendants cite to no authority that an apportionment analysis must specifically apportion invalid components of other, unasserted claims.[9]  And none can be cited.  Defendants' straw man argument is not the standard for reliable apportionment.  Apportionment requires that the expert apportion down to the only the accused, infringing technology.   *Red Rock Analytics, LLC v. Samsung Elecs. Co.*, No. 217CV00101RWSRSP, 2019 WL 13212713, at *4 (E.D. Tex. Feb. 6, 2019) ("Where multi-component products are involved, the governing rule is that the ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and

---

[9] Defendants' sole cited case, *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010), does not discuss apportionment at all. *But cf. Network-1 Techs., Inc. v. Hewlett-Packard Co.*, No. 6:13-CV-00072-RWS, 2017 WL 10222211, at *2 (E.D. Tex. Nov. 7, 2017) (rejecting apportionment methodology challenge when "[defendant] point[ed] to no authority requiring a technical expert to quantify the benefits from standardization in an economic apportionment analysis.").

no more."); *see also Network-1 Techs., Inc. v. Hewlett-Packard Co.*, No. 6:13-CV-00072-RWS, 2017 WL 10222211, at *2 (E.D. Tex. Nov. 7, 2017) (in overruling Defendants' argument that technical expert failed to apportion aspects of the claims that already existed in the prior art, explaining that "to the extent [Defendant] is concerned that Dr. Knox's methodology should ascribe additional value to claim elements in the prior art, HP can attack his methodology in cross examination."); *ThinkOptics, Inc. v. Nintendo of Am., Inc.*, 2014 WL 2859578, *1-*2 (E.D. Tex. 2014) (granting motion to strike accused infringer's damages expert report where the expert opined that only one of several components was allegedly the "inventive aspect" of the patent since the other components were in the prior art, and finding this theory was legally flawed since the claimed invention covered the combination of all the components and there is no "precedent permitting the complete removal of the value of claimed elements").

Dr. McClellan's apportionment methodology as described in his testimony meets the applicable standards. [10]  Ex. I (2/21/23 Tr.) at 287:21-288:16 ("A. Well, the -- to come up with this

---

[10] The technical apportionment method utilized by Dr. McClellan in this case has been found reliable.  For instance, in *Cioffi* v. *Google, Inc.,* the plaintiff's technical expert identified and explained four key attributes of Chrome, largely based on marketing documents highlighting those key features, and opined that allegedly infringing feature accounted for 18.33% of Chrome's total "technical value."  2:13-cv-00103-JRG, Dkt. 209 at 6 (E.D. Tex. Jan. 9, 2017).  The plaintiff's damages expertly relied on the technical expert's apportionment in his reasonable royalty analysis. *See id.* at 3. Google complained in that case, as Defendants does here, that plaintiff's technical expert's apportionment value was plucked out of thin air.  *See id.* at 6.  The Court disagreed, finding that an apportionment of value derived from the product's marketing materials was proper. Like the expert in *Coiffi,* Dr. McClellan testified about the basis for his technical apportionment, including the analysis of features described in VMware's marketing materials, as well as his review of certain VMware technical documents.  *See also Osseo Imaging, LLC v. Planmeca USA, Inc.*, No. 13-cv-00103-JRG, Dkt. 153 at 17 (D. Del. Oct. 28, 2020) (refusing to strike the plaintiff's technical expert's apportionment opinion—that 85% of the features of the accused systems were attributable to the asserted patents—as arbitrary or based on erroneous attribution to non-accused features and holding the "jury can evaluate" the experts opinions after cross examination); *Shopify Inc. v. Express Mobile, Inc.*, No. CV 19-439-RGA, 2021 WL 4288113, at *20–21 (D. Del. Sept. 21, 2021) (rejecting motion to strike and finding sufficient methodology supported Express Mobile's technical expert's technical opinion and that any dispute with Express Mobile's technical expert's analysis "goes to weight, which can be fully explored on cross-examination.").

number what we did was analyze the product, analyze the characteristics of the product, group the characteristics of the product in groupings that made sense to each other and then evaluated how much those groupings contributed to the function of the product. And then in addition to that, we compared that function of the -- those different functions of the product to the functionality that's described by the patent. And so that -- at the end of that process, you know, you end up with 72 percent."); Ex. J (2/22/23 Tr.) at 408:8-422:16 (describing in detail entire technical apportionment process); see Ex. D (trial demonstratives).  Even if Defendants are correct, Dr. McClellan's analysis necessarily considered the improvements to the prior art by the patented invention and apportioned appropriately. Ex. J (2/22/23 Tr.) at 409:24-410:19 (discussion of ancillary features of products vs. accused functionality); 421:17-22 ("Q. Now, Dr. McClellan, this significant boost that you see -- or did you -- this superior application performance that you see here, did you take that into account when you awe arrived at your technical apportionment -- A. Yes.").

Defendants simply continue to disagree with Dr. McClellan's opinion, but such disagreement over an expert's factual underpinnings and conclusions is a factual dispute that is decided by a jury.  *See CloudofChange, LLC v. NCR Corp.,* 6:19-CV-00513-ADA, Dkt. 205 at 3 (W.D. Tex. Nov. 9, 2021); *see also Content Guard Holdings, Inc. v. Amazon.com, Inc.,* No. 2:13-cv-1112-JRG, 2015 WL 11089749, at *6 (E.D. Tex. Aug. 6, 2015) ("The Court will not question the conclusions of Plaintiff's expert on this point, especially where he has justified his conclusions with supported facts. This task is more appropriately left to Defendant's counsel via vigorous cross examination.").

Because Dr. McClellan's apportionment analysis is sufficient, Mr. Weinstein's damages calculations properly relied on Dr. McClellan's analysis and Mr. Weinstein's damages opinion is also supported.  Thus, Brazos put forth substantial evidence of apportionment to support its damages analysis and Defendants' Motion on this issue should be denied.

2. <u>Mr. Weinstein's Damages Calculation Is Legally Sound And There Is Substantial Evidence In The Record That Supported His Damages Theory</u>

The Magistrate Judge already correctly applied the law and rejected Defendants' argument that Mr. Weinstein was not allowed to include non-infringing sales in his royalty base. Defendants' previously-filed Daubert motion wrongly argued that Mr. Weinstein was required to invoke the entire market value rule, and Defendants specifically raised this during oral argument at the pre-trial hearing, but the Magistrate Judge rejected it:

> With regard to the . . . objection that there's improper inclusion of non-accused or non-infringing services or sales within that, my read of the case law, *Realtime Data v. NetApp* in part is that under *Georgia-Pacific* Factor those convoyed sales can be considered as part of the royalty base. So I'm going to deny it with regard to the convoyed sales or improper inclusion of non-infringing revenue with infringing revenue.

Ex. H (1/30/2023 Tr.) at 137:1-8 (citing *Realtime Data v. Actian Corp.*, No. 6:15-cv-463, 2017 WL 1513098 (E.D. Tex. April 27, 2017)). As shown in the underlying Daubert motion briefing, at oral argument on the motion, and at trial, the services included in the royalty base were support and maintenance services VMware required its customers to purchase with the accused products. Ex. H (1/30/23 Tr.) at 108:7-138:11; Dkts. 345, 346; Ex. I (2/21/23 Tr.) at 20:4-10. Defendants' Motion here raises no new or separate legal issues that were not already addressed in this underlying Daubert motion, and thus there is no reason to disturb this Court's ruling adopting the R&R. The testimony elicited at trial from Mr. Weinstein on this point was entirely consistent if not identical to his opinion in his report which Defendants attempted to exclude. For example, Defendants point out that Mr. Weinstein admitted during his trial testimony that he "did not undertake an EMVR analysis and was not relying on the EMVR" (Mot. at 13) in arguing that Mr. Weinstein's analysis was improper, yet the Magistrate Judge already heard this argument during pre-trial oral argument and rejected it, as did this Court by adopting the R&R. Ex. H (1/30/23 Tr.) at 108:7-138:11; Dkts. 345, 346; Ex. I (2/21/23 Tr.) at 20:4-10. As such, it was proper for Mr. Weinstein to include these

19

sales in his royalty base and Mr. Weinstein otherwise provided testimony adequately explaining his calculation.  Ex. J (2/22/23 Tr.) at 550:20-552:5; *see generally id*. at 522-602.  Thus Brazos put forth substantial evidence to support its damages analysis, and Defendants' Motion on this issue should be denied.

Dated:  March 9, 2023                        RESPECTFULLY SUBMITTED,

*/s/ Jonathan K. Waldrop*
Jonathan K. Waldrop (CA Bar No. 297903)
(Admitted in this District)
jwaldrop@kasowitz.com
Darcy L. Jones (CA Bar No. 309474)
(Admitted in this District)
djones@kasowitz.com
Marcus A. Barber (CA Bar No. 307361)
(Admitted in this District)
mbarber@kasowitz.com
John W. Downing (CA Bar No. 252850)
(Admitted in this District)
jdowning@kasowitz.com
Heather S. Kim (CA Bar No. 277686)
(Admitted in this District)
hkim@kasowitz.com
ThucMinh Nguyen (CA Bar No. 304382)
(Admitted in this District)
tnguyen@kasowitz.com
Chen Jia (CA Bar No. 281470)
(Admitted in this District)
cjia@kasowitz.com
**KASOWITZ BENSON TORRES LLP**
333 Twin Dolphin Drive, Suite 200
Redwood Shores, California 94065
Telephone: (650) 453-5170
Facsimile: (650) 453-5171

Paul G. Williams (GA Bar No. 764925)
(Admitted in this District)
pwilliams@kasowitz.com
**KASOWITZ BENSON TORRES LLP**
1230 Peachtree Street N.E., Suite 2445
Atlanta, Georgia 30309
Telephone: (404) 260-6080
Facsimile: (404) 260-6081

Hershy Stern (NY Bar No. 4631024)
(Admitted *pro hac vice*)
hstern@kasowitz.com
Howard L. Bressler (NY Bar No. 2487379)
(Admitted *pro hac vice*)
hbressler@kasowitz.com
Joshua A. Whitehill (NY Bar No. 4766473)
(Admitted *pro hac vice*)
jwhitehill@kasowitz.com
Julianne Laporte (NY Bar No. 5547906)
(Admitted *pro hac vice*)
jlaporte@kasowitz.com
Noah P. Dorman (DC Bar No. 1779821)
(Admitted *pro hac vice*)
ndorman@kasowitz.com
**KASOWITZ BENSON TORRES LLP**
1633 Broadway
New York, NY 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

Mark D. Siegmund (TX Bar No. 24117055)
msiegmund@cjsjlaw.com
Craig D. Cherry (TX Bar No. 24012419)
ccherry@cjsjlaw.com
Gregory P. Love (TX Bar No. 24013060)
glove@cjsjlaw.com
Justin W. Allen (TX Bar No. 24081977)
justin@cjsjlaw.com
Melissa S. Ruiz (TX Bar No. 24128097)
mruiz@cjsjlaw.com
**CHERRY JOHNSON SIEGMUND
JAMES PLLC**
The Roosevelt Tower
400 Austin Avenue, 9th Floor
Waco, Texas 76701
Telephone: (254) 732-2242

**Attorneys for Plaintiff
WSOU INVESTMENTS, LLC d/b/a
BRAZOS LICENSING AND
DEVELOPMENT**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing instrument was served or delivered electronically to all counsel of record, on this 9th day of March, 2023.

*/s/ Jonathan K. Waldrop*
Jonathan K. Waldrop
